**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL LEWIS and REGINA ARMSTEAD,** | § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO.** |
| **V.** | § § | **_____** |
| **ROSENBERG POLICE DEPARTMENT, CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, JOHN CLAUSEN, and RYAN CANTU** | § § § § § § § § | **JURY DEMANDED** |
| **Defendants.** | § | |

## COMPLAINT

COME NOW, MICHAEL LEWIS ("Lewis") and REGINA ARMSTEAD ("Armstead") (collectively, "Plaintiffs") and file this their Original Complaint against Defendants ROSENBERG POLICE DEPARTMENT, CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, RYAN CANTU, and JOHN CLAUSEN (collectively, "Defendants"), and would respectfully show the Court as follows:

## PRELIMINARY STATEMENT

1. On November 6, 2020, Rosenberg Police Department ("RPD") officers detained elderly Plaintiffs at gunpoint, handcuffed them, searched the entirety of their vehicle, confiscated their property, and destroyed their property, which included a life-saving medical device. RPD claimed to be responding to a Computer Aided Dispatch ("CAD") call reporting a

group of teenagers that had been brandishing firearms and drove away in a car that was purportedly similar to the vehicle Plaintiffs were driving. The Plaintiffs are both longtime residents of Texas and in their fifties and sixties. RPD incorrectly identified Ms. Armstead's vehicle as the one used by the group of teens to flee the scene of an alleged assault, even though Plaintiffs are senior citizens and do not remotely match the description of the teen suspects.

2. RPD has an extensive and well-documented history of conducting violent stops and arrests. RPD officers routinely use severe force against compliant civilians who present no risk of flight or danger. RPD also regularly aggressively detains civilians, locking their handcuffs too tightly, pushing them, and shoving them to the ground.

3. RPD has an equally dismal track record on detentions and searches. Rosenberg residents have reported being stopped when officers were searching for suspects and vehicles that did not match their appearance or that of their car. RPD officers also regularly conduct vehicle and personal property searches without probable cause, often searching the entirety of a vehicle without justification. Similarly, RPD officers regularly extend the duration of traffic stops solely to conduct warrantless searches for which they have no probable cause.

4. RPD's stop, arrest, and search practices create a high risk of harm for any individual who comes into contact with RPD's officers. Dozens of civilians have reported that stops by RPD officers left them feeling traumatized and disrespected. Many others suffered physical injuries that required medical attention as a result of their encounters with RPD officers. Plaintiffs' experiences are characteristic of RPD officers' encounters with many other civilians.

5. This is a civil rights action brought under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and Texas state law concerning the illegal and violent detention, search, and arrest of Michael Lewis and Regina Armstead by RPD.

## **PARTIES**

6. Plaintiff MICHAEL LEWIS is a 67-year-old African-American man who resides and is domiciled in Rosenberg, Texas in Fort Bend County. He is currently retired, having previously worked as a supervisor at Imperial Sugar. Mr. Lewis suffers from kidney disease and wears a stint in his hand to treat his condition through regular dialysis treatments.

7. Plaintiff REGINA ARMSTEAD is a 57-year-old African-American woman who resides and is domiciled in Rosenberg, Texas in Fort Bend County. She works as a Certified Nursing Assistant at Oakbend Medical Center.

8. Defendant ROSENBERG POLICE DEPARTMENT is a local government entity located in Texas. ROSENBERG POLICE DEPARTMENT may be served with process by serving Chief of Police Jonathan White at 2120 4th Street Rosenberg, TX 77471.

9. Defendant CITY OF ROSENBERG is a political subdivision of the State of Texas, located within the boundaries of the Houston Division of the Southern District of Texas, where all acts and omissions alleged herein occurred. CITY OF ROSENBERG may be served with process by serving Mayor Kevin Raines at 2110 4th Street Rosenberg, TX 77471.

10. JOHN DELGADO was at all times relevant to this complaint a police officer with the Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

11. ADAM VASQUEZ was at all times relevant to this complaint a police officer with the Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

12. ARTHUR LOVE was at all times relevant to this complaint a police officer with the

Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

13. RYAN CANTU was at all times relevant to this complaint a police officer with the Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

14. JOHN CLAUSEN was at all times relevant to this complaint a police officer with the Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

## JURISDICTION and VENUE

15. The Court has original jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1332, 1343(a)(4). Plaintiffs' claim for relief is predicated upon 42 U.S.C. § 1983 which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States.

16. Venue is properly maintained in this Court under 28 U.S.C. § 1391(b) because it is the judicial district where a substantial part of the events and omissions giving rise to the claim occurred, and in which the incident that is the basis of this suit occurred.

## NATURE OF THE ACTION

17. Plaintiffs MICHAEL LEWIS and REGINA ARMSTEAD were subjected to an unlawful and unconstitutional traffic stop on November 6, 2020. During the stop, they were subjected to unlawful detainment, unlawful search and seizure, and other constitutional violations. Plaintiffs commence this action pursuant to 42 U.S.C. § 1983, which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation under color of state law of any rights, privileges, or immunities secured by

the Constitution and laws of the United States. Specifically, Plaintiffs bring this action for Defendants' violations of the Fourth Amendment to the United States Constitution, made applicable to Defendants by the Fourteenth Amendment to the United States Constitution. Plaintiffs are also pursuing claims under the Americans with Disabilities Act and a state law claim for conversion. Plaintiffs seek compensatory and punitive damages together with reasonable attorney fees as authorized by 42 U.S.C. § 1988.

## FACTUAL BACKGROUND

***Defendants' November 6th Violent Stop, Detention, and Search of Mr. Lewis and Ms. Armstead.***

18. On or about 5:50 pm on November 6, 2020, RPD received a "weapons call" reporting that a group of Black teenagers had brandished guns to a group of kids at 3324 River Road SW Rosenberg, Texas. The caller indicated that the teenagers had fled in a white vehicle with tinted windows and black rims towards 3rd Avenue.

19. In response to the weapons call, RPD dispatched Defendants John Delgado, Ryan Cantu, Adam Vasquez, Arthur Love, and John Clausen to search for the teenagers. At 6:00 pm, they spotted Plaintiff Armstead's white Dodge Charger with silver hubcaps driving West on Lane Avenue.

20. Ms. Armstead was driving home with her partner, Mr. Lewis, in the passenger seat after picking up a meal at Captain D's restaurant on 3714 Avenue H, Rosenberg, Texas 77417. When they first saw lights and sirens from the RPD vehicles, Ms. Armstead slowed down and moved over to let them pass. Ms. Armstead assumed that RPD officers were pursuing another driver because she had been abiding by traffic laws. When Ms. Armstead was

instructed to pull over via the police officer's vehicle intercom system, Ms. Armstead was confused but immediately complied, and pulled over to the shoulder of the road.

21. Once Ms. Armstead stopped, officers directed her over the vehicle intercom system to throw her keys out of the window. She did. The officers then demanded she exit the vehicle and get on the ground on her knees. Ms. Armstead kneeled with her hands up as the officers stood by their vehicle with their guns drawn. The officers then ordered Ms. Armstead to stand up and walk backwards to the police vehicle. Ms. Armstead complied with the order, walking approximately 30 feet back with her hands above her head.

22. Once Ms. Armstead reached the vehicle, an officer grabbed her arms and handcuffed her while two other officers kept their guns pointed at her. While Ms. Armstead's person was being searched and handcuffed, Mr. Lewis remained in the white Dodge Charger under the detention of RPD.

23. While being handcuffed, Ms. Armstead informed the officers that Mr. Lewis is a dialysis patient and his medical condition is managed through the use of an AV Fistula in his left forearm. Ms. Armstead further informed RPD that Mr. Lewis could not have tight items, such as handcuffs, around his left arm or wrist due to his medical condition.

24. Ms. Armstead was then placed in the back of a police vehicle and remained handcuffed in the back of that vehicle for the duration of the investigation, which lasted approximately 45 minutes.

25. Despite the fact that neither Ms. Armstead nor Mr. Lewis matched the description of the teenagers, RPD continued with their search, seizure, and "investigation," and ordered Mr. Lewis to stick his hands outside of the Dodge Charger window. Four armed officers—including one holding an assault rifle—then ordered Mr. Lewis out of the vehicle and told

him to get on the ground. Mr. Lewis responded that his age prevented him from kneeling but still lowered himself to his knees.

26. Once on his knees, RPD officers began to handcuff Mr. Lewis. He informed the officers that he had a stint in his hand and his doctor had instructed him to not put anything on his hands or wrists, just as Ms. Armstead had cautioned them. The officers ignored Mr. Lewis's concerns and handcuffed him anyway. An officer then pulled Mr. Lewis to his feet and put him in the back of a separate police vehicle where he remained for approximately 20 minutes.

27. Without requesting or receiving consent from Plaintiffs–and while Plaintiffs were still handcuffed and detained in the backseats of police vehicles–RPD officers searched the interior and trunk of Ms. Armstead's vehicle for approximately 20 minutes.

28. Mr. Lewis noticed that the area around his forearm and wrist hurt and felt tight during his detention in the back of the police vehicle.

29. On information and belief, at some point during the search of the interior of the vehicle, one of the four officers confiscated Ms. Armstead's cell phone.

30. RPD officers found no weapons, no contraband, and no other evidence of illegal activity in Ms. Armstead's vehicle during the search.

31. Following the search, RPD officers let Mr. Lewis out of the back of the police vehicle and removed his handcuffs.

32. Shortly after Mr. Lewis was uncuffed and had exited the back of the police vehicle, Ms. Armstead was permitted to exit the other police vehicle and was uncuffed. Once uncuffed, Ms. Armstead asked why she and Mr. Lewis had been stopped, detained, and searched because Plaintiffs still had not been advised of the reason for their detention. One officer

responded that they had been searching for three young men who had been "driving around and shooting at kids."

33. Once both Mr. Lewis and Ms. Armstead were uncuffed, RPD officers permitted them to leave the scene.

34. The total duration of the stop was approximately 45 minutes.

35. On the drive back to their home, Ms. Armstead realized that she did not have her phone and they did not have their house keys or the vehicle key fob. She was only able to start her vehicle and drive home because the missing fob was in close proximity to her car when she drove away. Ms. Armstead used Mr. Lewis's phone to call RPD and explained that she was missing her keys and phone. Ms. Armstead was instructed by the phone operator to return to the scene of the stop where an officer would meet her and Mr. Lewis.

36. When Ms. Armstead and Mr. Lewis returned to the place where they were stopped near Mustang and Lane Avenues, they were met by Defendant Arthur Love and another officer.

37. One of the officers returned Ms. Armstead's phone without explanation as to why it was confiscated.

38. When Ms. Armstead complained about their treatment during the stop, Defendant Love responded that she should file a complaint with RPD.

39. Defendant Love helped Ms. Armstead and Mr. Lewis find their keys. When the keys were located, still in the street, they saw that the fob had been crushed. Defendant Love instructed Ms. Armstead and Mr. Lewis to get a receipt for the cost of repairing the fob and bring it to the RPD police station, and RPD would reimburse them for the cost.

40. Mr. Lewis and Ms. Armstead went to a Dodge dealership to get their key fob repaired in the parts department. They obtained a receipt for the costs. Mr. Lewis and Ms. Armstead

submitted the receipt to RPD for reimbursement per Defendant Love's instruction, but RPD did not reimburse Mr. Lewis and Ms. Armstead for the costs of repairing the fob.

41. As a result of the handcuffing during his arrest, Mr. Lewis's medical device in his wrist malfunctioned. This resulted in three separate medical procedures to replace his fistula. These procedures caused Mr. Lewis prolonged pain and suffering.

42. There was no justification or authority under the law for Defendants to detain Plaintiffs. Moreover, there was no justification or authority under the law for Defendants to search Ms. Armstead's vehicle, and in particular, the trunk of her vehicle, without consent. Once the RPD officers realized that neither Ms. Armstead nor Mr. Lewis matched the persons of interest, they should have been free to leave. Instead, Ms. Armstead and Mr. Lewis, a couple in their fifties and sixties, were handcuffed, detained, and subjected to an unconstitutional search and seizure. Had Defendants applied the most minimal effort required of reasonable officers, the invasive detention and search would never have occurred.

43. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of the court, for which they bring suit. Specifically, both Ms. Armstead and Mr. Lewis felt frightened, humiliated, embarrassed, and persecuted for being Black, and suffered severe mental anguish from the arrest and from being detained. Mr. Lewis suffered physical harm from the unnecessary and excessive handcuffs placed around his left wrist despite Defendants having been repeatedly informed of Mr. Lewis's medical condition.

44. Defendants' conduct has altered Mr. Lewis's and Ms. Armstead's lives for the worse. Ms. Armstead no longer feels safe in the presence of police. She feels anxious whenever she

sees an RPD officer while driving. Ms. Armstead avoids any route that takes her near the scene of the November 6th stop. Mr. Lewis has similarly experienced considerable emotional distress as a result of the stop. He has had trouble with anxiety and restlessness since the incident with RPD. He fears RPD pulling him over again. Neither Plaintiff is comfortable contacting RPD for help.

### Defendants RPD and City of Rosenberg Maintain a Practice, Policy, and/or Custom of Using Unnecessary and Unreasonable Force to Execute Detentions and Arrests

45. RPD has an extensive history of using unnecessary force to affect detentions and arrests.

46. For instance, in 2017, RPD settled a civil rights lawsuit where a police officer pulled a driver out of her vehicle for not responding to an officer's command quickly enough. The officer also put unnecessary pressure on the driver's chest even though she informed him that it would damage her "port-a-cath" implant for chemotherapy. During this stop, RPD officers kicked the legs out from under the driver while she was handcuffed and punched the passenger in the vehicle and held him in a prone restraint.[1]

47. The same year, RPD settled a civil rights lawsuit after one of its officers applied too-tight handcuffs and slammed a compliant arrestee to the ground.[2]

48. RPD is currently being sued after five of its officers ambushed and tackled an unarmed man while he was walking across the street. The unarmed man had a medical issue known to officers—he is missing bones in his arms and cannot be handcuffed. RPD officers handcuffed the man anyway, causing significant injury.[3]

---

[1] *Saenz v. City of Rosenberg*, 16-cv-01793 (S.D. Tex. Mar. 9, 2017); *see also* Lea Wilson, *Couple: Rosenberg police used excessive force during arrest*, KPRC 2 (June 25, 2016), available at https://www.click2houston.com/news/2016/06/25/couple-rosenberg-police-used-excessive-force-during-arrest/; Claire Bernish, *VIDEO: Cops Show Up to "Protect" A Mother and Father–By Beating Them Into the Dirt* (June 29, 2016), available at https://thefreethoughtproject.com/cops-beat-mother-father-bloody/.
[2] *Cruz v. City of Rosenberg*, 16-cv-03167 (S.D. Tex. Aug. 4, 2017).
[3] *Martinez v. City of Rosenberg*, 21-cv-00432 (S.D. Tex.).

49. In the last five years, civilians have filed at least a dozen complaints alleging RPD officers used unnecessary force against them during traffic and pedestrian stops.

50. For instance, from 2016 to the present, four separate Rosenberg residents complained that officers either used handcuffs unnecessarily or handcuffed them too tightly.[4]

51. Civilians have also regularly complained about being violently extracted from their vehicles during stops, including being physically pulled from the car.[5]

52. Unarmed civilians have also complained that officers have pointed guns at them and held them at gunpoint even after officers confirmed the civilians were neither armed nor dangerous. For instance, on October 4, 2020, RPD officers brandished pistols and rifles at a group of unarmed civilians who were filming a music video.[6]

53. RPD officers regularly shove and body slam individuals who are not resisting arrest.[7]

54. On information and belief, RPD does not take corrective action against officers who are repeatedly the subject of civilian complaints.

55. RPD provided no documentation of corrective action in response to an open records request for the above-referenced civilian complaints.

56. RPD's Use of Force General Order 6.01 does not require officers to analyze whether their force is reasonable in light of their officers' relative physical size, age, gender, or health vis-a-vis that of the civilian with whom they are interacting.[8]

---

[4] Civilian complaints from incidents that took place on August 7, 2014; March 5, 2016; March 21, 2016; June 4, 2016; and August 25, 2021.
[5] Civilian complaints from incidents that took place on March 3, 2022; July 1, 2018; and August 7, 2014.
[6] Civilian complaint from incident that took place on October 4, 2020.
[7] Civilian complaints from incidents that took place on March 5, 2016; June 5, 2016; September 9, 2020; and February 10, 2022.
[8] Rosenberg Police Department, General Order 6.01 Use of Force (June 19, 2020), available at https://www.rosenbergtx.gov/DocumentCenter/View/1968/GO-601.

57. RPD's Use of Force General Order 6.01 does not require officers to analyze whether their force is reasonable in light of the number of officers assisting in effecting an arrest or detention.[9]

58. On information and belief, RPD does not regularly train its officers on excessive force. Documentation of training produced in response to an open records request did not include recent certificates for completion of use of force training.

### *Defendants RPD and City of Rosenberg Maintain a Policy, Practice, and/or Custom of Prolonging Detentions Without Reasonable Suspicion*

59. RPD maintains a policy, practice, or custom of conducting illegal detentions of civilians without reasonable suspicion.

60. A number of civilians from the last five years allege that they were detained for irrelevant questioning or searches after the officer had resolved the initial reason for the stop.[10]

61. For instance, on June 5, 2017, officers detained a father and his three children for 50 minutes while they investigated whether someone in the vehicle had thrown a piece of trash out of the window.[11]

62. In addition to civilian complaints, RPD officers have been documented conducting questioning and frisks where there was no justification for an interrogation or they thought a civilian's behavior was "weird."[12]

---

[9] *Id.*

[10] Civilian complaints from incidents that took place on November 19, 2021; October 6, 2020; October 10, 2019; October 21, 2019; and June 16, 2017.

[11] Civilian complaint from incident that took place on June 5, 2017.

[12] Corruption Report–Justin Pulliam, *The WORST COPS-Rosenberg, Texas*, YouTube (May 20, 2020), https://www.youtube.com/watch?v=HIRZRmAAgT4&list=PLbtjulqvNyz2XvpcyyA17c6SJVS2uMCpZ&index=2; Corruption Report–Justin Pulliam, *\*SECRET CAMERA\* Rosenberg Police ILLEGALLY STOP Hispanic Pedestrian, Glovebox Audit FAIL*, YouTube (Sep. 23, 2021), https://www.youtube.com/watch?v=lA-Mu8o8Ah8&list=PLbtjulqvNyz2XvpcyyA17c6SJVS2uMCpZ&index=3.

63. RPD officers regularly refuse to tell civilians why their detentions are being prolonged.

### *Defendant RPD and City of Rosenberg Maintain a Policy, Practice, and/or Custom of Unreasonable Searches*

64. RPD maintains a policy, practice, or custom of conducting searches of civilians without probable cause.

65. RPD encourages officers to conduct warrantless vehicle searches by providing a broad range of situations in which exigent circumstances apply and pressing for officers to conduct searches contemporaneous with vehicle stops.[13]

66. Since 2016, at least six civilians have complained that they were subject to improper vehicle searches that yielded no contraband.[14] At least three more civilians complained of their person being improperly searched.[15]

67. For instance, on June 27, 2018, RPD officers violently extracted a civilian complainant and searched the entirety of his vehicle even though he withheld consent twice.[16] The search also extended to confidential business and legal documents he had in a file folder. No drugs or other contraband were found during the search.

68. On information and belief, RPD maintains a practice of claiming to smell marijuana to justify searching a vehicle if the driver withholds consent for a search or if they are unable to articulate any other reason to conduct a search.[17]

---

[13] Rosenberg Police Department, General Order 7.04 Search Incident to Arrest and Other Warrantless Searches (May 13, 2013), available at https://www.rosenbergtx.gov/DocumentCenter/View/1974/GO-704-PDF.

[14] Civilian complaints from incidents that took place on June 4, 2016; June 11, 2018; June 27, 2018; August 29, 2019; October 4, 2021; and January 7, 2022.

[15] Civilian complaints from incidents that took place on March 5, 2016; March 21, 2016; May 29, 2017; and October 21, 2019.

[16] Civilian complaint from incident that took place on June 27, 2018.

[17] Civilian complaints from incidents that took place on October 4, 2020 and June 11, 2018.

69. RPD officers will regularly search a civilian's vehicle after the driver refuses consent to search, despite not having any probable cause.[18]

***Defendants RPD and City of Rosenberg Maintain a Policy, Practice, and/or Custom of Unjustifiably Seizing Property***

70. RPD maintains a widespread policy, practice, or custom of seizing the property, including cell phones, of individuals detained for investigatory stops regardless of the reasonableness of the seizure and/or search.

71. For instance, during a March 2016 arrest, RPD officers seized the phone of a bystander and threw it on the ground.[19] In March 2017, a civilian complained that an officer took her phone away from her while she searched for her identification in her purse.[20]

72. An RPD officer is documented taking a civilian's phone away from them during an investigatory detention to prevent the person from recording their interaction.[21]

73. During an October 2020 stop, RPD officers confiscated a memory card from a camera and refused to return it.[22]

74. In July 2019, an RPD officer aggressively tried to prevent a pedestrian from making a phone call during an investigatory stop.[23]

75. On information and belief, officers do not prepare any paperwork documenting the seizure or destruction of property when they confiscate a civilian's cell phone during an investigatory stop.

---

[18] Civilian complaints from incidents that took place on June 5, 2016 and July 1, 2018.
[19] Civilian complaint from incident that took place on March 5, 2016.
[20] Civilian complaint from incident that took place on March 20, 2017.
[21] Corruption Report–Justin Pulliam, *The WORST COPS-Rosenberg, Texas*, YouTube (May 20, 2020), https://www.youtube.com/watch?v=HIRZRmAAgT4&list=PLbtjulqvNyz2XvpcyyA17c6SJVS2uMCpZ&index=2.
[22] Civilian complaint from incident on October 4, 2020.
[23] Civilian complaint from incident on July 17, 2019.

76. On information and belief, RPD do not discipline or implement corrective action against officers when they seize a civilian's cell phone. RPD produced no records in response to an open records request documenting disciplinary action in connection with the civilian complaints released regarding cell phone confiscation or destruction.

77. On the contrary, RPD officers are actively trained and directed to confiscate cell phones or otherwise remove them from the possession of the civilian during investigatory stops. For instance, in April 2018, RPD disciplined an officer for failing to immediately confiscate the phone of a driver who had been detained and was required to complete 8 days of situational awareness training.[24]

***Defendants RPD and City of Rosenberg Do Not Accommodate People With Visible or Known Disabilities***

78. RPD does not provide accommodations for people with disabilities.

79. RPD has been sued in the past by people with disabilities after RPD officers refused to accommodate their medical needs during stops, searches, and arrests.

80. RPD is currently being sued for the violent arrest of a man missing bones in his arms.[25] RPD officers handcuffed the man even though they knew handcuffing would result in an injury.

81. RPD was sued in 2016 for brutally arresting a chemotherapy patient with a "port-a-cath" implant in her chest. RPD officers kicked the cancer patient's feet out from under her and slammed her on the ground even though her husband warned the officers that she had a medical device on her chest.[26] RPD settled the case in 2017.

---

[24] Corrective Action Form (April 12, 2018).
[25] *Supra* at n. 3.
[26] *Supra* at n. 1.

82. RPD was also sued in 2011 for violently arresting a man who was hard of hearing and breaking his hearing aid.[27]

83. RPD's Use of Force General Order 6.01 does not require police officers to consider medical vulnerability when evaluating the reasonableness of their use of force.[28]

## CLAIMS FOR RELIEF

### COUNT 1-VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEIZURES AND SEARCHES (UNLAWFUL DETENTION)

**(Claims of Plaintiffs Pursuant to 42 U.S.C. § 1983 Against All Defendants for Violations of the Fourth Amendment)**

84. Plaintiffs reallege the facts and allegations contained above as if fully set out herein verbatim.

85. A person is detained, or "seized," for purposes of the Fourth Amendment if "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

86. Defendants violated Plaintiffs' Fourth Amendment rights by unconstitutionally stopping Ms. Armstead's vehicle without reasonable suspicion, holding Ms. Armstead and Mr. Lewis at gunpoint, and subsequently unconstitutionally detaining them without reasonable suspicion by placing each of them in handcuffs and in the back of police vehicles. Under this set of facts, it is clear that any reasonable person would not have felt "free to leave."

---

[27] *Eiteman v. City of Rosenberg*, 11-cv-04633 (S.D. Tex. Oct. 9, 2013).
[28] *Supra* at n. 8.

87. Defendants did not have reasonable suspicion to detain Plaintiffs. Even if the officers had reasonable suspicion to conduct the stop, which Plaintiffs do not concede, there was no reasonable suspicion of a crime to justify a detention the moment the officers realized Mr. Lewis and Ms. Armstead did not match the description of the suspects for whom RPD was searching.

88. Defendants, by and through persons acting under color of state law, unlawfully seized Plaintiffs without their consent and without justification or authority of law. Defendants knew or should have known of the wrongfulness of Ms. Armstead's and Mr. Lewis's detention because they obviously did not match the description of the suspects for whom RPD was searching.

89. The unlawful detention of Plaintiffs was conducted pursuant to RPD and City of Rosenberg's policies, practices, or customs.

### COUNT 2-VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEIZURES AND SEARCHES (FALSE ARREST)

**(Claims of Plaintiffs Pursuant to 42 U.S.C. § 1983 Against All Defendants for Violations of the Fourth Amendment)**

90. Plaintiffs reallege the facts and allegations contained above as if fully set out herein verbatim.

91. Handcuffing a detained individual and placing them in the back of a police vehicle converts a detention to an arrest for which the arresting officer must have probable cause of a crime. *Turner v. Lieutenant Driver*, 848 F.3d 678, 693 (5th Cir. 2017).

92. Defendants, by and through persons acting under color of state law, arrested both Mr. Lewis and Ms. Armstead when they handcuffed them and placed them in the back of RPD vehicles for an extended period of time.

93. Defendants did not have probable cause that Mr. Lewis or Ms. Armstead were involved in the crime they were investigating. The fifty-seven and sixty-seven year-olds did not match the description of the teenagers Defendants were searching for, and there was no evidence connecting Mr. Lewis or Ms. Armstead to the teenagers.

94. The fact that Mr. Lewis and Ms. Armstead were driving a car with a similar make and model to the vehicle of the suspects is not sufficient to establish probable cause for an arrest. *Kansas v. Glover*, 140 S. Ct. 1183, 1191 (2020).

95. The false arrest of Plaintiffs was made pursuant to RPD and City of Rosenberg's policies, practices, or customs.

### COUNT 3-VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEIZURES AND SEARCHES (ILLEGAL SEARCH)

**(Claims of Plaintiffs Pursuant to 42 U.S.C. § 1983 Against All Defendants for Violations of the Fourth Amendment)**

96. Plaintiffs reallege the facts and allegations contained above as if fully set out herein verbatim.

97. Plaintiffs had a clearly established constitutional right to be free from unlawful search and seizure.

98. A warrantless vehicular search can only be conducted if an officer has probable cause that the car contains contraband. *United States v. Guzman*, 739 F.3d 241, 246 (5th Cir. 2014).

99. Despite the absence of a warrant or probable cause, Defendants, by and through persons acting under color of state law, unlawfully and unconstitutionally searched Plaintiffs' vehicle without their consent. For the same reasons that RPD officers did not have reasonable suspicion to extend the stop, they did not have probable cause to search the interior or trunk of Ms. Armstead's vehicle for contraband.

100.     Defendants' conduct, as described in this Complaint, deprived Plaintiffs of their right to be secure in their personal belongings against unreasonable search and seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

101.     The unlawful search of Plaintiffs' property was conducted pursuant to RPD and City of Rosenberg's policies, practices, or customs.

### COUNT 4-VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEARCH AND SEIZURE (ILLEGAL SEIZURE)

**(Claims of Plaintiff Armstead Pursuant to 42 U.S.C. § 1983 Against All Defendants for Violations of the Fourth Amendment)**

102.     An officer cannot confiscate a cell phone, even for a short duration, unless they have a reasonable suspicion that the phone contains evidence of a crime. *United States v. Place*, 462 U.S. 696 (1983).

103.     Defendants deprived Ms. Armstead of her Fourth Amendment right to be free from unreasonable seizures of her property.

104.     Defendants intentionally seized Ms. Armstead's phone without a search warrant or her consent.

105.     Defendants did not seize Ms. Armstead's phone pursuant to a valid arrest.

106.     The seizure of Ms. Armstead's phone further violated the Fourth Amendment because the police officers did not have a reasonable suspicion that Ms. Armstead was involved in the crime they were investigating or any other criminal activity.

107.     At the time of the unreasonable seizure, RPD encouraged or directly participated in the unreasonable seizure by officially authorizing, approving, or knowingly going

along with RPD officers' conduct. Moreover, RPD implemented, followed, or failed to

remedy customs, practices, or usages of making such seizures.

108.     Defendants were acting under color of law as RPD officials and officials of the

City of Rosenberg.

109.     The unlawful seizure of Ms. Armstead's property was conducted pursuant to RPD

and City of Rosenberg's policies, practices, or customs.

### COUNT 5-VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEIZURES AND SEARCHES (EXCESSIVE FORCE)

**(Claims of Plaintiffs Pursuant to 42 U.S.C. § 1983 Against All Defendants for Violations of the Fourth Amendment)**

110.     Plaintiffs reallege the facts and allegations contained above as if fully set out herein

verbatim.

111.     Officers use excessive force when they hold a civilian at gunpoint when the officer

does not reasonably believe the individual is armed and dangerous. *Brown v. Lynch*, 524

F. App'x 69, 79 (5th Cir. 2013).

112.     Defendants held Mr. Lewis and Ms. Armstead at gunpoint for an extended period

of time, after the officers should have reasonably determined that Mr. Lewis and Ms.

Armstead were not the suspects for whom they were searching.

113.     Defendants, by and through persons acting under color of state law, violated

Plaintiffs' Fourth Amendment right to be free from excessive force when they held

Plaintiffs at gunpoint after they discovered Plaintiffs were not armed teenagers.

114.     Officers also use excessive force when they apply handcuffs so tightly that they

cause an injury. *See e.g., Deville Marcantel*, 567 F.3d 156 (5th Cir. 2009).

115.     Defendants locked Mr. Lewis's handcuffs so tightly that it caused a long-lasting injury on his wrist that required multiple medical procedures and damaged his medical device. Defendants applied the handcuffs tightly despite being informed by both Ms. Armstead and Mr. Lewis that Mr. Lewis had a sensitivity due to his medical condition.

116.     Defendants violated Mr. Lewis's Fourth Amendment right to be free from excessive force by applying his handcuffs too tightly.

117.     The excessive force used against the Plaintiffs occurred pursuant to RPD and City of Rosenberg's policies, practices, or customs.

## COUNT 6-VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT —DISABILITY-BASED DISCRIMINATION

### (Claim of Plaintiff Lewis Against Defendants City of Rosenberg and Rosenberg Police Department)

118.     Plaintiffs reallege the facts and allegations contained above as if fully set out herein verbatim.

119.     Defendant RPD is a public entity and receives federal funding and is thus required to comply with the Americans with Disabilities Act ("ADA"), which protects individuals with disabilities. *See e.g., Hainze v. Richards*, 207 F.3d 795, 799–800 (5th Cir. 2000). The ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities" including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A).

120.     Under the ADA, Defendant RPD must provide the civilians with disabilities they serve with reasonable accommodations and modifications including alternative methods to detain or arrest a person with preexisting injuries or disabilities where handcuffing may exacerbate the pre-existing injury or cause a new injury.

121.     Defendant RPD refused to implement reasonable policies to ensure their officers modified their interactions with individuals with disabilities to avoid causing pain or injury, including policies on how to detain and restrain individuals with disabilities in ways that would not harm them or exacerbate their conditions. *See e.g., Borawick v. City of Los Angeles*, 793 Fed. App'x. 644, 646 (9th Cir. 2020).

122.     Defendant RPD has been sued multiple times for failure to accommodate the known disabilities and medical conditions of the civilians with whom they interact.

123.     Mr. Lewis's kidney disease makes him a "qualified individual" with a medical disability under the ADA. *See* 42 U.S.C. § 12102(1)(A), (2)(A). Mr. Lewis and Ms. Armstead both notified RPD officers of his disease and his associated wrist sensitivity for his dialysis treatment. However, RPD officers did not modify their arrest procedures. They tightly applied Mr. Lewis's handcuffs despite being informed that the pressure of the handcuffs would harm his wrist. RPD's failure to accommodate Mr. Lewis's disability resulted in him suffering a greater injury than other arrestees.

### COUNT 7-VIOLATION OF STATE LAW –CIVIL THEFT/CONVERSION

### (Claim of Plaintiff Armstead Against All Defendants)

124.     Plaintiffs reallege the facts and allegations contained above as if fully set out herein verbatim.

125.     Texas law defines conversion as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971) (internal citations omitted). "[I]t is not necessary that there be a manual taking of the property in question. The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Id*. at 447.

126.     Defendants converted Ms. Armstead's cell phone when the officers unlawfully seized the phone, and then did not return the phone to Ms. Armstead, instead, taking the cell phone with them. The officers did not have Ms. Armstead's consent to take her cell phone, and they excluded her from exercising dominion and control over her personal property even after the unlawful detention and stop had ended.

127.     Defendants also converted Ms. Armstead's keys and key fob when the officers ordered that the keys be tossed out of the window and into the street. The key fob was crushed and RPD never reimbursed Mr. Lewis and Ms. Armstead for the replacement of the fob, despite reassuring Mr. Lewis and Ms. Armstead that they would.

## CONDITIONS PRECEDENT

128.     All conditions precedent to jurisdiction have occurred or have been complied with by Plaintiffs.

## DAMAGES

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that, upon presenting the facts of this case, they recover from Defendants the following relief:

(a)     Judgment in an amount that will compensate them for the violation of their constitutional rights;

(b)     Compensatory damages, including for past and future emotional distress and mental anguish, humiliation, and any past or future medical expenses as a result of such emotional distress;

(c)     Enter a declaratory judgment, specifying Defendants' constitutional violations and declaring the rights of the Plaintiffs;

(d)     Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that Defendants' treatment of Plaintiffs was unconstitutional and in violation of 42 U.S.C. § 1983;

(e)     Declare that Defendants' acts, taken in their individual capacities, as alleged above, violate the Fourth Amendment of the U.S. Constitution;

(f)     Enter a permanent injunction preventing Defendants from maintaining unconstitutional detention, search, seizure, and use of force policies, practices, and/or customs;

(g)     Order RPD and the City of Rosenberg to adopt and implement a policy that requires officers to record on dashcam and body worn cameras any stop involving the use of force including incidents where officers draw guns or use handcuffs;

(h)     Order RPD and the City of Rosenberg to adopt and implement a policy that requires retention of dashcam and body worn camera footage, incident reports, and any other documentation of stops involving use of force for at least one year;

(i)     Order RPD and the City of Rosenberg to adopt and implement a policy that requires officers to document any vehicle search or property confiscation;

(j)     Order RPD and the City of Rosenberg to adopt and implement a policy that adequately defines and distinguishes between evidence and non-evidentiary property;

(k)     Order RPD and the City of Rosenberg to adopt and implement a policy that requires officers to retain any documentation of any vehicle search or property confiscation for at least one year;

(l)     Order RPD and the City of Rosenberg to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein;

(m)     Costs expended herein, including reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1983, 1988;

(n)     Pre- and post-judgment interest; and

(o)     Any and all other relief to which they may be entitled that the court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that, upon presentation of the facts of this cause, they recover from Defendants all such relief to which they may find themselves justly entitled.

Respectfully submitted,

NATIONAL POLICE ACCOUNTABILITY PROJECT

Lauren Bonds*
1403 Southwest Boulevard
Kansas City, Kansas 66103
(620) 664-8584
legal.npap@nlg.org

Keisha James*
PO Box 56386
Washington, DC 20040
(202) 557-9791 Telephone
keisha.npap@nlg.org

Eliana Machefsky*
2111 San Pablo Avenue
PO Box 2938
Berkeley, CA 94702
(314) 440-3505 Telephone
fellow.npap@nlg.org

*Allie Van Stean*
State Bar No. 24104711
Kizzia Johnson PLLC
1910 Pacific Avenue
Suite 13000
Dallas, Texas 75201
Tel: (214) 451-0164
Fax: (214) 451-0165
allie@kjpllc.com

s/ *Tiffany Bartley Sams**
Tiffany Bartley Sams, Esquire
PathLight Legal Corporation
SBOT 24053091
www.pathlightlegalcorporation.com
Tiffanysams@pathlightlegalcorporation.com
(P) 713-609-9622

(F) 713-589-4689

Stephen D. Dockery
Texas Bar No. 24120265
4416 Bell Street
Houston, Texas 77023
stephendd@gmail.com
202-817-6351 Telephone
pro bono attorney


\* *pro hac vice* application pending


**ATTORNEYS FOR PLAINTIFFS**


Dated this 4th day of AUGUST 2022