UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL LEWIS and REGINA. ARMSTEAD | § | Civil Action No. 4:22-cv-02593 |
| *versus* | § | |
| | § | Jury Demanded |
| ROSENBERG POLICE DEPARTMENT, CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, JOHN CLAUSEN, and RYAN CANTU | § | |

## DEFENDANT CITY'S MOTION TO DISMISS

Defendant police officers John Delgado, Adam Vasquez, Arthur Love, John Clausen, Ryan Cantu, and Defendant City of Rosenberg, Texas, move under FED. R. CIV. P. 12(b)(6), to dismiss Plaintiffs' complaint [Doc. 1] for failure to state a claim upon which relief may be granted.

## CERTIFICATE OF COMPLIANCE

Consistent with the Court's pre-filing requirement, on September 1, 2022, Defendants informed Plaintiffs of Plaintiffs' pleading deficiencies that are grounds for dismissal under Rule 12(b)(6). Plaintiffs stated they do not intend to file an amended complaint.

Page **1** of **30**

TABLE OF CONTENTS

CERTIFICATE OF COMPLIANCE ............................................................................. 1

TABLE OF CONTENTS ............................................................................................ 2

TABLE OF AUTHORITIES ....................................................................................... 4

NATURE AND STAGE OF PROCEEDINGS ............................................................... 10

STATEMENT OF THE ISSUES .................................................................................. 10

PLAINTIFFS' ALLEGATIONS .................................................................................. 10

SUMMARY OF THE ARGUMENT ............................................................................ 12

ARGUMENT & AUTHORITIES ................................................................................ 12

I.      Standard of Review ................................................................................... 12

    II.      Plaintiffs do not allege any Fourth Amendment claim. ........................ 13

        A.      Fourth Amendment Standard .................................................. 13

        B.      Neither Plaintiff Alleges a Claim of Any Constitutional Violation ........... 17

    III.     Lewis fails to state a claim under the ADA ................................. 20

    IV.      Plaintiffs Fail to Allege Facts to Overcome Any Officer's Qualified Immunity .......... 21

        A.      Officers Are Immune from Plaintiffs' Fourth Amendment Claims ........... 22

        B.      Officers are Immune from Lewis' ADA Claim .......................... 24

    V.      Plaintiffs Fail to State a Claim of Municipal Liability ................. 25

        A.      Plaintiffs Fail to Identify an Unconstitutional City Policy. ........ 25

        B.      Plaintiffs Fail to Allege Facts to Show the City's Policymaker is Liable ....... 26

        C.      Plaintiffs Do Not Allege the City's Policymaker *caused* Any Deprivation ......... 27

    VI.      The City is Immune From All Common Law Claims .................... 28

        A.      No waiver for intentional tort of conversion ........................ 28

        B.      Officers statutorily immune under §101.106(e) ..................... 29

CONCLUSION....................................................................................................................... 30

CERTIFICATE OF SERVICE ............................................................................................. 30

TABLE OF AUTHORITIES

Page(s)

Cases

*Alexander v. Walker*,
     435 S.W.3d 789 (Tex. 2014)................................................................................................27

*Arizona v. Hicks*,
     480 U.S. 321 (1987)........................................................................................................18

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)..................................................................................................12, 20

*Baker v. McCollan*,
     443 U.S. 137 (1979)..................................................................................................14, 18

*Bell Atl. Corp. v. Twombly*,
     127 S. Ct. 1955 (2007)....................................................................................................24

*Blackburn v. City of Marshall*,
     42 F.3d 925 (5th Cir. 1995) ............................................................................................12

*Board of the County Commissioners of Bryan County Oklahoma v. Brown*,
     520 U.S. 397, 117 S. Ct. 1382 (1997).......................................................................25, 26

*Borawick v. City of Los Angeles*,
     793 Fed. App'x. 644 (9th Cir. 2020) ..............................................................................23

*Brothers v. Zoss*,
     837 F.3d 513 (5th Cir. 2016) ..........................................................................................18

*Brown v. Lynch*,
     524 F. App'x 69 (5th Cir. 2013) .....................................................................................23

*Carroll v. Ellington*,
     800 F.3d 154 (5th Cir. 2015) ..........................................................................................16

*City & Cty. of S.F. v. Sheehan*,
     575 U.S. 600 (2015)..................................................................................................20, 24

*City of Galveston v. State*,
     217 S.W.3d 466 (Tex. 2007)...........................................................................................27

*Cooper v. Brown*,
     844 F.3d 517 (5th Cir. 2016) ..........................................................................................23

*Craig v. Dallas Area Rapid Transit Auth.*,
　　504 Fed. App'x 328 (5th Cir. 2012) ...................................................................28

*Diaz v. Cent. Plains Reg'l Hosp.*,
　　802 F.2d 141 (5th Cir. 1986) .............................................................................27

*District of Columbia v. Wesby*,
　　138 S. Ct. 577 (2018)........................................................................................14

*Dunn v. Denk*,
　　79 F.3d 401 (5th Cir. 1996) ...............................................................................16

*Edmiston v. La. Small Bus. Dev. Ctr.*,
　　931 F.3d 403 (5th Cir. 2019) .............................................................................24

*Ford v. Mem'l Hermann Greater Heights Hosp.*,
　　Civil Action No. H-21-3017, 2022 U.S. Dist. LEXIS 128300 (S.D. Tex. 2022)
　　(Hittner, J.) ........................................................................................................11

*Garcia v. City of Harlingen*,
　　No. B-06-CV-134, 2009 U.S. Dist. LEXIS 4135 (S.D. Tex. 2009) (Hanen, J.)......................28

*Glenn v. City of Tyler*,
　　242 F.3d 307 (5th Cir. 2001) .......................................................................16, 23

*Gomez v. Galman*,
　　18 F.4th 769 (5th Cir. 2021) ..............................................................................24

*Gonzalez v. Ysleta Indep. Sch. Dist.*,
　　996 F.2d 745 (5th Cir. 1993) .............................................................................24

*Graham v. Connor*,
　　490 U.S. 386, 109 S. Ct. 1865 (1989)...............................................................14

*Hainze v. Richards*,
　　207 F.3d 795 (5th Cir. 2000) ...............................................................19, 23, 24

*Hale v. King*,
　　642 F.3d 492 (5th Cir. 2011) .......................................................................19, 20

*Hughes v. Belle Station*,
　　No. 4:20-CV-00905, 2021 U.S. Dist. LEXIS 190671 (S.D. Tex. 2021)
　　(Ellison, J.).........................................................................................................28

*Illinois v. Gates*,
　　462 U.S. 213 (1983)..........................................................................................14

*James v. Harris County*,
    577 F.3d 612 (5th Cir. 2009) ......................................................................26

*Kansas v. Glover*,
    140 S. Ct. 1183 (2020) ...............................................................................22

*Lincoln v. Turner*,
    874 F.3d 833 (5th Cir. 2017) .................................................................18, 22

*Maddux v. Officer One*,
    90 F. App'x 754 (5th Cir. 2004) ..................................................................25

*Meadours v. Ermel*,
    483 F.3d 417 (5th Cir. 2007) .................................................................12, 23

*Morrow v. Meachum*,
    917 F.3d 870 (5th Cir. 2019) ......................................................................21

*Murphy v. Kellar*,
    950 F.2d 290 (5th Cir. 1992) ......................................................................12

*Newman v. Obersteller*,
    960 S.W.2d 621 (Tex. 1997) .......................................................................28

*Pelzel & Assocs.*,
    77 S.W.3d at 248 ........................................................................................28

*Pierce v. Smith*,
    117 F.3d 866 (5th Cir. 1997) ......................................................................21

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001) ......................................................................26

*Ratliff v. Aransas Cty.*,
    948 F.3d 281 (5th Cir. 2020) .................................................................24, 25

*Reata Constr. Corp. v. City of Dallas*,
    197 S.W.3d 371 (Tex. 2006) .......................................................................27

*Rockwell v. Brown*,
    664 F.3d 985 (5th Cir. 2011) ......................................................................16

*Simmons v. Poppell*,
    837 F.2d 1243 (5th Cir. 1988) ....................................................................18

*Sligh v. City of Conroe*,
    No. 4:20-cv-01417, 2022 U.S. Dist. LEXIS 139452 (S.D. Tex. 2022)
    (Eskridge, J.) ..............................................................................................19

*Smith v. Heap,*
    31 F.4th 905 (5th Cir. 2022) ..................................................................................12, 19

*Snyder v. Trepagnier,*
    142 F.3d 791 (5th Cir. 1998) .........................................................................................24

*Soldal v. Cook Cty.,*
    506 U.S. 56 (1992).........................................................................................................18

*Spiller v. Tex. City, Police Dep't,*
    130 F.3d 162 (5th Cir. 1997) .........................................................................................24

*Sutton v. United Air Lines, Inc.,*
    527 U.S. 471 (1999).......................................................................................................19

*Tarver v. City of Edna,*
    410 F.3d 745 (5th Cir. 2005) .........................................................................................23

*Templeton v. Jarmillo,*
    28 F.4th 618 (5th Cir. 2022) ............................................................................16, 18, 21

*Terry v. Ohio,*
    88 S. Ct. 1868 (1968)...................................................................................13, 15, 18, 19, 23

*Thompson v. Steele,*
    709 F.2d 381 (5th Cir. 1983) .........................................................................................12

*Toyota Motor Mfg., Ky., Inc. v. Williams,*
    534 U.S. 184 (2002).......................................................................................................20

*Turner v. Driver,*
    848 F.3d 692 (5th Cir. 2017) .........................................................................................22

*U.S. v. Antone,*
    753 F.2d 1301 (5th Cir. 1985) .......................................................................................14

*United States v. Abdo,*
    733 F.3d 562 (5th Cir. 2013) .........................................................................................14

*United States v. Arvizu,*
    534 U.S. 266 (2002)..................................................................................................21, 22

*United States v. Banuelos-Romero,*
    597 F.3d 763 (5th Cir. 2010) .........................................................................................15

*United States v. Castelo,*
    415 F.3d 407 (5th Cir. 2005) ....................................................................................16, 17

*United States v. Gonzalez,*
   190 F.3d 668 (5th Cir. 1998) ........................................................................................13

*United States v. Grant,*
   349 F.3d 192 (5th Cir. 2003) ........................................................................................13

*United States v. Guzman,*
   739 F.3d 241 (5th Cir. 2014) ........................................................................................22

*United States v. Jordan,*
   232 F.3d 447 (5th Cir. 2000) ........................................................................................14

*United States v. Mendenhall,*
   446 U.S. 544 (1980) ................................................................................................21, 22

*United States v. Place,*
   462 U.S. 696 (1983) ................................................................................................22, 23

*United States v. Reyes,*
   792 F.2d 536 (5th Cir. 1986) ........................................................................................15

*United States v. Sanders,*
   994 F.2d 200 (5th Cir. 1993) ..................................................................................13, 17

*United States v. Sharpe,*
   470 U.S. 675 (1985) ................................................................................................13, 17

*United States v. Sinisterra,*
   77 F.3d 101 (5th Cir. 1996) ..........................................................................................15

*United States v. Thomas,*
   997 F.3d 603 (5th Cir. 2021) ..................................................................................13, 15

*United States v. Yanez,*
   No. 4:19-CR-218, 2022 U.S. Dist. LEXIS 6376 (S.D. Tex. 2022) (J. Hanen)........................13

*Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.),*
   495 F.3d 191 (5th Cir. 2007) ..................................................................................11, 12

*Westfall v. Luna,*
   903 F.3d 534 (5th Cir. 2018) ........................................................................................19

*White v. Pauly,*
   137 S. Ct. 548 (2017) ....................................................................................................12

*Windham v. Harris Cnty.,*
   875 F.3d 229 (5th Cir. 2017) ..................................................................................19, 20

*Ybarra v. Tex. HHS Comm'n,*
    Civil Action No. B-17-174, 2018 U.S. Dist. LEXIS 138869 (S.D. Tex. 2018)
    (Morgan, M.J.) ...................................................................................................................27

## Authorities

42 U.S.C. § 1983 .................................................................................................9, 12, 14, 18, 26

ADA Title II, 42 U.S.C. § 12132 ................................................................9, 10, 11, 19, 20, 23

Tex. Civ. Prac. & Rem. Code § 101.106(e) ...........................................................................28

Tex. Civ. Prac. & Rem. Code Section §101.021 ....................................................................27

Texas Tort Claims Act ................................................................................................9, 11, 27

29 C.F.R. § 1630.2(i) .............................................................................................................20

United States Constitution Fourth Amendment .........................................11, 12, 13, 16, 18, 19, 21

Fifth Circuit Rule 47.5 ...........................................................................................................23

FED. R. CIV. P. 12(b)(6) ...............................................................................................1, 9, 11

## NATURE AND STAGE OF PROCEEDINGS

1.       This is a lawsuit is under 42 U.S.C. § 1983, alleging arrest without probable cause and excessive force against individual police officers and municipal liability against the City as well claims under the Americans with Disabilities Act, as Amended ("ADA") and Texas common law tort claims against the individual police officers and the City.

2.       Plaintiffs' complaint [Doc. 1] fails to state a claim upon which relief may be granted. Accordingly, Defendants move to dismiss all claims under Rule 12(b)(6).

## STATEMENT OF THE ISSUES

3.       Plaintiffs fail to allege facts to plausibly show any Defendant violated the Constitution or laws of the United States— much less plead plausible factual allegations that any individual Defendant violated a clearly established federal right, sufficient to overcome the presumption of each individual Defendant's immunity from suit.

4.       Plaintiffs' state law tort claims asserted against all Defendants are barred by governmental immunity not waived by the Texas Tort Claims Act and the Act's election of remedies provision.

5.       Plaintiffs fail to allege facts to plausibly state a claim under the Americans with Disabilities Act.

6.       Plaintiffs fails to plead factual allegations to support a *Monell* claim against the City.

## PLAINTIFFS' ALLEGATIONS

7.       On November 6, 2020, Rosenberg Police Department ("RPD") received a "weapons call" reporting that a group of Black teenagers had brandished guns to a group of kids at 3324 River Road SW Rosenberg, Texas. [Doc. 1, ¶18]. The caller reported the suspect teenagers fled in a white vehicle with tinted windows and black rims. *Id.* RPD dispatched police officers John Delgado, Ryan Cantu, Adam Vasquez, Arthur Love, and John Clausen to search for the suspects. *Id* at ¶19.

8.      A RPD officer, who Plaintiffs fail to identify, observed Plaintiff Armstead's white dodge charger with silver hubcaps. *Id.*   Plaintiff Lewis was riding passenger. *Id.* Despite seeing police lights and hearing sirens, Plaintiff Lewis did not stop and instead slowed down to move over before being instructed over patrol unit speaker to pull over. [Doc. 1, ¶¶20-21]. Once Plaintiffs' vehicle stopped, an RPD officer—who Plaintiffs fail to identify, instructed Plaintiff Armstead, via patrol unit speaker, to throw the vehicle's keys out of the window, exit the vehicle, and walk backwards towards the police officers, an instruction with which Plaintiff Armstead complied. *Id.*

9.      A RPD officer, who Plaintiffs fail to identify, handcuffed Plaintiff Armstead and placed her in the back of a patrol unit without incident for the duration of the investigatory stop. *Id* at ¶¶22-25. An officer that Plaintiffs failed to identify instructed Plaintiff Lewis to exit the vehicle next, after which an officer Plaintiffs failed to identify handcuffed Lewis and placed Lewis in a patrol unit for the remainder of the investigation. *Id* at ¶¶26-28. Several RPD officers, who Plaintiffs fail to identify, searched the interior and trunk of Plaintiff Armstead's vehicle, and an RPD officer—who Plaintiffs fail to identify, confiscated Plaintiff Armstead's cell phone. *Id* at ¶29. A RPD officer, who Plaintiffs fail to identify, released both Plaintiffs from the patrol unit, removed their handcuffs and allowed Plaintiffs to leave.  *Id* at ¶¶30-34.

10.     After leaving the scene, Plaintiff Armstead allegedly realized she did not have her vehicle's key fob or her cellphone, so Armstead used Lewis' phone to call RPD and inform RPD accordingly. [Doc. 1, ¶35]. A phone operator, who Plaintiffs fail to identify, reportedly instructed Plaintiff Armstead to return to area of the investigatory stop where Plaintiffs were met by Officer Love and another unidentified officer. *Id.* An unidentified officer returned Plaintiff Armstead's phone. *Id.* Officer love assisted Plaintiff Armstead locate her vehicle's key fob which was located in the street, but it appeared that the key fob had been crushed. *Id* at ¶¶36-39. Officer Love

instructed Plaintiffs to obtain a receipt for the cost of repairing the key fob and to submit a claim for reimbursement. *Id* at ¶¶39-40.

11.     This ended the Rosenberg police officers' interactions with both Plaintiffs.

## SUMMARY OF THE ARGUMENT

12.     Plaintiffs fail to allege facts which state a plausible claim for relief. Plaintiffs' allegations do not make out a clam of a violation of the Fourth Amendment to the United States Constitution. Additionally, Plaintiffs fail to allege facts which overcome the presumption of the individual Defendants' immunity. Plaintiffs also fail to allege plausible factual allegations to state a claim under the Americans with Disability Act. Plaintiffs' state law tort claims against the City are barred by governmental immunity not waived by the Texas Tort Claims Act, and the Act's election of remedies provision bars suit against the individual city employees. Lastly, like practically every other suit claiming arrest without probable cause or excessive force, Plaintiffs' allegations do not state a *Monell* claim against the City, even if, purely *arguendo,* either Plaintiff could state a claim against any officer.

## ARGUMENT & AUTHORITIES

### I.     Standard of Review

13.     "Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." *Ford v. Mem'l Hermann Greater Heights Hosp.*, Civil Action No. H-21-3017, 2022 U.S. Dist. LEXIS 128300, at *2 (S.D. Tex. 2022) (Hittner, J.). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "While the allegations need not be overly detailed, a plaintiff's pleading must still provide the

grounds of his entitlement to relief, which 'requires more than labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.; see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

14.     To state a claim against an individual defendant, a plaintiff must allege facts which show a claim against each individual defendant they sue based on an identification of each individual defendant's conduct, which must be analyzed separately. *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Meadours v. Ermel*, 483 F.3d 417, 421-422 (5th Cir. 2007). Those allegations must specify each defendant's **personal involvement** in conduct that caused a constitutional violation to support any claim against that defendant. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

## II.     Plaintiffs do not allege any Fourth Amendment claim.

### A.  Fourth Amendment Standard

15.     First and foremost in the analysis of all of Plaintiffs' § 1983 claims in this case, the Court should apply the decision of the Fifth Circuit in *Smith v. Heap*, 31 F.4th 905 (5th Cir. 2022) in which, in reversing a denial of a motion to dismiss, the Fifth Circuit made clear that "[i]t is reasonable to detain a suspect at gunpoint, handcuff [them], and place [them] in a police car during an investigatory stop." *Id.*, at 911 (cleaned up). An analysis of each of the numerous claims attempt to assert reveals Plaintiffs' failure to state a claim for conduct practically identical to that which the Fifth Circuit found failed to state a claim in *Smith v. Heap.*

### 1. Detention

16.     "Because traffic stops are more appropriately considered investigative detentions rather than formal arrests, the Fifth Circuit has said that the legality of a traffic stop should be analyzed for Fourth Amendment purposes pursuant to the Supreme Court's *Terry*-stop standard." *United States v. Grant,* 349 F.3d 192, 193 (5th Cir. 2003) (Citing *Terry v. Ohio*, 88 S. Ct. 1868, (1968). A lower standard than probable cause is required for a constitutional stop. "The investigatory stop must be supported by a reasonable suspicion 'that the person apprehended is committing or has committed a criminal offense.'" *United States v. Thomas*, 997 F.3d 603, 609 (5th Cir. 2021) (quoting *Arizona v. Johnson*, 555 U.S. 323, 326, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). "[A]n alert or BOLO [be on the lookout] report may provide the reasonable suspicion necessary to justify an investigatory stop." *United States v. Gonzalez*, 190 F.3d 668, 672 (5th Cir. 1998). See also, *United States v. Yanez*, No. 4:19-CR-218, 2022 U.S. Dist. LEXIS 6376, at *5 (S.D. Tex. 2022) (J. Hanen).

17.     Notably as to the question of clearly established law - which Plaintiffs must identify to avoid dismissal based on the presumption of the officers' immunity - the Supreme Court has refused to adopt a "bright line" rule as to whether an investigative detention is unreasonable, or a "hard-and-fast time limit for a permissible *Terry* stop." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Instead, "common sense and ordinary human experience must govern over rigid criteria." *Id.* at 685.

### 2. Allegation the Detention was an Arrest

18.     "[U]sing some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect--whether singly or in combination—do[es] not automatically convert an investigatory detention into an arrest requiring probable cause." *United*

*States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993). Contrarily, the Fifth Circuit has held that "after making a proper Terry stop, the police are within their constitutional authority to pat down a party and to handcuff him for their personal safety even if probable cause to arrest is lacking." *United States v. Jordan*, 232 F.3d 447, 449 (5th Cir. 2000).

19.     "When a suspect is considered dangerous, requiring him to lie face down on the ground is the safest way for police officers to approach him, handcuff him and finally determine whether he carries any weapons." *United States v. Abdo*, 733 F.3d 562, 566 (5th Cir. 2013). "Placing [Plaintiffs] inside the air conditioned police car rather than leaving [them] lying on the ground did not significantly increase the intrusiveness of the stop and transform the detention into an arrest." *Id.*

20.     Even if probable cause was required for Plaintiffs' temporary detention—which it is not, "[p]robable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 323 (1983). "The probable cause issue must be analyzed under the 'totality of the circumstances' as to whether there is a 'fair probability' that a crime is occurring." *U.S. v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 237 (1983)). Probable cause is an objective standard that must be viewed from the perspective of a hypothetical reasonable officer." *Devenpeck*, 543 U.S. 153; *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865 (1989). "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

### 3.   Search - Stop & Frisk

21.       *"Assuming the initial stop was lawful, '[i]n order to ensure their safety during the stop, police may frisk the subject for weapons that they reasonably suspect he may carry.'" United States v. Thomas*, 997 F.3d 603, 614 (5th Cir. 2021) (internal citations omitted). "[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, **regardless of whether he has probable cause to arrest** the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* 392 88 S. Ct. 1868, 1883 (emphasis added).

### 4.   Search - Automobile Search

22.       The Fifth Circuit "has consistently held that the automobile exception applies where there are both exigent circumstances and probable cause to believe that the vehicle in question contains property that the government may properly seize." *United States v. Reyes*, 792 F.2d 536, 538 (5th Cir. 1986). "In a vehicle stop on a highway, 'the fact of the automobile's potential mobility' supplies the requisite exigency." *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (quoting *United States v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996)). "The rule applicable here is that if, under the totality of the circumstances, officers have probable cause to believe that a vehicle contains contraband, they are authorized to search the van without a warrant." *United States v. Sinisterra*, 77 F.3d 101, 105 (5th Cir. 1996).

23.       "Probable cause to search an automobile exists where trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband. In determining whether probable cause exists, each individual layer

of information is not to be weighed. Rather the laminated total of the facts available is the source of the justification for a vehicle search." *United States v. Castelo*, 415 F.3d 407, 408 (5th Cir. 2005) (internal citations omitted).

### 5. Excessive Force

24.     To establish a Fourth Amendment excessive force claim, Plaintiffs must allege facts showing: (1) [Plaintiffs] suffered an injury; (2) that resulted directly and only from the use of force that was excessive to the need; and (3) the force used was objectively unreasonable. *Carroll v. Ellington*, 800 F.3d 154, 173 (5th Cir. 2015). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011).

25.     "Handcuffing [a Plaintiff's] hands behind his back, [is] a routine police procedure." *Dunn v. Denk,* 79 F.3d 401, 403 (5th Cir. 1996). "Tight handcuffing alone, even where a detainee sustains minor injuries, does not present an excessive force claim." *Templeton v. Jarmillo,* 28 F.4th 618, 622 (5th Cir. 2022). *See also*, *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

### B.  Neither Plaintiff Alleges a Claim of Any Constitutional Violation

26.     On the face of *Plaintiffs' own pleading admissions*, [Doc. 1, ¶¶18-20], any defendant officer - although none is individually identified - may have rationally inferred the potential the occupants of Plaintiffs' vehicle – a White Dodge Charger - were the people who reportedly committed a crime involving weapons based an active "weapons call" from dispatch reporting fleeing suspects in a white vehicle with tinted windows and black rims just five-minutes before officers saw the Plaintiffs' vehicle in the area of the call. This provided at least reasonable suspicion to allow a *Terry Stop.*

### 1. Neither Plaintiff was "Arrested"

27.     Under clear Supreme Court and circuit authority, what each Plaintiff describes is an investigatory stop, not an arrest. *Compare Sanders*, 994 F.2d 206. Both Plaintiffs fail to allege any facts to show their investigatory stop ever changed to an arrest. Indeed, Plaintiffs own pleading admissions that both were permitted to leave shortly after officers had the opportunity to ensure neither was a perpetrator of the crime just committed, actually disproves Plaintiffs' *ipse dixit* assertion of an "arrest."

### 2. Probable Cause Existed to Search Plaintiffs and Their Vehicle

28.     Plaintiffs also fail to plead facts to show officers could not have reasonable suspicion to stop and frisk Plaintiffs for weapons during the officers' response to a weapons call with reported fleeing suspects in a vehicle matching Plaintiffs' vehicle.   Moreover, Plaintiffs' conclusory assertion that an alleged 45-minute stop is *per se* unreasonable stands quite contrary to clearly established law. *See, Sharpe*, 470 U.S. 686.

29.     Officers also had probable cause, based upon exigency, to conduct a warrantless search of Plaintiffs' vehicle based on the dispatch report of armed suspects in a vehicle matching the description of the Plaintiffs' vehicle coupled with Plaintiff Armstead's admitted hesitancy in stopping the vehicle when haled. [Doc. 1, ¶¶18, 20-21]. Further, [w]here probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Castelo*, 415 F.3d 408.

### 3. Failure to Return a Cell Phone is Not Unconstitutional

30.     Armstead offers conclusory assertions – not *facts* to state a plausible claim - that an individual officer, who Plaintiffs do not even name, intentionally seized her cell phone. However, this allegation is disproven by Armstead's own pleading admission that the officer returned the

cellphone shortly after the stop—when Armstead called RPD to inform RPD that Armstead had not retrieved her cell phone after being released from the *Terry* stop. [Doc. 1¶¶ 35-37; 102-109] Armstead fails to allege any meaningful interference with the cell phone to constitute a "seizure" under the Fourth Amendment. Compare *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992); *Arizona v. Hicks*, 480 U.S. 321, 324 (1987).

31.    At most, Armstead's claim of unlawful seizure of her cellular phone is *by her own pleading allegations* a claim that an unidentified officer failed to give the cell phone back until Armstead called to ask the officer to return her cell phone, which Armstead admits the officer then promptly returned. While this may be negligence – in and of itself a questionable proposition – negligence is not actionable under § 1983, See *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Armstead's only allegations make clear she does not allege facts of intentional conduct that violates the Consitution, both necessary to state a claim under §1983. Simply put, § 1983 "not implicated by a state official's negligent act causing unintended loss of property." *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)).

### 4.   No officer used excessive force

32.    Plaintiffs claim of excessive force claim based on "tight handcuffs alone" should be dismissed under clearly established circuit precedent. *Cf., Jarmillo*, 28 F.4th 622. Plaintiff Lewis' pleading admission that Lewis' alleged injury was based on not the handcuffs, but rather a medical Lewis wore also defeats the "directly and **only**" element of a *prima facie* claim of excessive force. *Cf., Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017).

33.    Plaintiffs also fail to allege facts showing any injury that occurred as a result of an individual officer drawing his weapon on Plaintiffs. First, this is not a use of force at all. *See Brothers v. Zoss*, 837 F.3d 513 (5th Cir. 2016). Further, Plaintiffs fail to allege facts showing any

injury from having a gun pointed at them. "Although [the Fifth Circuit] no longer require[s] 'significant injury' for excessive force claims, the injury must be more than *de minimis*." *Westfall v. Luna*, 903 F.3d 534, 549 (5th Cir. 2018) (quoting *Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005). As the Fifth Circuit held in *Heap, supra*[1] Plaintiffs' assertion of "guns pointed at them" fails to state a Fourth Amendment claim of excessive force.

### III.   Lewis fails to state a claim under the ADA

34.     To state claim under Title II of the ADA, 42 U.S.C. § 12132, Plaintiff Lewis must allege facts that show (1) Lewis was a qualified individual under the ADA; (2) Lewis was denied benefits by the City, or is otherwise being discriminated against by the public City; and (3) such denial of benefits or discrimination is by reason of his disability. *Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017) (internal citations omitted). Lewis fails on each of these elements, even though Title II does not apply to Lewis's *Terry* stop.

35.     First, "Title II [of the Americans with Disability Act] **does not apply** to an officer's on-the-street responses to reported disturbances or other similar incidents… prior to the officer's securing the scene and ensuring that there is no threat to human life." *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000) (emphasis added). This Court has held in accord. *See, e.g., Sligh v. City of Conroe*, No. 4:20-cv-01417, 2022 U.S. Dist. LEXIS 139452 (S.D. Tex. 2022) (Eskridge, J.);

36.     Even if, *arguendo* Lewis had plead facts to show the scene was secure *before Lewis was alleged injured when handcuffed*, the threshold requirement for Lewis' ADA claim requires *facts* showing officers were aware Lewis suffered from a disability protected by the Act. *See Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011).

37.     "Whether a person has a disability under the ADA is an individualized inquiry." *Sutton v.*

---

[1] This is the "clearly established law" on this issue, at least in this circuit.

*United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193-94 (2002). Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). Plaintiffs fail to allege facts to show Lewis "kidney disease" qualifies as a disability under the ADA, negating a *prima facie* case of this claim. *King*, 642 F.3d 500. Instead, Plaintiffs allege only conclusory statements insufficient to support a claim under the ADA. *Iqbal*, 556 U.S. at 678.

38.     Even if Lewis' alleged "kidney disease" qualifies as a disability, Lewis' claim also fails because Lewis does not allege *any* facts to show "the disability and its consequential limitations were known by the [City]" and the officers had knowledge of both the resulting limitation and the necessary accommodation. *Windham*, 875 F.3d at 236-38. Lastly, to recover compensatory damages under the ADA, a plaintiff must [allege facts which show] that discrimination was intentional. *Windham*, 875 F.3d at 235 n.5. Simply put, other than alleging a disability *when he filed suit,* Lewis fails to allege facts to establish any element of a claim under Title II of the ADA *even if* it could apply to Lewis' claims.[2]

## IV.     Plaintiffs Fail to Allege Facts to Overcome Any Officer's Qualified Immunity

39.     "To overcome the officers' qualified immunity defense, a plaintiff must allege facts showing that the officers (1) 'violated a statutory or constitutional right, and (2) that the right was

---

[2] The question of a municipality's vicarious liability for an officer's alleged violation of Title II in the course of an arrest is not established in the law and remains open. See, *City & Cty. of S.F. v. Sheehan*, 575 U.S. 600, 608-610 (2015). However, the Supreme Court's opinion in *Sheehan* made clear the applicability of the same presumption of immunity, which must be disproven by a plaintiff based upon, as to the second element of immunity, "a robust consensus of cases of persuasive authority" *Id.* at 617 (cleaned up), on which the *Sheehan* Court expressly held "no such consensus exists here." *Id.*

'clearly established' at the time of the challenged conduct." *Jarmillo*, 28 F.4th 621 (quoting

*Ashcroft v. Al-Kidd*, 563 U.S. 731-35 (2011). "Because the officers invoked a qualified immunity

defense, the burden shifts to [Plaintiffs' to show the officers violated his clearly established rights.

*Jarmillo*, 28 F.4th 621.

40.     "The second question—whether the officer violated clearly established law—is a doozy."

*Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "A right is clearly established [only] when

it is defined 'with sufficient clarity to enable a reasonable official to assess the lawfulness of his

conduct.'" *Jarmillo*, 28 F.4th 621(citing *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th

Cir. 2002). "Although a plaintiff does not need to identify a case 'directly on point' to meet this

burden, he must identify caselaw that 'place[s] the statutory or constitutional question beyond

debate.'" *Jarmillo*, 28 F.4th 621 (quoting *al-Kidd*, 563 U.S. 731, 741, (2011)). "Citing caselaw

generally referring to the prohibition on officers' using excessive force does not suffice. *Id.* Rather,

"[o]vercoming qualified immunity requires showing clearly established law supporting the

plaintiff's claim, and that demands "that the legal principle clearly prohibit the officer's conduct

in the particular circumstances before him." *Jarmillo*, 28 F.4th 621 (quoting *District of Columbia

v. Wesby*, 138 S. Ct. 577, 590 (2018). This portion of the analysis "focuses not only on the state of

the law at the time of the complained of conduct, but also on the particulars of the challenged

conduct and/or factual setting in which it took place." *Pierce v. Smith*, 117 F.3d 866, 882 n. 5 (5th

Cir. 1997).

### A. Officers Are Immune from Plaintiffs' Fourth Amendment Claims

41.     Plaintiffs cite *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) and *United States v.

Arvizu*, 534 U.S. 266, 273 (2002) to support their claim of unlawful detention. [Doc. 1¶85].

Mendenhall is a criminal case in which the court held federal agents **did have** reasonable suspicion

to temporarily detain the criminal defendant. *Mendenhall*, 100 S. Ct. 1880. *Arizu* is a criminal case in which Supreme Court held s federal agent **had** reasonable suspicion to initiate an investigatory stop. *Arvizu*, 122 S. Ct. 747. Not only are neither of these cases factually analogous to the case at bar, beither *Mendenhall* nor *Arizu* could put any officer on notice that their conduct was unlawful as the officers in those cases were found to have acted lawfully.

42.      Plaintiffs cite *Turner v. Driver*, 848 F.3d 692 (5th Cir. 2017), to support claim of an arrest without probable cause.   However, the facts in *Turner* are a far stretch from the facts in the instant case. Turner was temporarily detained then placed in the back of a patrol unit after several officers observed Turner filming routine activities at the Fort Worth Police Department. *Turner,* 848 F.3d 692. *Turner* is nothing like the case of officers responding to a weapons call where several suspects brandished weapons at children then fled in a vehicle that closely matched the description of Plaintiffs' vehicle which was found in the area minutes later. Plaintiffs also cite *Kansas v. Glover*, 140 S. Ct. 1183, 1191 (2020), to support their claim of arrest without probable cause. However, again, the Supreme Court in *Glover* found the officer **had sufficient reasonable suspicion** to initiate the traffic stop. *Glover*, 140 S. Ct., 1191.

43.      Regarding their illegal search claim, Plaintiffs cite *United States v. Guzman*, 739 F.3d 241, 246 (5th Cir. 2014), but *Guzman* is a criminal case that analyzed whether officers had probable cause to search based on Guzman's **alleged consent** to search Guzman's vehicle. Here, Plaintiffs do not contend-and Defendants do not assert- probable cause is based on consent by Plaintiffs. Thus, *Guzman* cannot support any clearly established law to support an illegal search claim such that any officers are not entitled to qualified immunity.

44.      As to an alleged illegal seizure of the cell phone claim, Plaintiffs cite the 1983 Supreme Court's decision in *United States v. Place*, 462 U.S. 696 (1983), which has absolutely no bearing

on the facts of the instant case. *Place* is a criminal case in which Place was confronted by DEA agents at an airport and his luggage was seized to have a K-9 determine whether Place's luggage contained narcotics. The *Place* Court held a 90-minute seizure lasted too long for offices to determine the simple issue of whether narcotics were in the luggage. *Place*, 103 S. Ct. 2646. Plaintiffs fail to allege factual allegations that bear any similarity to *Place.* The *Place* decision could not have put these officers on notice that their *Terry* stop of the Plaintiffs was so unconstitutional that no reasonable officer could believe otherwise.

45.     Lastly, but understandably, Plaintiffs fail to identify any case to support their claim of excessive force based on tight handcuffs. The Fifth Circuit's decision in *Glenn*, 242 F.3d 314; *Tarver*, 410 F.3d 752; and *Gore*, 483 F.3d 417 all preclude Plaintiffs' excessive force claim, on *both* elements of the immunity analysis. Plaintiff cited one unpublished case, *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) to support the proposition that guns drawn at Plaintiffs constitutes excessive force. [Doc. 1, ¶111]. However, Brown does not even mention that an officer drew his gun on a suspect nor whether drawing a gun on a suspect violates a constitutional right. Most importantly, unpublished cases do not create controlling precedent to preclude immunity. *See* Fifth Circuit Rule 47.5. *Cooper v. Brown*, 844 F.3d 517, 525 n.8 (5th Cir. 2016).

**B.  Officers are Immune from Lewis' ADA Claim**

46.     Plaintiff cites the unpublished decision in *Borawick v. City of Los Angeles*, 793 Fed. App'x. 644, 646 (9th Cir. 2020) to support their ADA claim and presumably place the defendant officers that their conduct in this case violated the ADA. Like the unpublished case above, this unpublished case *from another circuit* cannot constitute clearly established law.

47.     Plaintiff further cites *Hainze v. Richards*, 207 F.3d 795, 799–800 (5th Cir. 2000) to support their proposition that officers were on notice that their conduct violated the ADA. However,

*Hainze* has been repeatedly cited by the Fifth Circuit and this Court for the opposite proposition. See also, *City & Cty. of S.F. v. Sheehan*, *supra*, at 611-617.  That is the "clearly established."

## V.      Plaintiffs Fail to State a Claim of Municipal Liability

48.      First, the Rosenberg Police Department is not a juridical entity separate from the City that has the capacity to be sued and should be dismissed. *Edmiston v. La. Small Bus. Dev. Ctr.,* 931 F.3d 403, 406 (5th Cir. 2019). Assuming, *arguendo*, Plaintiffs' allegations against the police department are actually against the City, Plaintiffs cannot support a claim for relief against the City because there is no allegation the City committed a constitutional violation. *See Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).

49.      "[Fifth Circuit] precedents make clear that the *Twombly* standard applies to municipal liability claims. *Ratliff v. Aransas Cty.*, 948 F.3d 281, 284 (5th Cir. 2020).  "To support a claim against the City, Plaintiffs must allege facts showing: '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017). "[Governmental] liability must be predicated upon a showing of 'fault,' not merely 'responsibility.'" *Gonzalez v. Ysleta Indep. Sch. Dist*., 996 F.2d 745, 757 (5th Cir. 1993). Plaintiffs made no factual allegations which show a claim against the City. Plaintiffs provide only bare legal conclusions alone. [Doc. 1, ¶¶ 45-83] Plaintiffs' conclusory legal assertions do not satisfy the requirements to state a claim against the City.

### A.      Plaintiffs Fail to Identify an Unconstitutional City Policy.

50.      To avoid dismissal for failure to state a claim, "[t]he [Plaintiffs'] description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). Plaintiff cited two RPD policies claiming the policy does not analyze whether

force is reasonable in relation to the size of the officer and suspect or in relation to the number of available officers on scene. [Doc. 1, ¶56-57].

51.     However, the Fifth Circuit has held that "[i]n analyzing the written policy of [a city], [the court] must do so in the context of the whole." *Maddux v. Officer One*, 90 F. App'x 754, 771 (5th Cir. 2004). Accordingly, "to confine [the court's] consideration to a subsection that [plaintiffs] finds particularly troublesome, narrowly examining in a vacuum, a single sentence of [a section], would be inconsistent with generally applicable principles of interpretation regularly employed by this Court in the construction of a controlling writing." *Id.*

52.     Plaintiffs further fail to allege facts to show any "practices so persistent and widespread as to practically have the force of law" to constitute a custom. *Ratliff*, 948 F.3d 285. Rather, for each purported custom, Plaintiffs name several instances, all of which lack any *factual* allegations to support the asserted custom or give this Court any idea what practice is so persistent to practically have the force of law.

### B.     Plaintiffs Fail to Allege Facts to Show the City's Policymaker is Liable

53.     Plaintiffs also fail to allege facts which even identify the City's policymaker, much less that the City's policy maker – its Council as a matter of law - was deliberately indifferent to Plaintiffs' rights. When "a plaintiff seeking to establish [governmental] liability on the theory that a facially lawful [governmental] action has led an employee to violate a plaintiff's rights must demonstrate the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of the County Commissioners of Bryan County Oklahoma v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382 (1997). This standard applies to Plaintiffs' allegations based on claimed *inadequacies* in training and supervision of the City's police officers.

54.     Plaintiffs' claims are insupportable for two reasons: First, Plaintiffs fail to make any factual allegation which shows the City Council established or approved any unconstitutional City policy.

Second, Plaintiffs fail to plead facts showing City Council was aware of an unconstitutional policy but that it deliberately chose to maintain the unconstitutional policy.

### C. Plaintiffs Do Not Allege the City's Policymaker *caused* Any Deprivation

55.     Not only have Plaintiffs fail to allege facts which show an unconstitutional policy of the City's policymaker, Plaintiffs also fail to allege facts which show any such policy was the moving force that directly caused a violation of Plaintiffs' federally protected rights. *See James v. Harris County*, 577 F.3d 612, 618-619 (5th Cir. 2009). To state a claim against the City, Plaintiffs must allege facts which identify a specific unconstitutional governmental policy for which the City's policymaker may be held liable *and* which was the "moving force" driving individual conduct such that the identified policy actually caused unconstitutional treatment. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-81 (5th Cir. 2001).

56.     "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Brown*, 520 U.S. at 404. To hold otherwise would be a clear departure from controlling precedent regarding municipal liability in a § 1983 claim; therefore, to subject a governmental entity to liability under § 1983, "[i]n addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 579. It is crucial the requirements of governmental culpability and governmental causation "not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Piotrowski*, 237 F.3d at 579 (quoting *Snyder*, 142 F.3d at 798). Plaintiffs fail to state a claim for relief against the City *even if, arguendo,* they state a claim against any individual. the City moves to dismiss Plaintiffs' claims against the City.

## VI.     The City is Immune From All Common Law Claims

57.     "Sovereign immunity and its counterpart, governmental immunity, exist to protect the State

and its political subdivisions from lawsuits and liability for money damages." *Reata Constr. Corp.*

*v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Texas recognizes a "heavy presumption in

favor of immunity," that may only be waived by the Texas legislature *City of Galveston v. State*,

217 S.W.3d 466, 469 (Tex. 2007). "Like the state, counties and other political subdivisions can

only be liable where an exception to such immunity is provided for in the Texas Tort Claims Act."

*Diaz v. Cent. Plains Reg'l Hosp.*, 802 F.2d 141, 143 (5th Cir. 1986).

58.     The Texas Tort Claims Act, Chapter 101, Tex. Civ. Prac. & Rem. Code ("TTCA") does

not waive the City's immunity from suit for Plaintiffs' claim related to an unidentified officer's

temporary detention of Plaintiff Armstead's cell phone until Armstead called and pointed out to

an officer that they still had Armstead's phone, which **Armstead admits** was promptly returned.

59.     "The TTCA provides a **limited** waiver of governmental immunity." *Alexander v. Walker*,

435 S.W.3d 789, 790 (Tex. 2014) (emphasis added). Section §101.021, Tex. Civ. Prac. & Rem.

Code provides the sole waiver of a governmental immunity for an alleged tort causing property

damage is applicable only when property damage is caused from the operation or use of a motor-

driven vehicle…and the employee who acted negligently in the operation of such motor-driven

vehicle…would be personally liable to the claimant according to Texas law.  *See*, §101.021(1).

### A.  No waiver for intentional tort of conversion

60.     While § 101.021 provides a limited waiver of immunity for certain suits against Texas

governmental entities, the waiver does not extend to claims "arising out of…intentional tort." *Id.*

at §§ 101.021, 101.057(a). "Because conversion is a common law tort, it falls within the

parameters of the Texas Tort Claims Act." *Ybarra v. Tex. HHS Comm'n*, Civil Action No. B-17-

174, 2018 U.S. Dist. LEXIS 138869, at *40 (S.D. Tex. 2018) (Morgan, M.J.) (Citing *City of Hous. v. Petroleum Traders Corp.*, 261 S.W.3d 350, 361 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Plaintiff's state law conversion claim against the City is barred by governmental immunity. *See Craig v. Dallas Area Rapid Transit Auth.*, 504 Fed. App'x 328, 334 (5th Cir. 2012); *Pelzel & Assocs.*, 77 S.W.3d at 248.

### B.  Officers statutorily immune under §101.106(e)

61.     Plaintiffs' election to assert state law tort claims for conversion and "civil theft" against the City bars Plaintiffs' claims against all individual Defendants under Tex. Civ. Prac. & Rem. Code § 101.106(e). See, *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 658-59.   "Section 101.106 is [a statutory] immunity statute." *Newman v. Obersteller*, 960 S.W.2d 621, 623 (Tex. 1997).

62.     Under § 101.106(e), when a suit is filed under "this chapter" against both a governmental unit and any of its employees, the Act requires that the employees be dismissed from the suit upon a motion by the governmental unit." *Garcia v. City of Harlingen*, No. B-06-CV-134, 2009 U.S. Dist. LEXIS 4135, at *31-32 (S.D. Tex. 2009) (Hanen, J.) "Given that [Plaintiffs] sue[] both the [officers and the City, the Court begins (and ends) its analysis with § 101.106(e)." *Hughes v. Belle Station*, No. 4:20-CV-00905, 2021 U.S. Dist. LEXIS 190671, at *25 (S.D. Tex. 2021) (Ellison, J.). All individual Defendants are statutorily immune from Plaintiff's common law claims.

CONCLUSION

Officers John Delgado, Adam Vasquez, Arthur Love, John Clausen, Ryan Cantu, and Defendant City of Rosenberg, Texas, pray the Court dismiss Plaintiffs' claims against them with prejudice.

Respectfully submitted,

*/s/ William S. Helfand*
William S. Helfand
Attorney-In-Charge
Texas Bar No. 09388250
S.D. Tex. Bar No. 8791
Norman Ray Giles
Texas Bar No. 24014084
S.D. Tex. Bar No. 26966
Randy Edward Lopez
Texas Bar No. 24091829
S.D. Tex. Bar No. 3369137

CERTIFICATE OF SERVICE

I have served a true and correct copy of this motion on all counsel of record by and through the District's ECF service rules on September 12, 2022.

*/s/ William S. Helfand*