## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHAEL LEWIS and REGINA ARMSTEAD,** | § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 4:22-cv-02593** |
| **V.** | § § | |
| **ROSENBERG POLICE DEPARTMENT, CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, JOHN CLAUSEN, and RYAN CANTU** | § § § § § § § | |
| **Defendants.** | § | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs MICHAEL LEWIS ("Lewis") and REGINA ARMSTEAD ("Armstead") (collectively, "Plaintiffs") file this response to Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss. Plaintiffs respectfully ask the Court to deny the motion made by Defendants ROSENBERG POLICE DEPARTMENT, CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, RYAN CANTU, and JOHN CLAUSEN (collectively, "Defendants").

### TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. 1
TABLE OF AUTHORITIES ...................................................................................................... 3
SUMMARY OF ARGUMENT ................................................................................................. 6

**RESPONSE TO MOTION TO DISMISS**                                    **Page** 1 **of** 34

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ............................... 7

STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT ................................. 7

LEGAL STANDARD ................................................................................................................ 7

ARGUMENT AND AUTHORITIES ....................................................................................... 8

   1.   Defendants Are Not Entitled to Qualified Immunity for Any of Their Fourth Amendment Violations. ............................................................................................................ 8

   2.   Mr. Lewis and Ms. Armstead Pled Sufficient Facts to Support Their Claim That They Were Placed Under a De Facto Arrest in Violation of the Fourth Amendment When They Were Stopped at Gunpoint, Handcuffed, and Placed in the Back of Police Vehicles. ............... 9

   3.   Even if the Seizure of Mr. Lewis and Ms. Armstead is Characterized as a Terry Stop Rather Than an Arrest, the Seizure was Nevertheless Unreasonable. ...................................... 12

      a.   The Stop was Unsupported by Reasonable Suspicion. .................................................... 12

      b.   The Stop was Conducted in an Unreasonable Manner. .................................................. 14

   4.   Even if the Detention was Lawful, Defendants' Search of Mr. Lewis's and Ms. Armstead's Vehicle Was Unreasonable. ...................................................................................... 16

   5.   Plaintiffs Have Stated a Claim for Defendants' Use of Excessive Force. ......................... 17

      a.   Defendant Officers Used Objectively Unreasonable Force Against Plaintiffs By Detaining Them at Gunpoint and Placing Them in Handcuffs. ............................................. 17

      b.   Defendant Officers are Not Entitled to Qualified Immunity Because They Violated Plaintiffs' Clearly Established Constitutional Rights. ............................................................. 18

      c.   Plaintiffs Pled Sufficient Injury to Support Their Excessive Force Claim. .................... 19

   6.   Ms. Armstead Has Stated a Claim for Seizure of Property in Violation of the Fourth Amendment. ................................................................................................................................ 19

   7.   Mr. Lewis Has Stated A Claim That Municipal Defendants Violated Title II of the Americans With Disabilities Act ................................................................................................ 21

   8.   Plaintiffs have Exceeded their Burden to State Monell Claims ........................................ 25

      a.   Plaintiffs Properly Identified Officials Whose Acts May Fairly Be Said to Represent Official Policy ............................................................................................................................ 26

      b.   Plaintiffs Pleaded Multiple Unconstitutional Policies, Practices, and/or Customs. ........ 29

      c.   Plaintiffs Each Identified Injury Attributable to Defendants. ........................................ 31

   9.   Plaintiffs Properly Pleaded a Claim for Conversion ........................................................ 32

CONCLUSION ........................................................................................................................ 32

**RESPONSE TO MOTION TO DISMISS**                        **Page** 2 **of** 34

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 5, 23

*Baird v. Renbarger*, 576 F.3d 340 (7th Cir. 2009) ................................................................ 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 5

*Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984) (*en banc*) ........................................ 26, 27

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ............................................................................. 15

*Brower v. Inyoe*, 489 U.S. 593 (1989) ................................................................................... 18

*Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000) ............................................................ 28

*Brown v. Lynch*, 524 Fed. Appx. 69 (5th Cir. 2013) .............................................. 7, 9, 10, 12, 16

*Cadena v. El Paso County*, 946 F.3d 717 (5th Cir. 2020) ........................................................ 22

*Campbell v. Wells Fargo Bank*, 781 F.2d 440 (5th Cir. 1986) ................................................ 6, 9

*Canton v. Harris*, 489 U.S. 378 (1989) ................................................................................... 27

*Cantrell v. City of Murphy*, 666 F.3d 911 (5th Cir. 2012) ........................................................... 6

*Carroll v. United States*, 267 U.S. 132 (1925) ........................................................................ 14

*Carter v. Orleans Parish Public Schools*, 725 F.2d 261 (1984) ............................................... 23

*Checki v. Webb*, 785 F.2d 534 (5th Cir. 1986) ........................................................................ 13

*Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019) .......................................... 22

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ....................................................... 25, 26, 28

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir. 2000) ........................................ 6

*Conley v. Gibson,* 355 U.S. 41 (1957) ....................................................................................... 5

*Crocker v. Beatty*, 886 F.3d 1132 (11th Cir. 2018) ................................................................. 17

*Davis v. Bergeon*, 187 F.3d 635, 1999 WL 591448 (6th Cir. 1999) .......................................... 13

*Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567 (5th Cir. 2002) ............................................. 21

*Dunn v. Denk*, 79 F.3d 401 (5th Cir. 199) ............................................................................... 17

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) .................................................... 15, 17

*Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 U.S. Dist. LEXIS 22047 (W.D. Tex. Jan. 31, 2020)........................................................................................................................... 13

*Florida v. Royer*, 460 U.S. 491 (1983) .................................................................................... 12

*Gilk v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011) .......................................................................... 17

*Graham v. Connor*, 490 U.S. 386 (1989) ........................................................................... 15, 16

*Grandstaff v. City of Borger, Tex.*, 767 F.2d 161 (5th Cir. 1985) ............................................. 28

*Gray v. City of Denham Springs*, 2021 U.S. Dist. LEXIS 63591 (M.D. La. 2021) ...................... 21

*Groden v. City of Dall.*, 826 F.3d 280 (5th Cir. 2016) .............................................................. 24

*Hainze v. Richards,* 207 F.3d 795 (5th Cir. 2000) .................................................................... 20

*Hale v. King*, 642 F.3d 492 (5th Cir. 2011) ............................................................................. 22

*Hobart v. City of Stafford*, 784 F. Supp. 2d 732 (S.D. Tex. 2011) ............................................. 20

*Hodge v. Layrisson*, 1998 U.S. Dist. LEXIS 13930 (E.D. La. Aug. 31, 1998) ............................ 16

*Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001) ................................. 13

*Igboji v. State*, 607 S.W. 3d 157 (14th Ct. App. 2020) ............................................................ 17

*Kaiser Aluminum Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045 (5th Cir. 1982) ............... 6

*Kansas v. Glover*, 140 S. Ct. 1183 (2020) ............................................................................... 14

*Knowles v. City of Granbury*, 953 S.W.2d 19 (Tex. Ct. App. 1997) ........................................... 30

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) ............................................................................................................................................. 23

*Lincoln v. Turner*, 874 F.3d 833 (5th Cir. 2017) ....................................................................... 14

*Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616 (5th Cir. 2018) ............................................ 28

*Martin v. City of Alexandria Municipality Police Department*, Civil Action No. 03-1282 (W.D. La. Sep. 16, 2005) ............................................................................................................... 15, 17

*Miller v. Salvaggio*, No. SA-20-cv-00642-JKP, 2021 U.S. Dist. LEXIS 147566 (W.D. Tex. Aug. 6, 2021) ................................................................................................................................. 13, 16

*Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006) ......................................................................... 6

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) .................. 24, 25, 26, 28

*Moore v. City of Houston*, 2019 U.S. Dist. LEXIS 159862 (S.D. Tex. Aug. 28, 2019) .............. 18

*Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005) ....................................................................... 13

*Muehler v. Mena*, 544 U.S. 93 (2005) ...................................................................................... 12

*Nabelek v. Bradford*, 2002 Tex. App. LEXIS 6193 (Tex. Ct. App. 14th, Aug. 22, 2002) ........... 30

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................................. 6

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ................................................................ 25

*Perez v. Drs. Hosp.at Renaissance Ltd.*, 624 F. Appx. 180 (5th Cir. 2015) ................................ 22

*Perkins v. Hart*, No. 21-879, 2022 U.S. Dist. LEXIS 132193 (E.D. La. July 26, 2022) ............. 13

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) ................................................................ 15, 16, 17

*Phillips v. Prator*, 2021 U.S. App. LEXIS 22947 (5th Cir. 2021) ....................................... 20, 22

*Ratliff v. Aransas Cnty.*, 948 F.3d 281 (5th Cir. 2020 ............................................................... 23

*Salinas v. City of New Braunfels*, 557 F. Supp. 2d 771 (W.D. Tex. 2006) ................................. 21

*Shaikh v. Tex. A&M Univ. College of Med.*, 739 Fed. Appx. 215 (5th Cir. 2018) ...................... 22

*Sharp v. City of Houston*,  164 F.3d 923 (5th Cir. 1999) .......................................................... 28

*Smith v. Heap*, 31 F.4th 905 (5th Cir. 2022) ......................................................................... 8, 9

*Stamps v. Town of Framingham*, 813 F.3d 27 (1st Cir. 2016) ................................................... 13

*Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005) ............................................................... 15

*Tennessee v. Garner*, 471 U.S. 1 (1985) .................................................................................. 15

*Thomas v. Redford*, Civil Action No. 3:00-CV-1643-D (N.D. Tex. Mar. 26, 2002) ................... 16

*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017) ......................................................................... 7

*Turribate v. State*, 399 S.W. 3d 147 (Tex. Crim. App. 2013) ................................................... 17

*United States v. Abdo*, 733 F.3d 562 (5th Cir. 2013) .............................................................. 8, 9

*United States v. Campbell*, 178 F.3d 345 (5th Cir. 1999) ....................................................... 7, 8

*United States v. Grant*, 349 F.3d 192 (5th Cir. 2003) ........................................................ 10, 12

*United States v. Jackson*, 328 F. App'x 933 (5th Cir. 2009) ..................................................... 14

*United States v. Martinez*, 808 F.2d 1050 (5th Cir. 1987) .......................................................... 7

*United States v. Neely*, 345 F.3d 366 (5th Cir. 2003) .............................................................. 17

*United States v. Sanders*, 994 F.2d 200 (5th Cir. 1993) ......................................................... 8, 9

*United States v. Shabazz*, 993 F.2d 431 (1993) .................................................................. 10, 12

*United States v. Thomas*, 997 F.3d 603 (5th Cir. 2021) ......................................................... 8, 9

*United States v. Yanez* No. 4:19-CR-218, 2022 U.S. Dist. LEXIS 6376 (S.D. Tex. Jan. 12, 2022) ................................................................................................................................................. 11

*Webster v. City of Hous.*, 735 F.2d 838 (5th Cir. 1984) (per curiam) ........................................ 26

*White v. Pauly*, 137 S. Ct. 548 (2017) ....................................................................................... 6

*Wilson v. City of Southlake*, 936 F.3d 326 (5th Cir. 2019) ........................................................ 20

*Wilson v. Lamp*, 901 F.3d 981 (8th Cir. 2018) ......................................................................... 13

**Statutes**

42 USC § 12102 ............................................................................................................................. 22

**Other Authorities**

Rosenberg Code of Ordinances Art. VIII, Sec. 13.06 .................................................................. 30

**Regulations**

29 C.F.R. § 1630.2(j)(4)(ii) ......................................................................................................... 22

## SUMMARY OF ARGUMENT

On November 6, 2020, Rosenberg Police Department ("RPD") officers were looking for a group of teenagers that had allegedly brandished guns at a group of younger kids. Instead of stopping the teenagers, they stopped and arrested the 67-year-old and 57-year-old Plaintiffs. Plaintiffs were held at gunpoint, handcuffed, detained while the entirety of their vehicle was searched, and had their property confiscated and destroyed, including a life-saving medical device embedded in Mr. Lewis' wrist. Plaintiffs were released without charges but they left the stop with severe emotional trauma, a broken medical device requiring multiple procedures to fix, a destroyed key fob, and with their cellphone in RPD's possession.

Throughout their motion to dismiss, Defendants mischaracterize or omit Plaintiffs' factual allegations in an attempt to categorize this case with law that would foreclose Plaintiffs' claims. For instance, Defendants misrepresent Mr. Lewis' central excessive force  claim of injuries to his wrist and medical device as allegedly being "based on tight handcuffs alone[.]" (Doc. No. 18 ¶ 32). That is not what Plaintiffs' Complaint alleges. The Complaint alleges both Plaintiffs informed RPD officers of Mr. Lewis's delicate medical device in his wrist, and RPD officers ignored his medical disability and applied the handcuffs anyways, crushing the stint in his wrist and causing lasting bodily harm.

Similarly, Defendants also omit the allegations supporting Mr. Lewis's ADA claim, arguing the Complaint did not allege "*any* facts to show 'the disability and its consequential limitations were known by the [City]' and the officers had knowledge of both the resulting limitation and the necessary accommodation." (Doc. No. 18 ¶ 38) (emphasis in original). That is not what Plaintiffs' Complaint alleges. The Complaint alleges that the officers were informed of the disability, not

once, but twice. (Doc. No. 1 ¶¶ 23, 26).

In addition to mischaracterizing factual allegations, Defendants overstate or misconstrue the case law supporting qualified immunity and minimize the breadth of evidence Plaintiffs have cited in support of their allegations that Defendants RPD and the City of Rosenberg maintain policies, practices, or customs that violate individuals' civil rights, this includes thirty-eight civilian complaints, four media reports, four lawsuits and a corrective action, far in excess of what is required for *Monell* liability.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On August 4, 2022, Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and Texas state law concerning the unconstitutional and violent detention, search, and excessive force to which individual RPD's officers subjected Michael Lewis and Regina Armstead pursuant to the policies, practices, or customs of RPD and the City of Rosenberg. On September 12, 2022, Defendants moved for dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT

Defendants present a Rule 12(b)(6) motion to dismiss. Plaintiffs contend that their Complaint exceeds the relevant pleading standards and that this Court should deny the motion in its entirety.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) does not set a high bar for Plaintiffs to meet. The Complaint before this Court is not the type of "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that *Twombly* and *Iqbal* warn against. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, (2007)). A court cannot dismiss a complaint under 12(b)(6) "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Complaints must be construed in favor of a plaintiff. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). All facts set forth in the complaint must be taken as true and every doubt must be resolved in favor of the plaintiff. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) (internal citations omitted). Accordingly, a Rule 12(b)(6) motion "is viewed with disfavor and is rarely granted." *Kaiser Aluminum Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). Plaintiffs' twenty-seven-page Complaint extensively details the factual and legal basis for their claims, including  the harrowing abuse suffered at the hands of RPD, RPD's pattern of abuse, and the City of Rosenberg's complicity in said pattern of abuse. The Complaint sails above the 12(b)(6) standard. Defendants' erasure of what was actually written in the Complaint does not undercut Plaintiffs' comprehensive allegations and claims.

## ARGUMENT AND AUTHORITIES

### 1.      *Defendants Are Not Entitled to Qualified Immunity for Any of Their Fourth Amendment Violations.*

Qualified immunity is a "fair warning standard." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). An official is not entitled to qualified immunity if he reasonably should have known that his conduct would violate the plaintiff's constitutional rights. *Id.*; *See also Cantrell v. City of Murphy*, 666 F.3d 911, 919-20 (5th Cir. 2012). Courts employ a two-part test to determine whether qualified immunity applies: (1) whether the plaintiff has "asserted a violation of a constitutional or statutory right"; and (2) whether the misconduct, as alleged, violated a clearly established right.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Clearly established law can come from either prior rulings from the Fifth Circuit or rulings from the Court's sister circuit. *Modica v. Taylor*, 465 F.3d 174, 188 (5th Cir. 2006). Defendants had fair warning that their conduct violated Plaintiffs' Fourth Amendment rights. Plaintiffs supply clearly established law for each claim in the sections below.

**2.      *Mr. Lewis and Ms. Armstead Pled Sufficient Facts to Support Their Claim That They Were Placed Under a De Facto Arrest in Violation of the Fourth Amendment When They Were Stopped at Gunpoint, Handcuffed, and Placed in the Back of Police Vehicles.***

"Whether a detention is an arrest or merely a *Terry* stop depends on the 'reasonableness' of the intrusion under all the facts." *United States v. Martinez*, 808 F.2d 1050, 1053 (5th Cir. 1987). "A seizure rises to the level of an arrest . . . if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on the freedom of movement of the degree which the law associates with formal arrest." *Turner v. Driver*, 848 F.3d 678, 692-93 (5th Cir. 2017) (internal citations omitted). Under this analysis, a "reasonable person" is defined as "one who is 'neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances.'" *Id*. at 693. Training guns on an innocent person, handcuffing them, and placing them in the back of a police vehicle can constitute such a restraint on freedom. *Id.*

Although "drawn guns and handcuffs do not *necessarily* convert a detention into an arrest," such displays of force do convert an investigative stop into an arrest when they are unreasonable under the circumstances. *United States v. Campbell*, 178 F.3d 345, 349 (5th Cir. 1999) (emphasis added); *see also Brown v. Lynch*, 524 Fed. Appx. 69, 76 (5th Cir. 2013). Because it is "not ordinarily proper" for police officers to use physical restraint absent probable cause, it is not reasonable for an officer to "resort to physical restraint" absent "special circumstances." *Brown,*

**RESPONSE TO MOTION TO DISMISS**                          **Page 9 of** 34

524 Fed. Appx. at 75 (internal quotation marks omitted). Such special circumstances were lacking in this case. Accordingly, Defendants' unreasonable use of restraints on Mr. Lewis and Ms. Armstead—innocent individuals who appreciated the gravity of the circumstances—escalated the *Terry* stop into a *de facto* arrest.

Defendants rely on inappropriate caselaw to support their assertion that the use of handcuffs and drawn guns during their investigative stop of Mr. Lewis and Ms. Armstead was reasonable. Each case Defendants cite contains a special circumstance that is glaringly missing from the present case. Namely, in each of these cases, courts found that the police officers knew, prior to initiating the stop, that they had apprehended the correct, armed and dangerous suspects described by the 911 callers.[1] But here, the opposite was true: immediately upon stopping Mr. Lewis and Ms. Armstead, it was obvious to Defendants that Mr. Lewis and Ms. Armstead, an elderly couple, did not match the 911 caller's description of a group of armed teenagers.

Almost as soon as Plaintiffs were stopped, a reasonable officer would have been certain Mr. Lewis and Ms. Armstead were not the suspects they had been seeking. Because Defendants

---

[1] *See Smith v. Heap*, 31 F.4th 905 (5th Cir. 2022) (911 caller who reported an off-duty officer for flashing his "police lights" and pointing his gun was able to describe the officer's black Chevy Tahoe and license plate number, enabling officers to locate the precise vehicle); *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993) (grocery store owner was able to give officers a detailed description of an armed and dangerous man—a "black male wearing a blue baseball cap and a tan jacket"—whom officers immediately spotted and identified once they arrived to the store minutes after receiving the call); *United States v. Campbell*, 178 F.3d 345 (5th Cir. 1999) (police officers located a suspect who "matched the physical description of the [armed] bank robber . . . and was approaching a car that matched a detailed description of the getaway vehicle"); *United States v. Abdo*, 733 F.3d 562 (5th Cir. 2013) (police who received a 911 call describing a man who acted suspiciously at a gun shop, and a tip about the same person taking a cab to a hotel, were able to apprehend a suspect at the hotel as he exited a cab who "perfectly" matched the 911 caller's description); *United States v. Thomas*, 997 F.3d 603 (5th Cir. 2021) (officers were able to precisely identify a car that had been stolen at gunpoint because they knew the car's make and model as well as its license plate number).

**RESPONSE TO MOTION TO DISMISS**

were not provided with a license plate number, they could not be certain they had found the precise vehicle described by the 911 caller. *See Contra Thomas* 997 F.3d at 613; *Smith*, 31 F.4th at 908. Nor did Defendants have information on the precise current geographic location of the suspects. *See Contra Abdo*, 733 F.3d at 564; *Sanders*, 994 F.2d at 201-02. However, what Defendants *did* have in this case were detailed physical descriptions of the suspects. These descriptions—multiple Black and Hispanic "kids" wearing particular clothing—were completely incompatible with Mr. Lewis and Ms. Armstead. *See Contra Abdo*, 733 F.3d at 564; *Sanders*, 994 F.2d at 201-02; *Smith*, 31 F.4th at 908; *Campbell*, 178 F.3d at 348. Because it was readily apparent that Mr. Lewis and Ms. Armstead, an elderly Black couple, were not the suspects Defendants sought, it was unreasonable for Defendants to stop and detain them at gunpoint, handcuff them, and place them in the back of police vehicles. *See id.*

The additional special circumstances in the cases Defendants cite enabled courts to find that the use of guns and handcuffs  to be reasonable are also lacking in this case. For example, in *Thomas*, the court emphasized the fact that the investigating "officers were outnumbered six to two" as justification for their use of guns and handcuffs to effectively secure the premises. 997 F.3d at 615. *See also Muehler v. Mena*, 544 U.S. 93, 103 (Kennedy, J., concurring) (use of handcuffs was reasonable where "the detainees outnumber[ed] those supervising them"). But in this case, the opposite was true—Defendants outnumbered Mr. Lewis and Ms. Armstead five to two. (Doc. No. 1 ¶¶ 25, 29). And unlike in *Abdo*, where the suspect appeared poised to flee, Mr. Lewis and Ms. Armstead were fully compliant with all of Defendants' commands, including walking backwards several feet with their arms in the air and kneeling on the ground. (Doc. No. 1 ¶ 21); *see Abdo*, 733 F.3d at 564. *See also Brown v. Lynch*, 524 Fed. Appx. at 76 (holding it is not

**<u>RESPONSE TO MOTION TO DISMISS</u>**                    **Page** 11 **of** 34

reasonable for officers to use handcuffs to detain a suspect who "posed only such a remote threat of either fight or flight").

In the absence of special circumstances supporting Defendants' use of drawn guns and handcuffs, Defendants' use of these tactics during their stop of Mr. Lewis and Ms. Armstead was objectively unreasonable. This use of unreasonable force escalated the investigatory stop to a *de facto* arrest requiring probable cause, which Defendants lacked. Defendants' actions violated clearly established law, and were taken pursuant to an official municipal custom. *See Brown*, 524 Fed. Appx. at 76; infra § 5.

**3.     *Even if the Seizure of Mr. Lewis and Ms. Armstead is Characterized as a Terry Stop Rather Than an Arrest, the Seizure was Nevertheless Unreasonable.***

Although Mr. Lewis and Ms. Armstead have pled sufficient facts to support their claim that they were placed under *de facto* arrest, if the Court were to interpret their detention as an investigatory stop, the detention was still unreasonable under the Fourth Amendment. First, Defendants lacked reasonable suspicion to detain Mr. Lewis and Ms. Armstead, who clearly did not match the description of the teenaged suspects. Second, even if Defendants did have the requisite reasonable suspicion to stop Mr. Lewis and Ms. Armstead, the investigatory stop was conducted in an unreasonable manner.

          *a.   The Stop was Unsupported by Reasonable Suspicion.*

Police officers must have reasonable suspicion that criminal activity is afoot to conduct a traffic stop. *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). The standard for traffic stops employs a "two-tiered reasonable suspicion inquiry: (1) whether the officer's action was justified at its inception, and (2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place." *Id*. The officer must cease the

**RESPONSE TO MOTION TO DISMISS**                          **Page** 12 **of** 34

investigation once their "suspicions have been . . . dispelled," *id*., because "[a]t that point, continuation of the detention is no longer supported by the facts that justified its initiation." *United States v. Shabazz*, 993 F.2d 431, 436 (1993).

In *United States v. Yanez*, this Court determined that a BOLO ("be on the lookout") alert describing a car and its passengers in great detail provided reasonable suspicion for an officer to conduct a traffic stop *once he located the exact car described in the BOLO*. *United States v. Yanez* No. 4:19-CR-218, 2022 U.S. Dist. LEXIS 6376, *5 - *6 (S.D. Tex. Jan. 12, 2022). The Court listed several factors supporting its conclusion, including: "the BOLO described a vehicle that matched the make, model, and color of Defendant's vehicle;" "the BOLO described the vehicle as having a sunroof and a missing front license plate, a description which matched Defendant's vehicle;" and "*the number of people riding in the vehicle matched the BOLO*." *Id*. at *6 (emphasis added). Additionally, prior to conducting the stop, the officer "viewed items of clothing within the vehicle which matched the clothing described in the BOLO." *Id*. at *3. Taken together, the BOLO's specific descriptions, *which matched the officer's own observations on the scene*, supported probable cause to conduct the traffic stop. *Id.*

Here, by contrast, the BOLO alert was not nearly as detailed as the alert in *Yanez*. Moreover, unlike in *Yanez*, Defendants' own observations of Mr. Lewis and Ms. Armstead directly contradicted, rather than corroborated, the BOLO's description. Even if Defendants had the requisite reasonable suspicion to stop Mr. Lewis and Ms. Armstead based on the make and model of their car, any reasonable suspicion Defendants had at the inception of the stop evaporated when they saw 67 and 57-year-old  Mr. Lewis and Ms. Armstead. Unlike in *Yanez*, the BOLO's description of the vehicle did not include key details like a sunroof and missing front license plate

to narrow down the suspected vehicle beyond make, model, and color. Also unlike in *Yanez*, the Defendants did not observe any clothing or other evidence described in the BOLO. Finally, the number of passengers in Mr. Lewis's and Ms. Armstead's car did not match the number of suspects described in the BOLO. Because Mr. Lewis and Ms. Armstead plainly did not match the 911 caller's description of the armed suspects, Defendants' continuation of the stop from the moment Ms. Armstead exited her car was unsupported by reasonable suspicion and therefore unconstitutional. *See Shabazz*, 993 F.2d at 436.

### b.   The Stop was Conducted in an Unreasonable Manner.

"[A] *Terry* stop that is justified at its inception may nevertheless violate the Fourth Amendment if it is excessively intrusive in its scope or manner of execution." *Brown v. Lynch*, 524 Fed. Appx. 69, 74-75 (5th Cir. 2013). *See also Grant*, 349 F.3d at 196; *Florida v. Royer*, 460 U.S. 491, 500 (1983). Here, RPD's stop was excessively intrusive because the officers placed Mr. Lewis and Ms. Armstead in handcuffs, kept their guns drawn and trained on Mr. Lewis and Ms. Armstead, and placed them in the back of police vehicles.

Defendants' use of handcuffs was excessively intrusive and unreasonable under the circumstances. "The use of handcuffs is [a] use of force, and such force must be objectively reasonable under the circumstances." *Muehler v. Mena*, 544 U.S. 93, 103 (2005) (Kennedy, J., concurring).. If the handcuffs "cause real pain or serious discomfort," the officers must "alter the conditions of detention" to attend to the detainee's needs. *Id.* Defendants' use of handcuffs on Mr. Lewis—after receiving multiple warnings from Plaintiffs about Mr. Lewis's medical condition— not only caused pain and discomfort but caused serious injury to his arm and destroyed his life-saving fistula.

It was also excessively intrusive and unreasonable for Defendants to keep their loaded guns

trained on Mr. Lewis and Ms. Armstead for the duration of the detention. For decades, courts in the Fifth Circuit have found that the brandishing of a deadly weapon at individuals who are not perceived to be dangerous is objectively unreasonable.[2] Additionally, the right to be free from being held at gun point when use of force is not supported by the circumstances is clearly established across the circuits.[3] Even if the pointing of a weapon is justified at the beginning of an interaction, it is objectively unreasonable to keep a gun pointed at a compliant individual for the duration of a detention. *Miller v. Salvaggio*, No. SA-20-cv-00642-JKP, 2021 U.S. Dist. LEXIS 147566, at *26 (W.D. Tex. Aug. 6, 2021) (finding it was objectively unreasonable for officers to "point their guns" at plaintiffs for the duration of the time it took to search their home).Here, RPD officers kept their guns trained on Ms. Armstead from the time she exited her vehicle to when she was being searched and handcuffed, even though she was complying with their commands and it

---

[2] See, e.g., *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986) (stating that "a police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a section 1983 claim against him"); *Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 U.S. Dist. LEXIS 22047, at *19-20 (W.D. Tex. Jan. 31, 2020) (finding it is "objectively unreasonable for a police officer to forcefully brandish a deadly weapon at citizens whom he could not reasonably have perceived to be dangerous"); *Perkins v. Hart*, No. 21-879, 2022 U.S. Dist. LEXIS 132193, at *35 (E.D. La. July 26, 2022) (collecting cases finding brandishing weapons at compliant individuals who are not perceived as a threat is objectively unreasonable).

[3] *See e.g., Wilson v. Lamp*, 901 F.3d 981, 989-91 (8th Cir. 2018) (denying qualified immunity on excessive force claim against officers who continued to point weapons at driver of car and child, who were neither threatening nor resisting, after realizing neither passenger was the subject of a warrant); *Stamps v. Town of Framingham*, 813 F.3d 27, 42 (1st Cir. 2016) (denying qualified immunity and holding that "pointing a firearm at a person in a manner that creates a risk of harm incommensurate with any police necessity can amount to a Fourth Amendment violation"); *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009) (denying qualified immunity to officers accused of "pointing a gun at a compliant adult in a non-threatening situation"); *Motley v. Parks*, 432 F.3d 1072, 1088-89 (9th Cir. 2005) (denying qualified immunity to officer who held child at gunpoint when *Graham* factors all counseled against use of force); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192-93 (10th Cir. 2001) (denying qualified immunity to officers who held children at gunpoint after gaining control of situation); *Davis v. Bergeon*, 187 F.3d 635, 1999 WL 591448, at *5-6 (6th Cir. 1999) (denying qualified immunity to officer who pointed firearm at plaintiff "who was not suspected of any wrongdoing at that point in time").

was clear she did not pose a threat. Compl. ¶¶ 21-22.

Finally, it was excessively intrusive and unreasonable for Defendants to detain Mr. Lewis and Ms. Armstead in the back of their police vehicles. Detaining an individual during a *Terry* stop for investigatory purposes is only permitted if the detention is supported by reasonable suspicion. *See Lincoln v. Turner*, 874 F.3d 833, 843 (5th Cir. 2017). Here, Defendants lacked reasonable suspicion to detain Mr. Lewis and Ms. Armstead as they did not match the description of the 911 callers. Defendants' use of drawn guns and handcuffs along with their decision to place Mr. Lewis and Ms. Armstead in the back of police vehicles made the stop excessively intrusive and unreasonable, and therefore unconstitutional.

### 4. Even if the Detention was Lawful, Defendants' Search of Mr. Lewis's and Ms. Armstead's Vehicle Was Unreasonable.

Absent a search warrant or consent, police officers can only search a vehicle if they have probable cause to believe the vehicle contains contraband, evidence, or fruits of a suspected crime. *Carroll v. United States*, 267 U.S. 132, 149 (1925). Once it was evident Mr. Lewis and Ms. Armstead did not match the description of the suspects, any reasonable suspicion RPD might have previously had dissipated. *See Kansas v. Glover*, 140 S. Ct. 1183, 1191 (2020) ("the presence of additional facts might dispel reasonable suspicion"). In *Glover*, the Supreme Court illustrated this point with the following example: "if an officer knows that the registered owner of the vehicle was in his mid-sixties but observes that the driver is in her mid-twenties, then the totality of the circumstances would not raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Id.* Here, Defendants were looking for a group of teenagers in a particular vehicle wearing certain clothing items and after pulling over a similar vehicle, observed an elderly Black couple as the only occupants. As such, any reasonable suspicion that Mr. Lewis and Ms. Armstead

were the individuals for whom Defendants were searching dissipated. *See also United States v. Jackson*, 328 F. App'x 933, 936 (5th Cir. 2009) (finding that although a tip had "indicia of reliability," it was "nullified" by the officers' observations that the tip was uncorroborated). Once Defendants observed that Mr. Lewis and Ms. Armstead were not the teenagers described by the 911 callers, they no longer could use the call to justify their search of the vehicle for any other evidence or contraband. Defendants' actions violated clearly established law and were taken pursuant to an official municipal custom. *See* infra § 7. [4]

**5.    *Plaintiffs Have Stated a Claim for Defendants' Use of Excessive Force.***

To prevail on an excessive force claim, a plaintiff must first show that he was seized and then must prove: (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005); *Flores v. City of Palacios*, 381 F.3d 391, 397-98 (5th Cir. 2004); *Martin v. City of Alexandria Municipality Police Department*, Civil Action No. 03-1282, at *22-23 (W.D. La. Sep. 16, 2005). Plaintiffs have exceeded their pleading burden for each of these elements.

> a.    *Defendant Officers Used Objectively Unreasonable Force Against Plaintiffs By Detaining Them at Gunpoint and Placing Them in Handcuffs.*

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004); *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *Martin* at *22. "The proper inquiry

---

[4] Also, contrary to Defendants argument, Plaintiffs do not have to identify which defendant did which harm in their complaint. See *Murphy v. Keller*, 950 F.2d 290, 293 (5th Cir. 1992); *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2006).

<u>**RESPONSE TO MOTION TO DISMISS**</u>                                **Page** 17 **of** 34

is whether the use of force was "grossly disproportionate to the need." *Petta v. Rivera*, 143 F.3d 895, 901-02 (5th Cir. 1998); *Martin* at *23-24. The test of reasonableness under the Fourth Amendment in this context "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  *See also Thomas v. Redford*, Civil Action No. 3:00-CV-1643-D, at *1 (N.D. Tex. Mar. 26, 2002).

As discussed in Section 2(b), *supra*, the use of drawn guns and handcuffs under the circumstances of this case constitutes an excessive use of force. Mr. Lewis and Ms. Armstead obviously did not match the description of the armed teenagers. They were completely compliant with every command, posing no threat to the safety of the officers nor any risk of flight or resistance. *See Graham*, 490 U.S. at 396. Defendants' use of drawn guns and handcuffs on Mr. Lewis and Ms. Armstead was "grossly disproportionate to the need" and therefore excessive. *Petta*, 143 F.3d at 901-02. *See also Brown*, 524 Fed. Appx. at 76; *Miller*, No. SA-20-cv-00642-JKP, 2021 U.S. Dist. LEXIS 147566, at *26; *Hodge v. Layrisson*, 1998 U.S. Dist. LEXIS 13930, at *19 (E.D. La. Aug. 31, 1998).

  b. *Defendant Officers are Not Entitled to Qualified Immunity Because They Violated Plaintiffs' Clearly Established Constitutional Rights.*

Defendant officers are not entitled to qualified immunity because existing precedent clearly established at the time of Defendants' actions that aiming loaded guns at compliant, unarmed individuals and the unreasonable use of handcuffs violates the Fourth Amendment. *See* Sections 2(b), *supra*. Defendants have not alleged that Plaintiffs were attempting to flee, that Defendants

felt a threat of serious physical harm to them or the public after initiating the stop, nor that they ever saw anything that looked like a gun at any point before or during the stop.

     *c.* <u>*Plaintiffs Pled Sufficient Injury to Support Their Excessive Force Claim.*</u>

A plaintiff alleging an excessive force claim must show that he has suffered "at least some injury." *Flores*, 381 F.3d at 397. The Fifth Circuit has held that physical injuries are not required. *Id*. at 398; *Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir. 199) (en banc); *Petta*, 143 F.3d at 902. Purely psychological injuries may sustain a Fourth Amendment claim. *Id.; see* also *Martin*, Civil Action No. 03-1282, at *23. Plaintiffs identified physical and physiological injuries sustained by Plaintiffs as result of their encounter with RPD.  Compl. ¶¶ 41, 44, 115. The handcuffing of Mr. Lewis damaged the fistula in his wrist, which resulted in multiple surgeries. The excessive force used when stopping and unlawfully detaining Ms. Armstead resulted in the physiological injury of emotional distress. These injuries are more than sufficient to sustain Plaintiffs' claims of excessive force.

**6.**      ***Ms. Armstead Has Stated a Claim for Seizure of Property in Violation of the Fourth Amendment.***

The warrantless seizure of property violates the Fourth Amendment unless the seized object's incriminating character is immediately apparent.[5] This Court denied summary judgment

---

[5] *United States v. Neely*, 345 F.3d 366, 371 (5th Cir. 2003); *Turribate v. State*, 399 S.W. 3d 147, 151 (Tex. Crim. App. 2013). In particular, courts have uniformly decided that the seizure of a cellphone violates the Fourth Amendment unless the officer can show probable cause that the phone contains evidence of a crime. *Moore v. City of Houston*, 2019 U.S. Dist. LEXIS 159862 at **28-29 (S.D. Tex. Aug. 28, 2019); *Crocker v. Beatty*, 886 F.3d 1132, 1138 (11th Cir. 2018) (denying qualified immunity to an officer that seized the cellphone of a bystander that had been observed documenting evidence related to a car crash noting, "our case law has sent a consistent message, predating 2012, about the warrantless

on a detained driver's Fourth Amendment seizure claim where the defendant police officer confiscated the driver's cellphone, threw it in the driver's car, and then prevented the driver from retrieving it before the car was towed. *Moore*, 2019 U.S. Dist. LEXIS 159862 at \*\*28-29 adopted in 2019 U.S. Dist. LEXIS 159764 (S.D. Tex. Sept. 18, 2019). Even though the officer never opened the plaintiff's cellphone and it was returned to the plaintiff in working order upon his eventual release from jail, the Court found the plaintiff could proceed to trial on his seizure claim. *Id.* Defendants' seizure of Ms. Armstead's phone violated clearly established law. *See* supra. *n. 5.*

Defendants argue that their seizure of Ms. Armstead's phone is not subject to the clearly established law on plain view seizures because officers returned the phone after Ms. Armstead caught on to their misconduct and demanded it back. To make their argument stick, Defendants ask the Court to ignore numerous allegations of intentional conduct and invert Rule 12(b)(6) to draw inferences in their favor. Defendants argue that the seizure of Ms. Armstead's phone was mere negligence. In the Fourth Amendment seizure context, an officer's actions are intentional where there is a "intentional acquisition of physical control" of the property in question. *Brower v. Inyoe*, 489 U.S. 593, 596-97 (1989). Here, Ms. Armstead's phone did not jump into an officer's pocket. There was a conscious, deliberate decision to remove it from her vehicle.

First, Plaintiffs allege a number of facts that the seizure of Ms. Armstead's phone was intentional, including numerous paragraphs outlining RPD's practice of seizing property from detained individuals. (Doc. No. 1 ¶¶ 70-77). Second, Plaintiffs' description of how the phone was

---

seizure of personal property"); *Gilk v. Cunniffe*, 655 F.3d 78, 88 (1st Cir. 2011) (police officers violated the Fourth Amendment by arresting plaintiff and confiscating his cellphone absent probable cause); *Igboji v. State*, 607 S.W. 3d 157, 166-67 (14th Ct. App. 2020) (holding seizure of cellphone was unconstitutional absent exigent circumstances and probable cause).

taken is not consistent with the negligence Defendants urge the Court to infer. Plaintiffs allege that the officer took Ms. Armstead's phone from the vehicle during the search. *Id.* ¶ 29. It was not removed from her person during a pat-down. *Id.* Nor did she at any point personally hand it to the officer. *Id.* The phone came into the officer's possession via his conscious decision to remove it from her vehicle. Moreover, at the time the phone was confiscated, the officer had no need to separate Ms. Armstead from her phone—as she was already detained in a RPD vehicle—and no reason to believe it contained evidence of the crime RPD was investigating, or any other crime for that matter. (Doc. No. 1 ¶ 29). Because there was no legitimate law enforcement purpose for the officer to pick up the phone and remove it from the vehicle, the seizure was clearly unconstitutional.

Accepting Plaintiffs' allegations as true, the officer who confiscated Ms. Armstead's phone lacked probable cause and no exigent circumstances existed at the time of the seizure. Further, if the Court accepts all allegations as true and draws inferences in Plaintiffs' favor, Plaintiffs have pled sufficient facts to state a claim for an unconstitutional seizure.

### 7.    *Mr. Lewis Has Stated A Claim That Municipal Defendants Violated Title II of the Americans With Disabilities Act.*

Mr. Lewis alleges that the City of Rosenberg and RPD violated his rights under Title II of the Americans with Disability Act ("ADA") by failing to accommodate his known disability while detaining him. (Doc. No. 1 ¶ 123). Defendants premise their request for dismissal of Plaintiff's ADA claim on: (1) an overbroad construction of *Hainze v. Richards*; (2) an apparent misunderstanding of the pleading requirements to allege a qualifying disability and intentional discrimination; and (3) the erasure of Plaintiffs' allegations that they provided notice to Defendants

of Mr. Lewis's condition. Defendants' arguments do not support the dismissal of Mr. Lewis's ADA claim as they require the Court to either apply an improper legal standard or delete sections of the Complaint.

First, contrary to Defendants' assertion, the Fifth Circuit does not categorically bar ADA claims against police officers when they are responding to emergency situations. The case Defendants rely on—*Hainze v. Richards*—is expressly limited to the circumstances presented in that particular case. 207 F.3d 795, 801 (5th Cir. 2000). In *Hainze*, an armed individual charged at a police officer and refused to comply with repeated demands to stop. *Id.* Accordingly, the Fifth Circuit has not barred ADA claims in every case where an officer is responding to an emergency situation. *See id.* Instead, courts analyze whether exigent circumstances exist when the alleged failure to accommodate occurred by examining whether officers had secured the scene and whether a risk of a threat to human life existed. *See Wilson v. City of Southlake*, 936 F.3d 326, 332-33 (5th Cir. 2019). The mere fact that a person may have been allegedly acting violently prior to an officer's arrival does not provide officers carte blanche to ignore accommodation requests. *Phillips v. Prator*, 2021 U.S. App. LEXIS 22947 at *11 (5th Cir. 2021); *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 758 (S.D. Tex. 2011). Even physically threatening conduct on the scene is not tantamount to the exigent circumstances necessary to defeat an ADA claim. *See Hobart*, 784 F. Supp. 2d at 758.

Fifth Circuit courts have repeatedly found that Title II of the ADA very much applies to an officer's on-the-street responses to emergency incidents where the officer is not facing a threat to

human life when they fail to accommodate an individual's disability.[6] Mr. Lewis's situation is similar to the cases cited, *supra* note 5, and bears no resemblance to the facts in *Hainze*. Based on the facts alleged in the Complaint and the inferences that can be drawn from them, RPD officers were facing no threat to human life when they handcuffed Mr. Lewis. First, the officers in the case had sufficient information to determine that Plaintiffs were not the suspects that Defendants were searching for by the time they handcuffed Mr. Lewis. Further, the officers had an opportunity to fully observe both Plaintiffs outside of the vehicle before Mr. Lewis was detained. Any plausible safety concerns that RPD officers may have had related to the weapons call no longer existed several minutes into the stop when they detained Mr. Lewis. (Doc. No. 1 ¶¶18-19, 25-26). Second, Mr. Lewis was fully compliant with the officers' commands and they had no reason to believe he posed any type of independent threat to human life. (Doc. No. 1 ¶¶ 25-26). Accepting Mr. Lewis's allegations as true and drawing all inferences in his favor, the officers had no reason to believe that the elderly couple they stopped presented any danger to themselves or any other person at the time Mr. Lewis was handcuffed. An ADA exemption due to exigent circumstances is simply not applicable.

---

[6] *See Wilson v. City of Southlake*, 936 F.3d at 332-333 (5th Cir. 2019) (plaintiff survived summary judgment on ADA claim where officer responded to reports of a disturbance involving a young person who was threatening harm to others on the scene prior to the officers' arrival and attempted to hit an officer); *Phillips*, 2021 U.S. App. LEXIS 22947 at **11-12 (5th Cir. 2021) (finding plaintiff sufficiently pled an ADA claim against a deputy sheriff who tased him after he charged at another person on the scene); *Hobart v. City of Stafford*, 784 F. Supp. 2d at 758 (S.D. Tex. 2011) (denying defendant's motion to dismiss ADA claims where police responded to a report of an individual becoming violent and acting belligerently, and the individual ran at an officer while flailing his arms); *Salinas v. City of New Braunfels*, 557 F. Supp. 2d 771, 776 (W.D. Tex. 2006) (denying motion to dismiss plaintiff's ADA claim where officers were responding to emergency call); *Gray v. City of Denham Springs*, 2021 U.S. Dist. LEXIS 63591 at *26-28 (M.D. La. 2021) ("the ADA and [Rehabilitation Act] undoubtedly apply to police encounters, including traffic stops") (*citing Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 576 (5th Cir. 2002)).

**RESPONSE TO MOTION TO DISMISS**                                    **Page** 23 **of** 34

Defendants' next argument is that Plaintiffs failed to sufficiently allege that Mr. Lewis has a qualifying disability under the ADA. Defendants overstate the pleading burden. To sufficiently plead a qualifying disability, a plaintiff needs only to "plead facts giving rise to an inference that his or her impairment substantially limits one or more' major life activities." *Hale v. King*, 642 F.3d 492, 500-01 (5th Cir. 2011); *Shaikh v. Tex. A&M Univ. College of Med.*, 739 Fed. Appx. 215, 219 (5th Cir. 2018). Major life activities include the function of organs and body systems. 42 USC § 12102; *see Shaikh*, 739 Fed. Appx. at 219. Additionally, negative side effects or "burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(4)(ii). Plaintiffs clearly alleged that Mr. Lewis's impairment is kidney disease and that it limits his major life activity of proper organ function (i.e., eliminating bodily waste) since he requires dialysis treatment. (Doc. No. 1 ¶¶6, 23, 123). Moreover, Plaintiffs have drawn a clear connection between Mr. Lewis's impairment and the requested accommodation of not applying restraints to his wrist. *Id.* Accordingly, Plaintiffs have met their pleading burden to show Mr. Lewis has a disability under the ADA.

Defendants also claim Mr. Lewis has not proven intentional discrimination in the Complaint. However, "at the pleading stage . . . the question is not whether there is evidence to support the claim of intentional discrimination but whether the complaint plausibly alleges such discrimination." *Phillips*, 2021 U.S. App. LEXIS 22947 at *8-9; (*citing Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019)). Intentional discrimination can be found where government employees ignore requests for an accommodation. *See Perez v. Drs. Hosp. at Renaissance Ltd.*, 624 F. Appx. 180, 185-86 (5th Cir. 2015); *Cadena v. El Paso County*, 946 F.3d

717, 724 (5th Cir. 2020). Plaintiffs have included facts that would support a finding of intentional discrimination, including the fact that Defendants had notice of Mr. Lewis's limitations and did not accommodate them. (Doc. No. 1 ¶¶ 23, 26). Moreover, Defendants' extensive history of failing to accommodate people with disabilities creates a strong inference that Defendants' discrimination was intentional. (Doc. No. 1 ¶¶ 78-83). It is also important to note that Plaintiffs are seeking injunctive relief on their ADA claim. (Doc. No. 1 ¶ l). Even if they had failed to plead facts to plausibly allege intentional discrimination, their claim could still move forward on injunctive and declaratory theories of relief. *See Carter v. Orleans Parish Public Schools*, 725 F.2d 261, 263-64 (1984).

Finally, Defendants claim that they had no knowledge of Mr. Lewis's disability. Again, this Court can only reach that finding if it deletes entire paragraphs of Plaintiffs' Complaint. Mr. Lewis informed officers of his condition and need for an accommodation prior to being handcuffed. (Doc. No. 1 ¶ 26). Ms. Armstead similarly notified officers of Mr. Lewis's condition and need for an accommodation. (Doc. No. 1 ¶ 23). Accepting Plaintiffs' facts as true and drawing inferences in their favor, as the Court must at this stage, Defendants clearly had requisite knowledge of Mr. Lewis's disability to trigger their obligation to accommodate him.

### 8.   *Plaintiffs have Exceeded their Burden to State Monell Claims.*

At the pleading stage, a complaint for *Monell* claims is only required to meet the low burden of containing "sufficient factual matter, [which] accepted as true [] state[s] a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678 (internal quotation omitted). Courts are not permitted to hold § 1983 claimants to heightened pleading standards beyond the liberal "notice pleading" requirement. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*

*Unit*, 507 U.S. 163, 168 (1993). *Monell* claims for persistent or pervasive practices are sufficiently pled if the complaint does more than simply describe the incident giving rise to injury. *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020).

Mr. Lewis and Ms. Armstead's Complaint dedicates approximately seven pages and thirty-eight paragraphs to describing the policies, practices, or customs of the City of Rosenberg and RPD with which they take issue, including facts, case citations, and publicly available information relating to other incidents. (Doc. No. 1 ¶¶ 45-83). The groundless, generic nature of Defendants' motion is apparent because they claim that Plaintiffs allegedly "provide only bare legal conclusions[,]" completely disregarding Plaintiffs' pleading, including citations to thirty-eight civilian complaints, four separate media reports, four lawsuits, and a corrective action form. *Id.*

a. *Plaintiffs Properly Identified Officials Whose Acts May Fairly Be Said to Represent Official Policy.*

Defendants erroneously endeavor to argue both that Plaintiffs' very specific and detailed allegations of the policies, practices, or customs of RPD do not support a claim to relief against Rosenberg *and also* that RPD is not a separate juridical entity from the city. (Doc. No. 18 at ¶48). This is meritless.

The identity of a policymaker is a question of law, and "a plaintiff is not required to single out the specific policymaker in [a] complaint." *Groden v. City of Dall.*, 826 F.3d 280, 282 (5th Cir. 2016). Rather, plaintiffs "need only plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Id.* at 282 (emphasis in original). Defendants argue that RPD is not a proper Defendant, although the Fifth Circuit recognizes that "[t]he plaintiff, of course, will name the entity that acted under the policy as a defendant. This level of identification is fundamental." *Groden*,

826 F.3d at 284 n.4.

Defendants repeatedly and speciously imply that only a policy promulgated by the city council will support a *Monell* claim. (Doc. No. 18 at ¶¶48-56). *Monell* analysis is not as narrow as Defendants assert. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). While *Monell* holds that a local government may not be sued exclusively under a theory of *respondeat superior*, suits against local governments are permitted "when execution of a government's policy or custom, whether made by its lawmakers *or by those whose edicts or acts may fairly be said to represent official policy*, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694 (emphasis added). *Monell* clearly does not stand for the proposition that a local government is only responsible for acts committed by city councilmembers. *See id.*

Defendants' argument overlooks the U.S. Supreme Court's emphatic rejection of the very argument it makes in its motion: "like other governmental entities, municipalities often spread policymaking authority among various officers and official bodies. As a result, particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). The Court has explicitly recognized that there are a "rich variety of ways in which the power of [local] government is distributed among a host of different officials and official bodies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). The Court essentially directs lower courts to state law, refusing to establish any default final policy maker. *Id.* at 125 (stating "state law . . . will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business").

Defendants do not cite to any authority stating that Rosenberg's city council has the ability to oversee or issue rules, policies, or procedures for RPD, nor do Defendants point to any authority permitting the city council to reverse any rule, policy, or procedure issued by the Chief of Police. Instead, Defendants merely argue that the city council must have established or approved an unconstitutional city policy. Actually, a policymaker is any person who has "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis*, 485 U.S. at 125. A policymaker "act[s] in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (*en banc*). That is true here. RPD sets its own policies through the Chief of Police. *Even if* RPD is not a policymaker, the Chief of Police is a policymaker, and the City of Rosenberg is liable for the policies set by the Chief of Police.

Here, RPD's Chief of Police is the policymaker setting forth the policies, practices, and customs for RPD of which Plaintiffs complain; his "acts and edicts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Plaintiffs' complaint identifies two specific General Orders representing official policies and procedures of RPD, issued by RPD's Chief of Police. (Doc. No. 1 at n. 8 and n. 13). These General Orders are not issued by the city council; they are issued by the Chief of Police and, pursuant to RPD policy, "[o]nly the Chief of Police determines policy."[7] Further it is the Chief of Police, not the city council, who approves RPD's Standard Operating Procedures,[8] and "[n]o policy, rule, regulation, procedure or memorandum is valid

---

[7] Rosenberg Police Department, General Order 1.01, Mission, Values, and Written Directives at Section IV (A)(3), available at https://www.rosenbergtx.gov/DocumentCenter/View/1938/GO-101-PDF.
[8] *Id*. at Section V (A)(2)(b).

unless signed by the Chief of Police or designee."[9] "[P]olicymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals." *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam) (internal quotations omitted). Accordingly, Rosenberg either impliedly or expressly delegated policymaking authority to RPD's Chief of Police. *See Bennett*, 728 F.2d at 769 (holding that policymaking authority may be impliedly delegated by conduct, practice, or encouragement). Thus, taking all facts in the light most favorable to Plaintiffs, Plaintiffs properly pleaded facts going to the policymaker of RPD and cleared the low hurdle of notice pleading.[10]

   b. *Plaintiffs Pleaded Multiple Unconstitutional Policies, Practices, and/or Customs.*

Foremost, it is worth noting that Defendants argue, in conclusory fashion, that this Court must analyze the written policies to which Plaintiffs' pleadings cite "in the context of the whole" but then they fail to provide this Court with any further context to consider. *See* ECF Doc. 18 at ¶51 (internal quotations omitted). Likely, Defendants have no additional context to add because, unlike the case Defendants cite, Plaintiffs provided this Court with a link to both General Orders in whole and did not pull out just a single sentence. (*See* Doc. No. 1 at n. 8 and n. 13). Similarly, Defendants would have this Court believe that Plaintiffs' Complaint provides a list of "several instances" without setting forth "factual allegations to support the asserted custom" when, in reality, every single example of RPD and Rosenberg's practices and customs include not only a factual description within the body of the text but also citations to news articles, videos, case styles, and civilian complaints with dates. There is little more factual context Plaintiffs could provide this

---

[9] *Id*. at Section V (B).

[10] In the unlikely event that this Court disagrees that Plaintiffs have met their burden, Plaintiffs have shown that they are entitled to amend their complaint because amendment would not be futile.

**RESPONSE TO MOTION TO DISMISS**   **Page** 29 **of** 34

Court without the benefit of discovery. Even if Plaintiffs had only plead "several instances" as Defendants suggest, a single-incident or a few situations of misconduct can be sufficient to establish municipal liability where they place a municipality on notice of the need to increase training or otherwise improve their policies. *Canton v. Harris*, 489 U.S. 378, 390 (1989); *Brown v. Bryan County*, 219 F.3d 450, 463 (5th Cir. 2000)(need to train on use of force in detentions where arm-bar takedown was used).

Notwithstanding the fact that Plaintiffs *do* identify written policies and procedures with which they take issue, "the Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *City of St. Louis*, 485 U.S. at 127 (internal citations omitted). The U.S. Supreme Court holds that "local governments…may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking [sic] channels." *Monell*, at 436 U.S. at 691; *see also Sharp v. City of Houston*,  164 F.3d 923, 935 (5th Cir. 1999). A municipality's  indifference to a pattern of misconduct is sufficient to establish liability under *Monell*. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 629 (5th Cir. 2018)(noting plaintiffs "need not demonstrate the invalidity of written policies themselves" where they are alleging municipal liability on the basis of inadequate or inappropriate training); *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161 (5th Cir. 1985)(failure to investigate and discipline officers after misconduct can prove a municipal custom or policy); *Vess v. City of Dallas*, 2022 U.S. Dist. LEXIS 111187 at *25 (N.D. Tex. Jun. 23, 2022)(finding proof of systematic inattention to complaints of misconduct and "'purely

formalistic investigation' in response to incidents of misconduct" can establish a failure-to-discipline policy under Fifth Circuit precedent).

In their complaint, Plaintiffs identify RPD's extensive history of using unnecessary and unreasonable force to execute detentions and arrests, prolonging detentions without reasonable suspicion, conducting unreasonable searches, unjustifiably seizing property, and not accommodating people with visible or known disabilities, including facts and civilian complaints going to multiple different instances of each of these policies, practices, and/or customs. (*See* Doc. No. 1 at ¶¶ 45-83).. Accordingly, Plaintiffs have exceeded their low pleading burden and properly identified unconstitutional policies, practices, or customs.[11]

### c. *Plaintiffs Each Identified Injury Attributable to Defendants.*

Plaintiffs have properly pled a "direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 579. It is incomprehensible that Defendants attempt to argue there is no identified injury attributable to Defendants. Plaintiffs claim all of the following in their Complaint:

 a) that RPD's custom of excessive force and failing to accommodate the medically vulnerable directly led to Mr. Lewis needing to undergo three surgeries to repair the stint in his arm;

 b) that RPD's practice of using unreasonable and unnecessary force and its practice of prolonging detentions without reasonable suspicion directly resulted in Mr. Lewis and Ms. Armstead being handcuffed, placed in police vehicles, and held at gunpoint despite them obviously failing to match the description of the suspects for which RPD were searching;

 c) RPD's practice of conducting unconstitutional searches caused the inside of their vehicle and the trunk of their car to be unconstitutionally searched without probable cause; and

---

[11] Even if this Court disagrees, Plaintiffs have demonstrated that they are entitled to leave to amend their complaint.

**RESPONSE TO MOTION TO DISMISS**       **Page** 31 **of** 34

d) All of the events in question caused Mr. Lewis and Ms. Armstead to distrust the police and to suffer a great deal of mental anguish to the point that they can no longer drive down the road where they were stopped, in addition to the physical pain and suffering that Mr. Lewis alleges.

These claims far exceed Plaintiffs' burden of pleading facts that, taken in the light most favorable to them, provide the required notice to Defendants of what injuries and deprivations RPD's policies, practices, or customs caused.

### 9.    *Plaintiffs Properly Pleaded a Claim for Conversion*

Defendants insist that they are categorically immune from Ms. Armstead's civil conversion claims. However, Texas courts have generally agreed that government agencies and their employees can be sued for conversion. generally agreed upon that a municipality can be sued for conversion. *See Knowles v. City of Granbury*, 953 S.W.2d 19, 23 (Tex. Ct. App. 1997) (finding home rule municipality did not have sovereign immunity from conversion suit); *Nabelek v. Bradford*, 2002 Tex. App. LEXIS 6193 (Tex. Ct. App. 14th, Aug. 22, 2002) (affirming summary judgment in favor of municipality in a conversion suit brought against it on statute of limitations grounds). Whether or not a municipality waives immunity is dictated by the city's charter. *Knowles*, 953 S.W. 2d at 23. Here, Rosenberg's city charter waives such immunity. *See* Rosenberg Code of Ordinances Art. VIII, Sec. 13.06. In all, Defendants blanket assertions of immunity are without merit.

Accordingly, this Court should deny Defendants' motion to dismiss. In the alternative, Plaintiffs seek leave to amend their complaint as they have demonstrated that amendment would not be futile.

## <u>CONCLUSION</u>

Respectfully, Plaintiffs have amply stated claims upon which relief can be granted and

Defendants 12(b)(6) motion does not present a close question. Plaintiffs urge the Court to deny the motion in its entirety.

Respectfully submitted,

NATIONAL POLICE ACCOUNTABILITY PROJECT

Lauren Bonds
1403 Southwest Boulevard
Kansas City, Kansas 66103
(620) 664-8584
legal.npap@nlg.org

Keisha James
PO Box 56386 Washington, DC 20040
(202) 557-9791 Telephone
keisha.npap@nlg.org

Eliana Machefsky
2111 San Pablo Avenue
PO Box 2938
Berkeley, CA 94702
(314) 440-3505 Telephone
fellow.npap@nlg.org

Allie Van Stean
State Bar No. 24104711
Kizzia Johnson PLLC
1910 Pacific Avenue
Suite 13000
Dallas, Texas 75201
Tel: (214) 451-0164
Fax: (214) 451-0165
allie@kjpllc.com

Tiffany Bartley Sams*
PathLight Legal Corporation
SBOT 24053091
www.pathlightlegalcorporation.com

Tiffanysams@pathlightlegalcorporation.com
(P) 713-609-9622
(F) 713-589-4689

Stephen D. Dockery
Texas Bar No. 24120265
4416 Bell Street Houston, Texas 77023
stephendd@gmail.com
202-817-6351 Telephone
pro bono attorney

*Federal admission pending*

**ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following counsel of record in accordance with the District's ECF service rules on October 3, 2022.

*/s/ Allie Van Stean*

William S. Helfand
Norman Ray Giles
Randy E. Lopez
Lewis Brisbois Bisgaard & Smith, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767
(713) 759-6830 (fax)