United States Courts
Southern District of Texas
FILED

*December 20, 2023*

Nathan Ochsner, Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHAEL LEWIS and REGINA ARMSTEAD,** | § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 4:22-cv-02593** |
| **V.** | § § | _____ |
| **CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, JOHN CLAUSEN, RYAN CANTU and MATTHEW NEWPORT,** | § § § § § § | **JURY DEMANDED** |
| **Defendants.** | § | |

## FIRST AMENDED COMPLAINT

COME NOW, MICHAEL LEWIS ("Lewis") and REGINA ARMSTEAD ("Armstead") (collectively, "Plaintiffs") and file this their First Amended Complaint against Defendants CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, RYAN CANTU, JOHN CLAUSEN, and MATTHEW NEWPORT (collectively, "Defendants"), and would respectfully show the Court as follows:

## PRELIMINARY STATEMENT

1. On November 6, 2020, Rosenberg Police Department ("RPD") officers detained elderly Plaintiffs at gunpoint, handcuffed them, searched the entirety of their vehicle, and destroyed Mr. Lewis's life-saving medical device. RPD claimed to be responding to a Computer Aided Dispatch ("CAD") call reporting a group of teenagers that had been brandishing firearms and

drove away in a car that was purportedly similar to the vehicle Plaintiffs were driving. The Plaintiffs are both longtime residents of Texas and in their fifties and sixties. RPD incorrectly identified Ms. Armstead's vehicle as the one used by the group of teens to flee the scene of an alleged assault, even though Plaintiffs are senior citizens and do not remotely match the description of the teen suspects.

2.   This is a civil rights action brought under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act concerning the illegal and violent detention of Michael Lewis and Regina Armstead and unlawful vehicle search by RPD.

## PARTIES

3.   Plaintiff MICHAEL LEWIS is a 67-year-old African-American man who resides and is domiciled in Rosenberg, Texas in Fort Bend County. He is currently retired, having previously worked as a supervisor at Imperial Sugar. Mr. Lewis suffers from kidney disease and wears a stint in his hand to treat his condition through regular dialysis treatments.

4.   Plaintiff REGINA ARMSTEAD is a 57-year-old African-American woman who resides and is domiciled in Rosenberg, Texas in Fort Bend County. She works as a Certified Nursing Assistant at Oakbend Medical Center.

5.   Defendant CITY OF ROSENBERG is a political subdivision of the State of Texas, located within the boundaries of the Houston Division of the Southern District of Texas, where all acts and omissions alleged herein occurred. CITY OF ROSENBERG may be served with process by serving Mayor Kevin Raines at 2110 4th Street Rosenberg, TX 77471.

6.   JOHN DELGADO was at all times relevant to this complaint a police officer with the Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

7.   ADAM VASQUEZ was at all times relevant to this complaint a police officer with the

Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

8.  ARTHUR LOVE was at all times relevant to this complaint a police officer with the Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

9.  RYAN CANTU was at all times relevant to this complaint a police officer with the Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

10. JOHN CLAUSEN was at all times relevant to this complaint a police officer with the Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

11. MATTHEW NEWPORT was at all times relevant to this complaint a police officer with the Rosenberg Police Department, a person of full age of majority, and a resident of Texas.

## JURISDICTION and VENUE

12. The Court has original jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1332, 1343(a)(4). Plaintiffs' claim for relief is predicated upon 42 U.S.C. § 1983 which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States.

13. Venue is properly maintained in this Court under 28 U.S.C. § 1391(b) because it is the judicial district where a substantial part of the events and omissions giving rise to the claim occurred, and in which the incident that is the basis of this suit occurred.

## NATURE OF THE ACTION

14. Plaintiffs MICHAEL LEWIS and REGINA ARMSTEAD were subjected to an unlawful detention and vehicle search during a traffic stop on November 6, 2020. Plaintiffs commence this action pursuant to 42 U.S.C. § 1983, which provides in relevant part for redress for every person

within the jurisdiction of the United States for the deprivation under color of state law of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Specifically, Plaintiffs bring this action for Defendants' violations of the Fourth Amendment to the United States Constitution, made applicable to Defendants by the Fourteenth Amendment to the United States Constitution. Plaintiff Michael Lewis is also pursuing claims under the Americans with Disabilities Act. Plaintiffs seek compensatory and punitive damages together with reasonable attorney fees as authorized by 42 U.S.C. § 1988.

## **FACTUAL BACKGROUND**

***Defendants' November 6th Violent Stop, Detention, and Search of Mr. Lewis and Ms. Armstead.***

15. On or about 5:50 pm on November 6, 2020, RPD received a "weapons call" reporting that a group of Black and Hispanic teenagers had brandished guns to a group of kids at 3324 River Road SW Rosenberg, Texas. The caller indicated that the teenagers had fled in a white vehicle with tinted windows and black rims towards 3rd Avenue.

16. In response to the weapons call, RPD dispatched Defendants John Delgado, Ryan Cantu, Adam Vasquez, Arthur Love, John Clausen, and Matthew Newport to search for the teenagers. At 6:00 pm, they spotted Plaintiffs' white Dodge Charger with silver hubcaps driving West on Lane Avenue.

17. Ms. Armstead was driving home with her partner, Mr. Lewis, in the passenger seat after picking up a meal at Captain D's restaurant on 3714 Avenue H, Rosenberg, Texas 77417. When they first saw lights and sirens from the RPD vehicles, Ms. Armstead slowed down and moved over to let them pass. Ms. Armstead assumed that RPD officers were pursuing another driver because she had been abiding by traffic laws. When Ms. Armstead was instructed to pull over via

the police officer's vehicle intercom system, Ms. Armstead was confused but immediately complied, and pulled over to the shoulder of the road.

18. Once Ms. Armstead stopped, officers directed her over the vehicle intercom system to throw her keys out of the window. She did. The officers then demanded she exit the vehicle and get on the ground on her knees. Ms. Armstead kneeled with her hands up as the officers stood by their vehicle with their guns drawn. The officers then ordered Ms. Armstead to stand up and walk backwards to the police vehicle. Ms. Armstead complied with the order, walking approximately 30 feet back with her hands above her head.

19. Once Ms. Armstead reached the vehicle, Defendant Matthew Newport grabbed her arms and handcuffed her while two other officers kept their guns pointed at her. While Ms. Armstead's person was being searched and handcuffed, Mr. Lewis remained in the white Dodge Charger under the detention of RPD.

20. While being handcuffed, Ms. Armstead informed the officers that Mr. Lewis is a dialysis patient and his medical condition is managed through the use of an AV Fistula in his left forearm. Ms. Armstead further informed RPD that Mr. Lewis could not have tight items, such as handcuffs, around his left arm or wrist due to his medical condition.

21. Ms. Armstead was then placed in the back of a police vehicle and remained handcuffed in the back of that vehicle for the duration of the investigation.

22. Despite the fact that neither Ms. Armstead nor Mr. Lewis matched the description of the teenagers, RPD continued with their search, seizure, and "investigation," and ordered Mr. Lewis to stick his hands outside of the Dodge Charger window. Four armed officers—including one holding an assault rifle—then ordered Mr. Lewis out of the vehicle and told him to get on the

ground. Mr. Lewis responded that his age prevented him from kneeling but still lowered himself to his knees.

23. Once on his knees, Defendant Arthur Love began to handcuff Mr. Lewis. He informed the officers that he had a stint in his hand and his doctor had instructed him to not put anything on his hands or wrists, just as Ms. Armstead had cautioned them. The officers ignored Mr. Lewis's concerns and handcuffed him anyway. An officer then pulled Mr. Lewis to his feet and put him in the back of a separate police vehicle where he remained for the remaining duration of the investigation.

24. Without requesting or receiving consent from Plaintiffs–and while Plaintiffs were still handcuffed and detained in the backseats of police vehicles–RPD officers searched the interior and trunk of the vehicle.

25. Mr. Lewis noticed that the area around his forearm and wrist hurt and felt tight during his detention in the back of the police vehicle.

26. On information and belief, at some point during the search of the interior of the vehicle, one of the four officers confiscated Ms. Armstead's cell phone.

27. RPD officers found no weapons, no contraband, and no other evidence of illegal activity in the vehicle during the search.

28. Following the search, RPD officers let Mr. Lewis out of the back of the police vehicle and removed his handcuffs.

29. Shortly after Mr. Lewis was uncuffed and had exited the back of the police vehicle, Ms. Armstead was permitted to exit the other police vehicle and was uncuffed. Once uncuffed, Ms. Armstead asked why she and Mr. Lewis had been stopped, detained, and searched because

Plaintiffs still had not been advised of the reason for their detention. One officer responded that they had been searching for three young men who had been "driving around and shooting at kids."

30. Once both Mr. Lewis and Ms. Armstead were uncuffed, RPD officers permitted them to leave the scene.

31. On the drive back to their home, Ms. Armstead realized that she did not have her phone and they did not have their house keys or the vehicle key fob. She was only able to start her vehicle and drive home because the missing fob was in close proximity to her car when she drove away. Ms. Armstead used Mr. Lewis's phone to call RPD and explained that she was missing her keys and phone. Ms. Armstead was instructed by the phone operator to return to the scene of the stop where an officer would meet her and Mr. Lewis.

32. When Ms. Armstead and Mr. Lewis returned to the place where they were stopped near Mustang and Lane Avenues, they were met by Defendant Arthur Love and another officer.

33. One of the officers returned Ms. Armstead's phone without explanation as to why it was confiscated.

34. When Ms. Armstead complained about their treatment during the stop, Defendant Love responded that she should file a complaint with RPD.

35. Defendant Love helped Ms. Armstead and Mr. Lewis find their keys. When the keys were located, still in the street, they saw that the fob had been crushed. Defendant Love instructed Ms. Armstead and Mr. Lewis to get a receipt for the cost of repairing the fob and bring it to the RPD police station, and RPD would reimburse them for the cost.

36. Mr. Lewis and Ms. Armstead went to a Dodge dealership to get their key fob repaired in the parts department. They obtained a receipt for the costs. Mr. Lewis and Ms. Armstead submitted

the receipt to RPD for reimbursement per Defendant Love's instruction, but RPD did not reimburse Mr. Lewis and Ms. Armstead for the costs of repairing the fob.

37. As a result of the handcuffing during his arrest, Mr. Lewis's medical device in his wrist malfunctioned. This resulted in three separate medical procedures to replace his fistula. These procedures caused Mr. Lewis prolonged pain and suffering.

38. There was no justification or authority under the law for Defendants to detain Plaintiffs. Moreover, there was no justification or authority under the law for Defendants to search Ms. Armstead's vehicle, and in particular, the trunk of her vehicle, without consent. Once the RPD officers realized that neither Ms. Armstead nor Mr. Lewis matched the persons of interest, they should have been free to leave. Instead, Ms. Armstead and Mr. Lewis, a couple in their fifties and sixties, were handcuffed, detained, and subjected to an unconstitutional search and seizure. Had Defendants applied the most minimal effort required of reasonable officers, the invasive detention and search would never have occurred.

39. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of the court, for which they bring suit. Specifically, both Ms. Armstead and Mr. Lewis felt frightened, humiliated, embarrassed, and persecuted for being Black, and suffered severe mental anguish from the arrest and from being detained. Mr. Lewis suffered physical harm from the unnecessary and excessive handcuffs placed around his left wrist despite Defendants having been repeatedly informed of Mr. Lewis's medical condition.

40. Defendants' conduct has altered Mr. Lewis's and Ms. Armstead's lives for the worse. Ms. Armstead no longer feels safe in the presence of police. She feels anxious whenever she sees an RPD officer while driving. Ms. Armstead avoids any route that takes her near the scene of the

November 6th stop. Mr. Lewis has similarly experienced considerable emotional distress as a result of the stop. He has had trouble with anxiety and restlessness since the incident with RPD. He fears RPD pulling him over again. Neither Plaintiff is comfortable contacting RPD for help.

### Defendant City of Rosenberg Does Not Accommodate People With Visible or Known Disabilities

41. RPD does not provide accommodations for people with disabilities.

42. RPD has been sued in the past by people with disabilities after RPD officers refused to accommodate their medical needs during stops, searches, and arrests.

43. RPD is currently being sued for the violent arrest of a man missing bones in his arms.[1] RPD officers handcuffed the man even though they knew handcuffing would result in an injury.

44. RPD was sued in 2016 for brutally arresting a chemotherapy patient with a "port-a-cath" implant in her chest. RPD officers kicked the cancer patient's feet out from under her and slammed her on the ground even though her husband warned the officers that she had a medical device on her chest.[2] RPD settled the case in 2017.

45. RPD was also sued in 2011 for violently arresting a man who was hard of hearing and breaking his hearing aid.[3]

46. RPD's Use of Force General Order 6.01 does not require police officers to consider medical vulnerability when evaluating the reasonableness of their use of force.[4]

---

[1] *Supra* at n. 3.
[2] *Supra* at n. 1.
[3] *Eiteman v. City of Rosenberg*, 11-cv-04633 (S.D. Tex. Oct. 9, 2013).
[4] *Supra* at n. 8.

## CLAIMS FOR RELIEF

### COUNT 1-VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEIZURES AND SEARCHES (FALSE ARREST)

**(Claims of Plaintiffs Pursuant to 42 U.S.C. § 1983 Against All Individual Defendants for Violations of the Fourth Amendment)**

47. Plaintiffs reallege the facts and allegations contained above as if fully set out herein verbatim.

48. Handcuffing a detained individual and placing them in the back of a police vehicle converts a detention to an arrest for which the arresting officer must have probable cause of a crime. *Turner v. Lieutenant Driver*, 848 F.3d 678, 693 (5th Cir. 2017).

49. Defendants, by and through persons acting under color of state law, arrested both Mr. Lewis and Ms. Armstead when they handcuffed them and placed them in the back of RPD vehicles for an extended period of time.

50. Defendants did not have probable cause that Mr. Lewis or Ms. Armstead were involved in the crime they were investigating. The fifty-seven and sixty-seven year-olds did not match the description of the teenagers Defendants were searching for, and there was no evidence connecting Mr. Lewis or Ms. Armstead to the teenagers or any other criminal activity.

51. The fact that Mr. Lewis and Ms. Armstead were driving a car with a similar make and model to the vehicle of the suspects is not sufficient to establish probable cause for an arrest. *Kansas v. Glover*, 140 S. Ct. 1183, 1191 (2020).

**COUNT 2-VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEIZURES AND SEARCHES (ILLEGAL SEARCH)**

**(Claims of Plaintiffs Pursuant to 42 U.S.C. § 1983 Against All Individual Defendants for Violations of the Fourth Amendment)**

52. Plaintiffs reallege the facts and allegations contained above as if fully set out herein verbatim.

53. Plaintiffs had a clearly established constitutional right to be free from unlawful search and seizure.

54. A warrantless vehicular search can only be conducted if an officer has probable cause that the car contains contraband. *United States v. Guzman*, 739 F.3d 241, 246 (5th Cir. 2014).

55. Despite the absence of a warrant or probable cause, Defendants, by and through persons acting under color of state law, unlawfully and unconstitutionally searched Plaintiffs' vehicle without their consent. For the same reasons that RPD officers did not have reasonable suspicion to extend the stop, they did not have probable cause to search the interior or trunk of Plaintiffs' vehicle for contraband.

56. Defendants' conduct, as described in this Complaint, deprived Plaintiffs of their right to be secure in their personal belongings against unreasonable search and seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

**COUNT 3-VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEIZURES AND SEARCHES (EXCESSIVE FORCE)**

**(Claim of Plaintiff Lewis Pursuant to 42 U.S.C. § 1983 Against All Individual Defendants for Violations of the Fourth Amendment)**

57. Plaintiffs reallege the facts and allegations contained above as if fully set out herein verbatim.

58. Officers use excessive force when they hold a civilian at gunpoint when the officer does not reasonably believe the individual is armed and dangerous. *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013).

59. Defendants held Mr. Lewis at gunpoint for an extended period of time, after the officers should have reasonably determined that Mr. Lewis and Ms. Armstead were not the suspects for whom they were searching and did not pose any threat of harm or flight.

60. Defendants, by and through persons acting under color of state law, violated Plaintiff's Fourth Amendment right to be free from excessive force when they held him at gunpoint after they discovered Plaintiffs were not armed teenagers and did not pose any threat of harm or flight.

61. Officers also use excessive force when they apply handcuffs so tightly that they cause an injury. *See e.g., Deville Marcantel*, 567 F.3d 156 (5th Cir. 2009).

62. Defendants locked Mr. Lewis's handcuffs so tightly that it caused a long-lasting injury on his wrist that required multiple medical procedures and damaged his medical device. Defendants applied the handcuffs tightly despite being informed by both Ms. Armstead and Mr. Lewis that Mr. Lewis had a sensitivity due to his medical condition.

**63.** Defendants violated Mr. Lewis's Fourth Amendment right to be free from excessive force by applying his handcuffs too tightly.

### COUNT 4-VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT —DISABILITY-BASED DISCRIMINATION

### (Claim of Plaintiff Lewis Against Defendant City of Rosenberg)

64. Plaintiffs reallege the facts and allegations contained above as if fully set out herein verbatim.

65. Defendant City of Rosenberg is a public entity and receives federal funding and is thus required to comply with the Americans with Disabilities Act ("ADA"), which protects individuals with disabilities. *See e.g., Hainze v. Richards*, 207 F.3d 795, 799–800 (5th Cir. 2000). The ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities" including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A).

66. Under the ADA, Defendant City must provide the civilians with disabilities its police department serves with reasonable accommodations and modifications including alternative methods to detain or arrest a person with preexisting injuries or disabilities where handcuffing may exacerbate the pre-existing injury or cause a new injury.

67. RPD refused to implement reasonable policies to ensure their officers modified their interactions with individuals with disabilities to avoid causing pain or injury, including policies on how to detain and restrain individuals with disabilities in ways that would not harm them or exacerbate their conditions. *See e.g., Borawick v. City of Los Angeles*, 793 Fed. App'x. 644, 646 (9th Cir. 2020).

68. RPD has been sued multiple times for failure to accommodate the known disabilities and medical conditions of the civilians with whom they interact.

69. Mr. Lewis's kidney disease makes him a "qualified individual" with a medical disability under the ADA. *See* 42 U.S.C. § 12102(1)(A), (2)(A). Mr. Lewis and Ms. Armstead both notified RPD officers of his disease and his associated wrist sensitivity for his dialysis treatment. However, RPD officers did not modify their arrest procedures. They tightly applied Mr. Lewis's handcuffs

despite being informed that the pressure of the handcuffs would harm his wrist. RPD's intentional failure to accommodate Mr. Lewis's disability resulted in him suffering a greater injury than other arrestees.

## CONDITIONS PRECEDENT

70. All conditions precedent to jurisdiction have occurred or have been complied with by Plaintiffs.

## DAMAGES

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that, upon presenting the facts of this case, they recover from Defendants the following relief:

(a)   Judgment in an amount that will compensate them for the violation of their constitutional rights;

(b)   Compensatory damages, including for past and future emotional distress and mental anguish, humiliation, and any past or future medical expenses as a result of such emotional distress;

(c)   Enter a declaratory judgment, specifying Defendants' constitutional violations and declaring the rights of the Plaintiffs;

(d)   Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that Defendants' treatment of Plaintiffs was unconstitutional and in violation of 42 U.S.C. § 1983;

(e)   Declare that Defendants' acts, taken in their individual capacities, as alleged above, violate the Fourth Amendment of the U.S. Constitution;

(f)     Enter a permanent injunction preventing Defendants from maintaining unconstitutional search, seizure, and use of force policies, practices, and/or customs;

(g)     Order the City of Rosenberg to adopt and implement a policy that requires RPD officers to record on dashcam and body-worn cameras any stop involving the use of force including incidents where officers draw guns or use handcuffs;

(h)     Order the City of Rosenberg to adopt and implement a policy that requires retention of dashcam and body-worn camera footage, incident reports, and any other documentation of stops involving use of force for at least one year;

(i)     Order the City of Rosenberg to adopt and implement a policy that requires officers to document any vehicle search;

(j)     Order the City of Rosenberg to adopt and implement a policy that requires officers to retain any documentation of any vehicle search for at least one year;

(k)     Order the City of Rosenberg to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein;

(l)     Costs expended herein, including reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1983, 1988;

(m)     Pre- and post-judgment interest; and

(n)     Any and all other relief to which they may be entitled that the court deems

just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that, upon

presentation of the facts of this cause, they recover from Defendants all such relief to which they

may find themselves justly entitled.


Respectfully submitted,

PATHLIGHT LEGAL CORPORATION

/s/ *Tiffany Bartley Sams*
Tiffany Bartley Sams, Esquire
Texas Bar No. 24053091
www.pathlightlegalcorporation.com
Tiffanysams@pathlightlegalcorporation.com
(P) 713-609-9622
(F) 713-589-4689


FLOOD & FLOOD

Stephen D. Dockery
Texas Bar No. 24120265
4416 Bell Street
Houston, Texas 77023
stephendd@gmail.com
202-817-6351 Telephone
pro bono attorney

KIZZIA JOHNSON PLLC

D. Bradley Kizzia
Texas Bar No. 11547550
1910 Pacific Avenue
Suite 13000
Dallas, Texas 75201
Tel: (214) 451-0164
bkizzia@kjpllc.com

NATIONAL POLICE ACCOUNTABILITY PROJECT

Lauren Bonds*
1403 Southwest Boulevard
Kansas City, Kansas 66103
(620) 664-8584
legal.npap@nlg.org

Keisha James*
PO Box 56386
Washington, DC 20040
(202) 557-9791 Telephone
keisha.npap@nlg.org

Eliana Machefsky*
2111 San Pablo Avenue
PO Box 2981
Berkeley, CA 94702
(314) 440-3505 Telephone
fellow.npap@nlg.org


* admitted *pro hac vice*


**ATTORNEYS FOR PLAINTIFFS**


Dated this 14th day of NOVEMBER 2023

# Exhibit B



# ROSENBERG POLICE DEPARTMENT
Report for Incident 20-54239

20-54239

|  |  |  |  |
|---|---|---|---|
| **Nature:** | WEAPONS CALL | **Address:** | 516 4TH ST |
| **Location:** | 1 |  | ROSENBERG TX 77471 |

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| **UCR Codes:** | AAFM, AAFM, AAFM, EOCA, AAFM |  |  |  |  |
| **Received By:** | Cuellar, Simon | **How Received:** | 9 | **Agency:** | RPD |
| **Responding Officers:** | Delgado, John, Cantu, R, Vasquez,Adam, Love, Arthur, Clausen, John |  |  |  |  |
| **Responsible Officer:** | Cantu, R | **Disposition:** | PEN 11/10/20 |  |  |
| **When Reported:** | 17:50:58 11/06/20 | **Occurred Between:** | 17:50:58 11/06/20 and 18:40:10 11/06/20 |  |  |

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| **Assigned To:** | SURRATT,TAYLOR | **Detail:** | AAFA | **Date Assigned:** | 11/09/20 |
| **Status:** | PEN | **Status Date:** | 11/10/20 | **Due Date:** | 11/09/20 |

**Reported:**

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| **Last:** |  | **First:** |  | **Mid:** |  |
| **DOB:** | **/**/** | **Dr Lic:** |  | **Address:** |  |
| **Race:** |  | **Sex:** | **Phone:** |  | **City:** , |

## UCR Codes

|  |  |  |  |
|---|---|---|---|
| **Reported:** |  | **Observed:** | AAFM AGG ASSAULT FIREARM |
| **Offense Codes:** | AAFM AGG ASSAULT FIREARM |  |  |
| **Offense Codes:** | AAFM AGG ASSAULT FIREARM |  |  |
| **Offense Codes:** | AAFM AGG ASSAULT FIREARM |  |  |
| **Offense Codes:** | EOCA ENGAGE ORGANIZED CRIM ACTIVITY |  |  |
| **Offense Codes:** | AAFM AGG ASSAULT FIREARM |  |  |

## Circumstances

INV Investigation
DAY Day (6 a.m. - 6 p.m.)
WFARM Firearm Used

| **Responding Officers:** | **Unit :** |
|---|---|
| Delgado, John | 220 |
| Cantu, R | 221 |
| Vasquez,Adam | 224 |

06/27/22

|                |     |
|----------------|-----|
| Love, Arthur   | 558 |
| Clausen, John  | 223 |

|  |  |  |  |
|---|---|---|---|
| **Responsible Officer:** | Cantu, R | **Agency:** | RPD |
| **Received By:** | Cuellar, Simon | **Last Radio Log:** | 18:47:01 11/06/20 C |
| **How Received:** | 9 911 LINE | **Clearance:** | RP REPORT |
| **When Reported:** | 17:50:58 11/06/20 | **Disposition:** | PEN **Date:**  11/10/20 |
| **Judicial Status:** | | **Occurred between:** | 17:50:58 11/06/20 |
| **Misc Entry:** | | **and:** | 18:40:10 11/06/20 |

**Modus Operandi:**

| | **Description :** | | **Method :** |
|---|---|---|---|
| Appearance | Appearance of Perpetrator | | Sloppy/Dirty |
| Day of Week | Preferred Day of Week | | Friday |
| Demeanor | Personal Demeanor | | Aggressive |
| Scene | Type of Crime Scene | | Street |
| Time of Day | Preferred Time of Day | | Afternoon |
| Force Used | Type of Force Used | | Handgun |

## Involvements

| Date | Type | Description | |
|------|------|-------------|---|
| 11/06/20 | Name | MONTALVO, DEVIN MALY | Victim |
| 11/06/20 | Name | WILRIDGE, CAYDEN | Suspect |
| 11/06/20 | Name | GONZALES, ALMA ELIZABETH | Victim |
| 11/06/20 | Name | MONTAVO, DARIAN | Victim |
| 11/06/20 | Name | GONZALEZ, ERICA MARIE | Victim |
| 11/06/20 | Cad Call | 17:50:58 11/06/20 WEAPONS CALL | Initiating Call |

06/27/22

## Narrative

Case #20-54239

Weather: Cool, Clear, Afternoon

Synopsis: Unknown subjects displayed firearms while threating to shoot the victims. Prosecution is desired.

Introduction: On Friday, November 6, 2020, at approximately 1750 hours, I, Officer R. Cantu #565 was dispatched to 516 4th Street, Rosenberg, Fort Bend County, Texas, 77471, in reference to a Weapons Call. The Rosenberg Police Department Communication Division (Dispatch) advised that the reportee stated that unknown subjects had arrived to the above-mentioned residence and pointed guns at her children. Dispatch advised that the unidentified subjects were now leaving location in a white in color Dodge Charger with black wheels.

Officer Investigation: Upon arrival, I made contact with the reportee, identified as Alma Gonzales (DOB: ███████████. Alma advised me that prior to my arrival, she was outside in the front yard of her residence with her two (2) sons, identified as ████████████(DOB: ███████ and Devin Montalvo (DOB: ███████. Alma stated her family member, identified as Erica Gonzalez (DOB: ███████ had just arrived on location as well.

Alma stated while outside of the residence, she observed a white in color Dodge Charger pass by her residence and drive in the alleyway behind her residence. Alma stated she then observed the white in color Charger and a gray in color passenger car (unknown make and model) to park near the intersection of 4th Street and Avenue E, Rosenberg, Fort Bend County, Texas, 77471.

Alma stated she then observed approximately eight (8) males get out of the vehicles and approach the front of her residence. Alma stated that she observed three (3) out of the eight (8) males to be armed with firearms. Alma stated she told both Devin and Darian to get inside of the residence. Alma stated that as the above-mentioned males approached the residence, they made several threats to shoot up the house as well as to burn the residence down while pointing firearms at her and her family. Alma stated once she advised that she calling the police, the three armed males along with the other subjects who arrived with them, ran back towards the above-mentioned vehicles and left location.

I made contact with Devin in reference to the incident. Devin advised me that the reason that this had occurred was that his younger brother (███████ had a physical altercation with another subject, later identified as ███████████ (DOB: ███████). Devin advised me that ███████and ██████had a fight in school (Foster High School located at 4400 FM 723, Richmond, Fort Bend County, Texas, 77469) yesterday during school hours. Devin advised me that prior to the incident, ██████and ██████were arguing via Snapchat. Devin advised me that ██████stated that he knew where he and ██████lived, to which ██████and Devin told ██████to "pull up". Devin stated a short time later, multiple subjects arrived to his residence attempting to fight both he and ██████. Devin stated he identified ██████to be on location as well as ██████s older brother to which Devin believed his name to be "Julio".

Devin stated that along with the multiple subjects on location, he observed three (3) males to have firearms and pointing them at him, ██████, Alma and Erica. Devin described the three (3) males as the following:

- Suspect #1: Tall male with a lighter complexion (unknown if black or

06/27/22

Hispanic possibly mixed) wearing a lime green in color beanie pointing a handgun
- Suspect #2: Black stocky male not wearing a shirt with a black in color
backpack pointing a foldable "AR-15" style rifle
- Suspect #3: Hispanic stocky male wearing a long sleeve gray in color
pointing a handgun. This male is believed to be █████'s older brother possibly
with the name of "Julio"

Devin stated he did not see any further weapons and only observed the other
males to be standing back as well as █████ to be wearing no shirt with gym
shorts on.

Upon speaking with ████████████ confirmed that he and █████ had gotten into a
physical altercation at school yesterday (11/05/2020). █████ further stated
that he did tell █████ to "pull up" to his residence so they could engage in
mutual combat again. █████ also stated that █████ was on location wearing gym
shirts and not wearing a shirt. Darian stated he did not see Cayden with a
firearm nor did █████ approach him like the other males did.

I made contact with Erica who advised me that she just arrived on location and
was getting out of her vehicle when she observed multiple males to run towards
the above-mentioned residence. Erica stated she observed the same three (3)
above-mentioned males to be pointing weapons at her as well as █████ Devin and
Alma, while screaming that they would shoot up the place and burn down the
residence. Erica stated she then observed the males to leave location while Alma
yelled that she was calling the police.

While speaking with Alma again, Alma advised me that as the males ran back to
the vehicles she was able to obtain photographs of the males with her cell
phone. Alma later sent the photographs to my work email
(rcantu@rosenbergtx.gov).

It should be noted upon later observing one of the photographs that Alma sent
(listed as "Untitled 5") I could observe five (5) subjects running south on the
500 block of 4th Street. In the above-mentioned photograph, suspect #2 is
observed bending over and appears to be breaking down a rifle into a backpack.
Suspect #1 and Suspect #3 are observed to running together, as a group, with
Cayden (observed to shirtless and holding a shirt in his right hand) and another
unidentified male wearing a white in color shirt towards Avenue E.

Devin, █████, Alma and Erica all advised that the actions of the
above-mentioned subjects put all of them in fear of seriously bodily injury
and/or death, as they feared that the male's actions and threats to be true.
Devin, █████ Alma and Erica all stated that they desire prosecution in
reference to charges of Aggravated Assault (F2). Due to Devin and █████ only
being in contact with █████ during the initial social media verbal altercation,
along with the physical incident that occurred at Foster High School, █████ is
being listed as a suspect in this investigation and therefore this incident is
being forwarded to the Rosenberg Police Department Criminal Investigation
Division for additional investigation.

Disposition of Prisoners: N/A

Disposition of Evidence: The above-mentioned photographs were uploaded into the
appropriate case file. My Coban Audio/Video from patrol unit #126 was retained
for evidentiary purposes.

Related Cases: None

06/27/22

## Supplement

```
CAD Call info/comments
==================================

17:50:58 11/06/2020 - Cuellar, Simon
 data. Caller Name: AT&T MOB, Phone: ███████████  UNC: 0, Lat: 0, Long: 0,
Est. Loc.:   3324 RIVER RD - SW
17:51:26 11/06/2020 - Cuellar, Simon
rp adv that someone has a gun pointed at kids
17:52:00 11/06/2020 - Cuellar, Simon
rp could hear someone yell go back inside that they have a gun
17:52:25 11/06/2020 - Salinas, C
SUBJS LEFT LOC WHI CHARGER OR CHALLENGER
17:52:56 11/06/2020 - Cuellar, Simon
rp adv that subjs were mixed blk or hms
17:53:14 11/06/2020 - Cuellar, Simon
rp adv that some kids walked towards ave e
17:53:20 11/06/2020 - Cuellar, Simon
appx 10x subjects were outside
17:53:35 11/06/2020 - Salinas, C
VEH WAS LAST SEEN HEADED TOWARDS 3RD ACROSS THE TRACKS
17:53:51 11/06/2020 - Cuellar, Simon
rp adv that one with the gun was on foot walk at ave e and 3rd unk description
of male but gun was black
17:53:53 11/06/2020 - Salinas, C - From: Love, Arthur
H/1ST
17:54:12 11/06/2020 - Salinas, C - From: Vasquez,Adam
TC
17:54:26 11/06/2020 - Salinas, C
VEH HAD TINTED WINDOWS AND BLK RIMS
17:54:42 11/06/2020 - Salinas, C
OTHER VEH WAS FOLLOWING GRY HONDA CIVIC
17:54:57 11/06/2020 - Salinas, C
BTWN BOTH VEHS 8 SUBJS
17:55:03 11/06/2020 - Salinas, C
4 SUBJS HAD GUNS
17:55:09 11/06/2020 - Salinas, C
RP ADV THEY HAD BIG GUNS
17:55:18 11/06/2020 - Salinas, C
GUNS WERE PULLED OUT
17:55:35 11/06/2020 - Salinas, C - From: Vasquez,Adam
LANE AVE I
17:55:55 11/06/2020 - Salinas, C
RP ADV HER SON KNOWS THE SUBJ
17:56:52 11/06/2020 - Salinas, C
ALMA GONZALES 832 -265-1997
17:57:00 11/06/2020 - Salinas, C
RP IS AT 516 4TH ST
17:57:36 11/06/2020 - Salinas, C - From: Vasquez,Adam
CHECKING WB ON I FRM READING
17:59:05 11/06/2020 - Salinas, C - From: Vasquez,Adam
EB ON AVE I IN FRONT OF E STADIUM DRIVE BLK RIM
17:59:15 11/06/2020 - Salinas, C
CHANNEL HELD MMD0477
17:59:38 11/06/2020 - Salinas, C - From: Vasquez,Adam
ABOUT TO BE NB ON LANE
```

06/27/22

```
18:10:11 11/06/2020 - Salinas, C - From: Cantu, R
MULTIPLE MALES TALL LIGHT SKIN BRIGHT BEANIE*/BLK MALE  NO SHIRT /HM SL GRY
SHIRT AR GUN
18:14:53 11/06/2020 - Salinas, C - From: Cantu, R
STARTED AT FOSTER FIRST NAME KAYDEN
18:15:05 11/06/2020 - Salinas, C - From: Cantu, R
4D POSS A CHARGER
18:21:11 11/06/2020 - Salinas, C - From: Cantu, R
███████████████████
18:25:06 11/06/2020 - Salinas, C - From: Cantu, R
PS 832-837-7780 ADDRESS 610 WINSTON LN SUGAR LAND
18:27:23 11/06/2020 - Salinas, C - From: Cantu, R
*EDITED* FROM "PS ████████████ ADDRESS 610 WINSTON LN SUGAR LAND" TO "PS
832-836-7780 ADDRESS 610 WINSTON LN SUGAR LAND"
18:37:28 11/06/2020 - Salinas, C - From: Cantu, R
CONTACT SL SEE IF THEY CAN ROLL BY SEE IF A WHI CHARGER W/ BLK RIMS IS ON LOC
18:41:27 11/06/2020 - Salinas, C
SUGAR LAND ADV
18:41:38 11/06/2020 - Salinas, C
220 DROP ADMIN PAGE
18:42:33 11/06/2020 - Salinas, C - From: Cantu, R
DID NOT OBSERVE ANY FMS FOR THE UNITS ON AVE D
18:45:44 11/06/2020 - Cuellar, Simon
admin page sent
18:46:51 11/06/2020 - Salinas, C - From: Cantu, R
CLEAR 4TH ST BACK IN RP
```

06/27/22

## Supplement

Rosenberg Police Department
Sgt. J.D. Delgado #314
Supplement: 20-54239

On Friday, November 6, 2020 at approximately 1750 hours, I Sgt. J.D. Delgado #314 was
notified of a weapons call at 513 4th St., Rosenberg, Fort Bend County, Texas, in reference
to several subjects with assault rifles who were making threats.

While enroute to the scene Officer Vasquez advised he had observed a vehicle matching the
suspect description near the intersection of Lane Dr. and Ave. I. I proceeded to his location
to assist. Once with Officer Vasquez myself and other officers assisted in a high risk
traffic stop. Once the occupants inside the vehicle were detained, the vehicle was secured,
and shortly thereafter it was determined that thou the vehicle was similar to that of what
the suspects had used to flee the scene it was in fact not the suspect vehicle. The occupants
were not injured during the felony stop and were released from the scene.

I made contact with Officer Cantu who briefed me on his findings. I in-turn forwarded the
information to the on call Patrol Lt.

My BWC was active for my time on scene of the high risk traffic stop.

06/27/22

## Supplement

Supplement - Officer A. Vasquez #570
20-54239

On Friday, November 6, 2020, at approximately 1750 hours, I, Officer A. Vasquez
#570, responded to a weapons call at 516 4th Street, Rosenberg, Fort Bend
County, Texas.  Rosenberg Police Dispatch advised the caller stated multiple
subjects pointed guns at children before leaving location in a white Dodge
Charger or Challenger with black wheels, which was observed going south over the
train tracks on 3rd Street.

At this time, I began traveling westbound on Avenue I from Reading Road to
search for said vehicle.  While traveling westbound, I observed a white Dodge
Charger (TXLP/MMD0477) with dark tinted windows and black wheels traveling
eastbound on Avenue I near the Radio Lane.  I turned my patrol unit and got
behind the vehicle to conduct an investigative stop.  Once additional units were
in close proximity, I activated the overhead emergency equipment of my patrol
unit and initiated the stop as the vehicle traveled northbound and approached
Mustang Avenue.

I observed the vehicle to not immediately pull over to the right side of the
road, but instead put its left signal light on as if to turn left onto Mustang
Avenue.  I observed the vehicle then stop at the stop sign momentarily before
continuing north onto Lane Drive, ignoring my emergency equipment, before
pulling to the right in the 1100 block of Lane Drive.  Myself and assisting
officers conducted a felony takedown/high risk traffic stop due to the
possibility of multiple firearms and occupants in the vehicle in relation to the
above incident.

A female driver and male occupant were detained and learned to not be involved,
and were confused as to if officers were intending to pull their vehicle over.
No charges were filed and they were provided incident numbers for the stop and
weapons call for their records before being released from the scene.

I then continued to check the area, but was unable to locate the suspect
vehicle.  Unit 137 dash camera footage and body worn camera footage was
retained.

Related Case:  20-54239

06/27/22

## Supplement

```
Rosenberg Police Department
Officer M. Newport #524
Supplement: 20-54239
```

On Friday, November 6, 2020 at approximately 1750 hours, I, M. Newport #524 responded to a weapons call at 513 4th St., Rosenberg, Fort Bend County, Texas, in reference to several subjects who displayed firearms in a threatening manner.

While in route to the scene, Officer Vasquez advised he had observed a vehicle matching the suspect description near the intersection of Lane Dr. and Ave. I. I proceeded to his location to assist. Once with Officer Vasquez myself and other officers assisted in a high risk traffic stop. The driver of the vehicle was called out of the vehicle and back to our location where I detained her in handcuffs and placed her in the rear of a patrol vehicle until the felony stop could be concluded. Once the occupants inside the vehicle were all detained, the vehicle was secured, and shortly thereafter it was determined that although the vehicle was similar to the vehicle the suspects had used to flee the scene it was, in fact, not the suspect vehicle. The occupants were not injured during the felony stop and were released from the scene.

My BWC as well as my in car COBAN was active for my time on scene of the high risk traffic stop.

06/27/22

## Supplement

On Friday, November 6, 2020, at approximately 1750 hours, I, Officer J. Clausen #510, was dispatched to a weapons call addressed as 516 4th Street, Rosenberg, Fort Bend County, Texas. While en route Rosenberg Dispatch advised the caller stated multiple subjects pointed guns at children before leaving location in a white Dodge Charger or Challenger with black wheels, which was observed going south over the train tracks on 3rd Street.

I began monitoring traffic going eastbound on Avenue H at Radio Lane when I observed over Rosenberg Police radio Officer A. Vasquez #570 state he had eyes on a vehicle matching the description traveling eastbound on Avenue I near E Stadium. I responded to Officer Vasquez location where an investigative stop was attempted near Lane Drive and Mustang Avenue. I observed the vehicle pull to the right but later change back over to the left lane at Mustang Avenue. I observed the left signal to be activated as though appearing to intend on turning west onto Mustang. The vehicle then abruptly moved forward after already receiving visual and audible signal with red and blue lights and sirens to pull over.

The vehicle continued a short distance north on Lane Drive before pulling to the right and stopping. Due to the unusual driving behavior and indecisiveness as well as the nature of the call possibly involving multiple weapons, I assisted Officer Vasquez and other officers in conducting a felony takedown. The female driver and male passenger were removed from the vehicle and detained in handcuff restraints for the safety of all involved. After determining the subjects were not involved in the weapons call, they were released from the scene.

I was then released from the scene to assist with other calls throughout the city.

The entire contact was audio/video recorded on my in car Coban system in unit #130, along with my Rosenberg Police issued body camera. All audio/video was retained for evidence purposes.

06/27/22

## Supplement

Supplement: Detective T. Surratt

Tuesday, November 10, 2020

 On this day, I, Detective T. Surratt reviewed this assigned weapons call
case.  Upon review, on 11/6/2020, officers were dispatched to 516 4th Street in
regards to multiple subjects who were on location, pointing guns at people on
location. The suspects had left location prior to police arrival.  Once on
scene, officers spoke with Devin Montalvo DOB: ████████, and ███████
DOB: ███████████.  It was learned that ██████was in a physical altercation with
████████████ DOB: ████████████ at school (Foster High School) on 11/5/2020.
Cayden was said to have been on location at their residence when the multiple
subjects arrived, but Cayden was not one of the subjects with a weapon.

(See initial report for full detail).

 I contacted Devin and ███████ mother, Alma Gonzales, via telephone and
spoke with her in regards to this investigation.  Alma stated..... (Call
attached to case).

06/27/22

## Supplement
open records request

received from nathan poland 8/5/21....public portion only requested and released
8/5/21 tb

06/27/22

## Name Involvements:



**Victim :** C126664
  **Last:** GONZALEZ          **First:** ERICA          **Mid:** MARIE
  **DOB:** ▮          **Dr Lic:** ▮          **Address:** ▮
  **Race:** H     **Sex:** F     **Phone:** ▮          **City:** ▮

**Victim :** C70448
  **Last:** GONZALES          **First:** ALMA          **Mid:** ELIZABETH
  **DOB:** ▮          **Dr Lic:** ▮          **Address:** ▮
  **Race:** H     **Sex:** F     **Phone:** ▮          **City:** ▮

**Victim :** C100828
  **Last:** ▮          **First:** ▮          **Mid:** ▮
  **DOB:** ▮          **Dr Lic:** ▮          **Address:** ▮
  **Race:** H     **Sex:** M     **Phone:** ▮          **City:** ▮

**Suspect :** 50918
  **Last:** ▮          **First:** ▮          **Mid:** ▮
  **DOB:** ▮          **Dr Lic:** ▮          **Address:** ▮
  **Race:** H     **Sex:** M     **Phone:** ▮          **City:** ▮

**Victim :** 46874
  **Last:** MONTALVO          **First:** DEVIN          **Mid:** MALY
  **DOB:** ▮          **Dr Lic:** ▮          **Address:** ▮
  **Race:** H     **Sex:** M     **Phone:** ▮          **City:** ▮

06/27/22

# Exhibit C



# ROSENBERG POLICE DEPARTMENT

Report for Incident 20-54240

---

|  |  |  |  |
|---|---|---|---|
| **Nature:** TRAFFIC STOP | | **Address:** LANE DR & MUSTANG AVE | |
| **Location:** 3 | | ROSENBERG TX 77471 | |

---

**UCR Codes:**

| | | | |
|---|---|---|---|
| **Received By:** Salinas, C | | **How Received:** S | **Agency:** RPD |
| **Responding Officers:** Vasquez,Adam, Delgado, John, Clausen, John | | | |
| **Responsible Officer:** Vasquez,Adam | | **Disposition:** ACT 11/06/20 | |
| **When Reported:** 18:00:32 11/06/20 | | **Occurred Between:** 18:00:22 11/06/20 and 18:00:22 11/06/20 | |

---

| | | |
|---|---|---|
| **Assigned To:** | **Detail:** | **Date Assigned:** **/**/** |
| **Status:** | **Status Date:** **/**/** | **Due Date:** **/**/** |

---

**Reported:**

| | | |
|---|---|---|
| **Last:** | **First:** | **Mid:** |
| **DOB:** **/**/** | **Dr Lic:** | **Address:** |
| **Race:** | **Sex:** | **Phone:** | **City:** , |

## UCR Codes

**Reported:**                                                **Observed:**

## Circumstances

| **Responding Officers:** | **Unit :** |
|---|---|
| Vasquez,Adam | 224 |
| Delgado, John | 220 |
| Clausen, John | 223 |

| | | |
|---|---|---|
| **Responsible Officer:** Vasquez,Adam | | **Agency:** RPD |
| **Received By:** Salinas, C | | **Last Radio Log:** 18:14:36 11/06/20 C |
| **How Received:** S SELF INITIATED | | **Clearance:** NR NO REPORT |
| **When Reported:** 18:00:32 11/06/20 | | **Disposition:** ACT **Date:** 11/06/20 |
| **Judicial Status:** | | **Occurred between:** 18:00:22 11/06/20 |
| **Misc Entry:** | | **and:** 18:00:22 11/06/20 |

**Modus Operandi:**                    **Description :**                    **Method :**

## Involvements

| Date | Type | Description |
|---|---|---|

08/16/22

| 11/06/20 | Cad Call | 18:00:32 11/06/20 TRAFFIC STOP | Initiating Call |

08/16/22

**Narrative**

08/16/22

## Supplement

```
CAD Call info/comments
================================

18:00:49 11/06/2020 - Salinas, C - From: Vasquez,Adam
NB ON LANE DR TURNING INTO THE LCISD MMD0477
18:00:54 11/06/2020 - Salinas, C - From: Delgado, John
CALLING IT
18:01:17 11/06/2020 - Salinas, C
CHANNEL STILL HELD
18:02:03 11/06/2020 - Salinas, C - From: Delgado, John
HIGH RISK STOP
18:03:55 11/06/2020 - Salinas, C - From: Clausen, John
CHECKING CLEAR
18:07:09 11/06/2020 - Salinas, C - From: Delgado, John
CHECKING CLEAR
18:08:33 11/06/2020 - Salinas, C - From: Delgado, John
SCENE SECURE RELEASE CHANNEL 1100 LANE JUST NORTH OF MUSTANG
18:08:47 11/06/2020 - Salinas, C
CHANNEL RELEASED
18:14:20 11/06/2020 - Salinas, C - From: Vasquez,Adam
NOT GOING TO BE THE VEH CASE NUMBER PROVIDED
```

08/16/22

# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Michael Lewis, et al. | § | |
| | § | |
| *versus* | § | Civil Action  4:22-cv-02593 |
| | § | |
| Rosenberg Police Department, et al. | § | |

DEFENDANTS' INITIAL DISCLOSURES

(a)     the name and, if known, the address and telephone number of each individual likely to have information the disclosing party may use to support its defense, unless solely for impeachment, identifying the subject of the information.

Officer Adam Vasquez
c/o Norman Ray Giles & William S. Helfand
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza, Suite 1400
Houston, TX 77046

Officer Adam Vasquez is a Defendant in this lawsuit who has information he may use to support his defense and refute plaintiffs' claims and allegations, including the basis for his interactions with plaintiffs and others during both the felony and investigative traffic stops; and the occurrences which form the basis of the lawsuit; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Officer Arthur Love
c/o Norman Ray Giles & William S. Helfand
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza, Suite 1400
Houston, TX 77046

Officer Arthur Love is a Defendant in this lawsuit who has information he may use to support his defense and refute plaintiffs' claims and allegations, including the basis for his interactions with the plaintiffs and others when he met the plaintiffs at the scene of the investigative traffic stop to obtain plaintiffs' missing property during the occurrences which form the basis of the lawsuit; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Officer John Clausen
c/o Norman Ray Giles & William S. Helfand
Lewis Brisbois Bisgaard & Smith

1

24 Greenway Plaza, Suite 1400
Houston, TX 77046

Officer John Clausen is a Defendant in this lawsuit who has information he may use to support his defense and refute plaintiffs' claims and allegations, including the basis for his interactions with plaintiff and others during the investigative traffic stop which form the basis of the lawsuit; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Officer Ryan Cantu
c/o Norman Ray Giles & William S. Helfand
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza, Suite 1400
Houston, TX 77046

Officer Ryan Cantu is a Defendant in this lawsuit who has information he may use to support his defense and refute plaintiffs' claims and allegations, including the basis for his interactions with plaintiff and others during the investigative traffic stop which form the basis of the lawsuit including victim statements; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Sergeant Juan David Delgado
c/o Norman Ray Giles & William S. Helfand
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza, Suite 1400
Houston, TX 77046

Sergeant Juan David Delgado is a Defendant in this lawsuit who has information he may use to support his defense and refute plaintiffs' claims and allegations, including the basis for his interactions with plaintiff and others during the investigative traffic stop which form the basis of the lawsuit including victim statements; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Chief of Police Jonathan White
c/o Norman Ray Giles & William S. Helfand
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza, Suite 1400
Houston, TX 77046

Chief Jonathan White is the chief of the Rosenberg police department and he has information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding City policy and police department regulations; standards and training provided through the Texas Commission on Law

Enforcement; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Detective Taylor Surratt
Rosenberg Police Department
Criminal Investigation Division
2120 4th Street
Rosenberg, Texas 77471
(832) 595-3720

Detective Taylor Surratt of the criminal investigation division of the Rosenberg police department performed an investigation of the occurrences which form the basis of this lawsuit so he has information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding his investigation; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Officer Matthew Newport
Rosenberg Police Department
2120 4th Street
Rosenberg, Texas 77471
(832) 595-3720

Officer Matthew Newport of the Rosenberg police department was reportedly present during some of the occurrences which form the basis of the lawsuit so he is likely to have information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding the actions of officers, plaintiffs, and others during the occurrence which forms the basis of the lawsuit; as well as information regarding the investigative traffic stop, items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Simon Cuellar
Rosenberg Police Department
2120 4th Street
Rosenberg, Texas 77471
(832) 595-3720

Simon Cuellar is a telecommunications operator of the Rosenberg police department who answered emergency call(s) related to the occurrences which form the basis of the lawsuit. Ms. Cuellar is likely to have information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding the actions of officers, plaintiffs, and others during the occurrence which forms the basis of the lawsuit; as well as information regarding the investigative traffic stop, items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Maria Gonzales-Salinas
513 6th Street
Rosenberg, Texas 77471

Maria Gonzales-Salinas was reportedly present during some of occurrences which form the basis of the lawsuit including making a 911 call for assistance. Ms. Salinas is likely to have information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding the actions of officers, and others during the occurrence which officers were investigating when the occurrence which forms the basis of the lawsuit occurred; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Devin Montalvo
516 4th Street
Rosenberg, Texas 77471
(832) 453-2910

Devin Montalvo was reportedly present during some of occurrences which form the basis of the lawsuit so he is likely to have information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding the actions of officers, plaintiff, and others during the occurrence which officers were investigating when the occurrence which forms the basis of the lawsuit occurred; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Alma Gonzalez
1615 Bernie Ave
Rosenberg, Texas 77471
(832) 600-2925

Alma Gonzalez was reportedly present during some of occurrences which form the basis of the lawsuit including making a 911 call for assistance so she is likely to have information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding the actions of officers, and others during the occurrence which officers were investigating when the occurrence which forms the basis of the lawsuit occurred; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Darian Montalvo
516 4th Street
Rosenberg, Texas 77471
(713) 550-4182

Darian Montalvo was reportedly present during some of occurrences which form the basis of the lawsuit so he is likely to have information defendants may use to support

their defense and refute plaintiffs' claims and allegations, including information regarding the actions of officers, plaintiff, and others during the occurrence which officers were investigating when the occurrence which forms the basis of the lawsuit occurred; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Erica Gonzalez
1910 Louise St., Duplex 42
Rosenberg, Texas 77471
(832) 757-2677

Erica Gonzalez was reportedly present during some of occurrences which form the basis of the lawsuit so she is likely to have information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding the actions of officers, and others during the occurrence which officers were investigating when the occurrence which forms the basis of the lawsuit occurred; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations..

Cayden Wilridge
610 Winston Ln.
Sugar Land, Texas 77469
(832) 836-7780

Cayden Wilridge was reportedly present during some of occurrences which form the basis of the lawsuit so he is likely to have information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding the actions of officers, plaintiff, and others during the occurrence which officers were investigating when the occurrence which forms the basis of the lawsuit occurred; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Michael Lewis
c/o Lauren Bonds, Keisha James, Eliana Machefsky, Allie Van Stean, Tiffany Bartley Sams, & Stephen D. Dockery

Michael Lewis is a plaintiff in this lawsuit. Therefore, he is likely to have information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding plaintiffs' claimed harm and damages, actions of officers, plaintiffs, and others during the occurrence which forms the basis of the lawsuit; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Regina Armstead
c/o Lauren Bonds, Keisha James, Eliana Machefsky, Allie Van Stean, Tiffany Bartley Sams, & Stephen D. Dockery

Regina Armstead is a plaintiff in this lawsuit. Therefore, she is likely to have information defendants may use to support their defense and refute plaintiffs' claims and allegations, including information regarding plaintiffs' claimed harm and damages, actions of officers, plaintiffs, and others during the occurrence which forms the basis of the lawsuit; as well as information regarding items, documents or tangible things relevant to defendants' defense and plaintiffs' claims and allegations.

Any other individual plaintiff discloses, or identifies in response to an interrogatory, as having knowledge of relevant facts.

(b)     A copy – or a description by category and location – of all documents, electronically stored information, and tangible things defendants have in their possession, custody, or control and may use to refute plaintiffs' allegations and claims, and support a defendant's defense unless solely for impeachment.

**The following items are believed to be in plaintiffs' possession:**

1. Each item in plaintiffs' possession obtained during any criminal prosecution or investigation based on the facts which form the basis of this lawsuit;
2. Each item in plaintiffs' possession obtained through a request under the Texas Public Information Act, or a request for judicial information, regarding the facts which form the basis of this lawsuit;
3. Each document or tangible thing disclosed under Rule 26, admitted into evidence as an exhibit to a dispositive motion filed, or identified through responses to interrogatories or responses to requests for production by any party to this lawsuit; and
4. Each other item in plaintiffs' possession responsive to a discovery request served on the plaintiff in this litigation that is within the scope of permissible discovery in this suit.

**The following item is publicly available:**

Rules, regulations and statutes pertaining to the Texas Commission on Law Enforcement. (http://tcole.texas.gov/)

City of Rosenberg, Texas Code of Ordinances (Rosenberg, TX | Municode Library)

**The following additional item is available from its publisher:**

*The Texas* Peace *Officer*, THE BASIC TRAINING COURSE, by Larry Nichols, Ray K. Robbins and Donald B. Harrelson, McCutchan Publishing Corp., 2694 Oharte Road, San Pablo, CA 94806

**The following additional items are identified and a copy tendered herein:**

1. Rosenberg Police Department Report for Incident 20-54239 [Rosenberg 001-Rosenberg 013]

2. Rosenberg Police Department Report for Incident 20-54240 [Rosenberg 014-Rosenberg 017]

3. Demand for Preservation of electronically stored information and other evidence dated 6-23-2022 from Pathlight Legal Corporation [Rosenberg 018-Rosenberg 028]

4. Audio of 911 calls [Rosenberg 029]

5. Audio of radio traffic [Rosenberg 030]

6. Rosenberg Police Department dash cam video taken by Officer Vasquez named 549@20201106175643 [Rosenberg 031]

7. Rosenberg Police Department body cam video taken by Officer Vasquez named 549@202011061759250 [Rosenberg 032]

8. Rosenberg Police Department body cam video taken by Officer Clausen named 572@20201106175831 [Rosenberg 033]

9. Rosenberg Police Department body cam video taken by Officer Clausen named 572@202011061800150 [Rosenberg 034]

10. Rosenberg Police Department body cam video taken by Officer Cantu named 2063@20201106175517 [Rosenberg 035]

11. Rosenberg Police Department body cam video taken by Officer Cantu named 2063@202011061756000 [Rosenberg 036]

Any other document, electronically stored information, and/or tangible thing plaintiff has disclosed plaintiff may use to refute a defendant's defense or support plaintiffs' claim(s), unless solely for impeachment.

(c) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and event of the injury suffered.

Not applicable to defendants.

(d) for inspection and copying, as under Rule 34, any insurance agreement under which any person carrying on insurance business may be liable to satisfy part or all of the judgment which may be entered on the action or to indemnify or reimburse for payments made to satisfy the judgment.

     None.

<div style="margin-left:40%">

Respectfully submitted,

*Norman Ray Giles*

William S. Helfand
Attorney-In-Charge
Texas Bar No. 09388250
S.D. Tex. Bar No. 8791
Norman Ray Giles
Texas Bar No. 24014084
S.D. Tex. Bar No. 26966
Randy E. Lopez
Texas Bar No. 24091829
S.D. Tex. Bar No. 3369137

</div>

OF COUNSEL:
LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas  77046
(713) 659-6767
(713) 759-6830 (Fax)
ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the

following in accordance with the District's ECF service rules on September 1, 2022.

D Bradley Kizzia
Allie Van Stean
Kizzia Johnson PLLC
1910 Pacific Ave, Suite 13000
Dallas, Texas 75201
bkizzia@kjpllc.com
allie@kjpllc.com

Lauren Bonds
1403 Southwest Boulevard
Kansas City, Kansas 66103
legal.npap@nlg.org

Keisha James
PO Box 56386
Washington, DC 20040
keisha.npap@nlg.org

Eliana Machefsky*
2111 San Pablo Avenue
PO Box 2938
Berkeley, CA 94702
fellow.npap@nlg.org

Tiffany Bartley Sams, Esquire
PathLight Legal Corporation
Tiffanysams@pathlightlegalcorporation.com

Stephen D. Dockery
4416 Bell Street
Houston, Texas 77023
stephendd@gmail.com

*Attorneys for Plaintiffs*

*Norman Ray Giles*
NORMAN RAY GILES



# ROSENBERG POLICE DEPARTMENT
Report for Incident 20-54239

20-54239

|  |  |  |  |
|---|---|---|---|
| **Nature:** | WEAPONS CALL | **Address:** | 516 4TH ST |
| **Location:** | 1 | | ROSENBERG TX 77471 |

|  |  |  |  |
|---|---|---|---|
| **UCR Codes:** | AAFM, AAFM, AAFM, EOCA, AAFM | | |
| **Received By:** | Cuellar, Simon | **How Received:** 9 | **Agency:** RPD |
| **Responding Officers:** | Delgado, John, Cantu, R, Vasquez,Adam, Love, Arthur, Clausen, John | | |
| **Responsible Officer:** | Cantu, R | **Disposition:** PEN 11/10/20 | |
| **When Reported:** | 17:50:58 11/06/20 | **Occurred Between:** 17:50:58 11/06/20 and 18:40:10 11/06/20 | |

|  |  |  |
|---|---|---|
| **Assigned To:** SURRATT,TAYLOR | **Detail:** AAFA | **Date Assigned:** 11/09/20 |
| **Status:** PEN | **Status Date:** 11/10/20 | **Due Date:** 11/09/20 |

**Reported:**

| | | |
|---|---|---|
| **Last:** | **First:** | **Mid:** |
| **DOB:** **/**/** | **Dr Lic:** | **Address:** |
| **Race:** **Sex:** | **Phone:** | **City:** , |

## UCR Codes

| | |
|---|---|
| **Reported:** | **Observed:** AAFM AGG ASSAULT FIREARM |
| **Offense Codes:** AAFM AGG ASSAULT FIREARM | |
| **Offense Codes:** AAFM AGG ASSAULT FIREARM | |
| **Offense Codes:** AAFM AGG ASSAULT FIREARM | |
| **Offense Codes:** EOCA ENGAGE ORGANIZED CRIM ACTIVITY | |
| **Offense Codes:** AAFM AGG ASSAULT FIREARM | |

## Circumstances

INV Investigation
DAY Day (6 a.m. - 6 p.m.)
WFARM Firearm Used

## Responding Officers

| Responding Officers: | Unit : |
|---|---|
| Delgado, John | 220 |
| Cantu, R | 221 |
| Vasquez,Adam | 224 |

06/27/22

|                    |                   |
|--------------------|-------------------|
| Love, Arthur       | 558               |
| Clausen, John      | 223               |

| | | | |
|---|---|---|---|
| **Responsible Officer:** | Cantu, R | **Agency:** | RPD |
| **Received By:** | Cuellar, Simon | **Last Radio Log:** | 18:47:01 11/06/20 C |
| **How Received:** | 9 911 LINE | **Clearance:** | RP REPORT |
| **When Reported:** | 17:50:58 11/06/20 | **Disposition:** | PEN **Date:** 11/10/20 |
| **Judicial Status:** | | **Occurred between:** | 17:50:58 11/06/20 |
| **Misc Entry:** | | **and:** | 18:40:10 11/06/20 |

**Modus Operandi:**

| | **Description :** | **Method :** |
|---|---|---|
| Appearance | Appearance of Perpetrator | Sloppy/Dirty |
| Day of Week | Preferred Day of Week | Friday |
| Demeanor | Personal Demeanor | Aggressive |
| Scene | Type of Crime Scene | Street |
| Time of Day | Preferred Time of Day | Afternoon |
| Force Used | Type of Force Used | Handgun |

## Involvements

| Date | Type | Description | |
|---|---|---|---|
| 11/06/20 | Name | MONTALVO, DEVIN MALY | Victim |
| 11/06/20 | Name | WILRIDGE, CAYDEN | Suspect |
| 11/06/20 | Name | GONZALES, ALMA ELIZABETH | Victim |
| 11/06/20 | Name | MONTAVO, DARIAN | Victim |
| 11/06/20 | Name | GONZALEZ, ERICA MARIE | Victim |
| 11/06/20 | Cad Call | 17:50:58 11/06/20 WEAPONS CALL | Initiating Call |

06/27/22

## Narrative

Case #20-54239

Weather: Cool, Clear, Afternoon

Synopsis: Unknown subjects displayed firearms while threating to shoot the victims. Prosecution is desired.

Introduction: On Friday, November 6, 2020, at approximately 1750 hours, I, Officer R. Cantu #565 was dispatched to 516 4th Street, Rosenberg, Fort Bend County, Texas, 77471, in reference to a Weapons Call. The Rosenberg Police Department Communication Division (Dispatch) advised that the reportee stated that unknown subjects had arrived to the above-mentioned residence and pointed guns at her children. Dispatch advised that the unidentified subjects were now leaving location in a white in color Dodge Charger with black wheels.

Officer Investigation: Upon arrival, I made contact with the reportee, identified as Alma Gonzales (DOB: ███████████. Alma advised me that prior to my arrival, she was outside in the front yard of her residence with her two (2) sons, identified as ███████████(DOB: ████████ and Devin Montalvo (DOB: ███████. Alma stated her family member, identified as Erica Gonzalez (DOB: ███████ had just arrived on location as well.

Alma stated while outside of the residence, she observed a white in color Dodge Charger pass by her residence and drive in the alleyway behind her residence. Alma stated she then observed the white in color Charger and a gray in color passenger car (unknown make and model) to park near the intersection of 4th Street and Avenue E, Rosenberg, Fort Bend County, Texas, 77471.

Alma stated she then observed approximately eight (8) males get out of the vehicles and approach the front of her residence. Alma stated that she observed three (3) out of the eight (8) males to be armed with firearms. Alma stated she told both Devin and Darian to get inside of the residence. Alma stated that as the above-mentioned males approached the residence, they made several threats to shoot up the house as well as to burn the residence down while pointing firearms at her and her family. Alma stated once she advised that she calling the police, the three armed males along with the other subjects who arrived with them, ran back towards the above-mentioned vehicles and left location.

I made contact with Devin in reference to the incident. Devin advised me that the reason that this had occurred was that his younger brother (███████ had a physical altercation with another subject, later identified as ███████████ (DOB: ████████). Devin advised me that ███████ and ███████ had a fight in school (Foster High School located at 4400 FM 723, Richmond, Fort Bend County, Texas, 77469) yesterday during school hours. Devin advised me that prior to the incident, ███████ and ███████were arguing via Snapchat. Devin advised me that ███████ stated that he knew where he and ███████ lived, to which ███████ and Devin told ███████ to "pull up". Devin stated a short time later, multiple subjects arrived to his residence attempting to fight both he and ███████. Devin stated he identified ███████ to be on location as well as ███████ s older brother to which Devin believed his name to be "Julio".

Devin stated that along with the multiple subjects on location, he observed three (3) males to have firearms and pointing them at him, ███████, Alma and Erica. Devin described the three (3) males as the following:

- Suspect #1: Tall male with a lighter complexion (unknown if black or

06/27/22

Hispanic possibly mixed) wearing a lime green in color beanie pointing a handgun
- Suspect #2: Black stocky male not wearing a shirt with a black in color
backpack pointing a foldable "AR-15" style rifle
- Suspect #3: Hispanic stocky male wearing a long sleeve gray in color
pointing a handgun. This male is believed to be █████'s older brother possibly
with the name of "Julio"

Devin stated he did not see any further weapons and only observed the other
males to be standing back as well as █████ to be wearing no shirt with gym
shorts on.

Upon speaking with ███████████ confirmed that he and █████ had gotten into a
physical altercation at school yesterday (11/05/2020). █████ further stated
that he did tell █████ to "pull up" to his residence so they could engage in
mutual combat again. █████ also stated that █████ was on location wearing gym
shirts and not wearing a shirt. Darian stated he did not see Cayden with a
firearm nor did █████ approach him like the other males did.

I made contact with Erica who advised me that she just arrived on location and
was getting out of her vehicle when she observed multiple males to run towards
the above-mentioned residence. Erica stated she observed the same three (3)
above-mentioned males to be pointing weapons at her as well as █████ Devin and
Alma, while screaming that they would shoot up the place and burn down the
residence. Erica stated she then observed the males to leave location while Alma
yelled that she was calling the police.

While speaking with Alma again, Alma advised me that as the males ran back to
the vehicles she was able to obtain photographs of the males with her cell
phone. Alma later sent the photographs to my work email
(rcantu@rosenbergtx.gov).

It should be noted upon later observing one of the photographs that Alma sent
(listed as "Untitled 5") I could observe five (5) subjects running south on the
500 block of 4th Street. In the above-mentioned photograph, suspect #2 is
observed bending over and appears to be breaking down a rifle into a backpack.
Suspect #1 and Suspect #3 are observed to running together, as a group, with
Cayden (observed to shirtless and holding a shirt in his right hand) and another
unidentified male wearing a white in color shirt towards Avenue E.

Devin, █████, Alma and Erica all advised that the actions of the
above-mentioned subjects put all of them in fear of seriously bodily injury
and/or death, as they feared that the male's actions and threats to be true.
Devin, █████ Alma and Erica all stated that they desire prosecution in
reference to charges of Aggravated Assault (F2). Due to Devin and █████ only
being in contact with █████ during the initial social media verbal altercation,
along with the physical incident that occurred at Foster High School, █████ is
being listed as a suspect in this investigation and therefore this incident is
being forwarded to the Rosenberg Police Department Criminal Investigation
Division for additional investigation.

Disposition of Prisoners: N/A

Disposition of Evidence: The above-mentioned photographs were uploaded into the
appropriate case file. My Coban Audio/Video from patrol unit #126 was retained
for evidentiary purposes.

Related Cases: None

06/27/22

## Supplement

```
CAD Call info/comments
==================================

17:50:58 11/06/2020 - Cuellar, Simon
 data. Caller Name: AT&T MOB, Phone: ███████████  UNC: 0, Lat: 0, Long: 0,
Est. Loc.:   3324 RIVER RD - SW
17:51:26 11/06/2020 - Cuellar, Simon
rp adv that someone has a gun pointed at kids
17:52:00 11/06/2020 - Cuellar, Simon
rp could hear someone yell go back inside that they have a gun
17:52:25 11/06/2020 - Salinas, C
SUBJS LEFT LOC WHI CHARGER OR CHALLENGER
17:52:56 11/06/2020 - Cuellar, Simon
rp adv that subjs were mixed blk or hms
17:53:14 11/06/2020 - Cuellar, Simon
rp adv that some kids walked towards ave e
17:53:20 11/06/2020 - Cuellar, Simon
appx 10x subjects were outside
17:53:35 11/06/2020 - Salinas, C
VEH WAS LAST SEEN HEADED TOWARDS 3RD ACROSS THE TRACKS
17:53:51 11/06/2020 - Cuellar, Simon
rp adv that one with the gun was on foot walk at ave e and 3rd unk description
of male but gun was black
17:53:53 11/06/2020 - Salinas, C - From: Love, Arthur
H/1ST
17:54:12 11/06/2020 - Salinas, C - From: Vasquez,Adam
TC
17:54:26 11/06/2020 - Salinas, C
VEH HAD TINTED WINDOWS AND BLK RIMS
17:54:42 11/06/2020 - Salinas, C
OTHER VEH WAS FOLLOWING GRY HONDA CIVIC
17:54:57 11/06/2020 - Salinas, C
BTWN BOTH VEHS 8 SUBJS
17:55:03 11/06/2020 - Salinas, C
4 SUBJS HAD GUNS
17:55:09 11/06/2020 - Salinas, C
RP ADV THEY HAD BIG GUNS
17:55:18 11/06/2020 - Salinas, C
GUNS WERE PULLED OUT
17:55:35 11/06/2020 - Salinas, C - From: Vasquez,Adam
LANE AVE I
17:55:55 11/06/2020 - Salinas, C
RP ADV HER SON KNOWS THE SUBJ
17:56:52 11/06/2020 - Salinas, C
ALMA GONZALES 832 -265-1997
17:57:00 11/06/2020 - Salinas, C
RP IS AT 516 4TH ST
17:57:36 11/06/2020 - Salinas, C - From: Vasquez,Adam
CHECKING WB ON I FRM READING
17:59:05 11/06/2020 - Salinas, C - From: Vasquez,Adam
EB ON AVE I IN FRONT OF E STADIUM DRIVE BLK RIM
17:59:15 11/06/2020 - Salinas, C
CHANNEL HELD MMD0477
17:59:38 11/06/2020 - Salinas, C - From: Vasquez,Adam
ABOUT TO BE NB ON LANE
```

06/27/22

```
18:10:11 11/06/2020 - Salinas, C - From: Cantu, R
MULTIPLE MALES TALL LIGHT SKIN BRIGHT BEANIE*/BLK MALE  NO SHIRT /HM SL GRY
SHIRT AR GUN
18:14:53 11/06/2020 - Salinas, C - From: Cantu, R
STARTED AT FOSTER FIRST NAME KAYDEN
18:15:05 11/06/2020 - Salinas, C - From: Cantu, R
4D POSS A CHARGER
18:21:11 11/06/2020 - Salinas, C - From: Cantu, R
███████████████████████
18:25:06 11/06/2020 - Salinas, C - From: Cantu, R
PS 832-837-7780 ADDRESS 610 WINSTON LN SUGAR LAND
18:27:23 11/06/2020 - Salinas, C - From: Cantu, R
*EDITED* FROM "PS ████████████ ADDRESS 610 WINSTON LN SUGAR LAND" TO "PS
832-836-7780 ADDRESS 610 WINSTON LN SUGAR LAND"
18:37:28 11/06/2020 - Salinas, C - From: Cantu, R
CONTACT SL SEE IF THEY CAN ROLL BY SEE IF A WHI CHARGER W/ BLK RIMS IS ON LOC
18:41:27 11/06/2020 - Salinas, C
SUGAR LAND ADV
18:41:38 11/06/2020 - Salinas, C
220 DROP ADMIN PAGE
18:42:33 11/06/2020 - Salinas, C - From: Cantu, R
DID NOT OBSERVE ANY FMS FOR THE UNITS ON AVE D
18:45:44 11/06/2020 - Cuellar, Simon
admin page sent
18:46:51 11/06/2020 - Salinas, C - From: Cantu, R
CLEAR 4TH ST BACK IN RP
```

06/27/22

## Supplement
```
Rosenberg Police Department
Sgt. J. D. Delgado #314
Supplement: 20-54239
```

On Friday, November 6, 2020 at approximately 1750 hours, I Sgt. J. D. Delgado #314 was notified of a weapons call at 513 4th St., Rosenberg, Fort Bend County, Texas, in reference to several subjects with assault rifles who were making threats.

While enroute to the scene Officer Vasquez advised he had observed a vehicle matching the suspect description near the intersection of Lane Dr. and Ave. I. I proceeded to his location to assist. Once with Officer Vasquez myself and other officers assisted in a high risk traffic stop. Once the occupants inside the vehicle were detained, the vehicle was secured, and shortly thereafter it was determined that thou the vehicle was similar to that of what the suspects had used to flee the scene it was in fact not the suspect vehicle. The occupants were not injured during the felony stop and were released from the scene.

I made contact with Officer Cantu who briefed me on his findings. I in-turn forwarded the information to the on call Patrol Lt.

My BWC was active for my time on scene of the high risk traffic stop.

06/27/22

## Supplement
```
Supplement - Officer A. Vasquez #570
20-54239
```

On Friday, November 6, 2020, at approximately 1750 hours, I, Officer A. Vasquez #570, responded to a weapons call at 516 4th Street, Rosenberg, Fort Bend County, Texas. Rosenberg Police Dispatch advised the caller stated multiple subjects pointed guns at children before leaving location in a white Dodge Charger or Challenger with black wheels, which was observed going south over the train tracks on 3rd Street.

At this time, I began traveling westbound on Avenue I from Reading Road to search for said vehicle. While traveling westbound, I observed a white Dodge Charger (TXLP/MMD0477) with dark tinted windows and black wheels traveling eastbound on Avenue I near the Radio Lane. I turned my patrol unit and got behind the vehicle to conduct an investigative stop. Once additional units were in close proximity, I activated the overhead emergency equipment of my patrol unit and initiated the stop as the vehicle traveled northbound and approached Mustang Avenue.

I observed the vehicle to not immediately pull over to the right side of the road, but instead put its left signal light on as if to turn left onto Mustang Avenue. I observed the vehicle then stop at the stop sign momentarily before continuing north onto Lane Drive, ignoring my emergency equipment, before pulling to the right in the 1100 block of Lane Drive. Myself and assisting officers conducted a felony takedown/high risk traffic stop due to the possibility of multiple firearms and occupants in the vehicle in relation to the above incident.

A female driver and male occupant were detained and learned to not be involved, and were confused as to if officers were intending to pull their vehicle over. No charges were filed and they were provided incident numbers for the stop and weapons call for their records before being released from the scene.

I then continued to check the area, but was unable to locate the suspect vehicle. Unit 137 dash camera footage and body worn camera footage was retained.

Related Case:  20-54239

06/27/22

**Supplement**

```
Rosenberg Police Department
Officer M. Newport #524
Supplement: 20-54239
```

On Friday, November 6, 2020 at approximately 1750 hours, I, M. Newport #524 responded to a weapons call at 513 4th St., Rosenberg, Fort Bend County, Texas, in reference to several subjects who displayed firearms in a threatening manner.

While in route to the scene, Officer Vasquez advised he had observed a vehicle matching the suspect description near the intersection of Lane Dr. and Ave. I. I proceeded to his location to assist. Once with Officer Vasquez myself and other officers assisted in a high risk traffic stop. The driver of the vehicle was called out of the vehicle and back to our location where I detained her in handcuffs and placed her in the rear of a patrol vehicle until the felony stop could be concluded. Once the occupants inside the vehicle were all detained, the vehicle was secured, and shortly thereafter it was determined that although the vehicle was similar to the vehicle the suspects had used to flee the scene it was, in fact, not the suspect vehicle. The occupants were not injured during the felony stop and were released from the scene.

My BWC as well as my in car COBAN was active for my time on scene of the high risk traffic stop.

06/27/22

## Supplement

On Friday, November 6, 2020, at approximately 1750 hours, I, Officer J. Clausen #510, was dispatched to a weapons call addressed as 516 4th Street, Rosenberg, Fort Bend County, Texas. While en route Rosenberg Dispatch advised the caller stated multiple subjects pointed guns at children before leaving location in a white Dodge Charger or Challenger with black wheels, which was observed going south over the train tracks on 3rd Street.

I began monitoring traffic going eastbound on Avenue H at Radio Lane when I observed over Rosenberg Police radio Officer A. Vasquez #570 state he had eyes on a vehicle matching the description traveling eastbound on Avenue I near E Stadium. I responded to Officer Vasquez location where an investigative stop was attempted near Lane Drive and Mustang Avenue. I observed the vehicle pull to the right but later change back over to the left lane at Mustang Avenue. I observed the left signal to be activated as though appearing to intend on turning west onto Mustang. The vehicle then abruptly moved forward after already receiving visual and audible signal with red and blue lights and sirens to pull over.

The vehicle continued a short distance north on Lane Drive before pulling to the right and stopping. Due to the unusual driving behavior and indecisiveness as well as the nature of the call possibly involving multiple weapons, I assisted Officer Vasquez and other officers in conducting a felony takedown. The female driver and male passenger were removed from the vehicle and detained in handcuff restraints for the safety of all involved. After determining the subjects were not involved in the weapons call, they were released from the scene.

I was then released from the scene to assist with other calls throughout the city.

The entire contact was audio/video recorded on my in car Coban system in unit #130, along with my Rosenberg Police issued body camera. All audio/video was retained for evidence purposes.

06/27/22

## Supplement

Supplement: Detective T. Surratt

Tuesday, November 10, 2020

On this day, I, Detective T. Surratt reviewed this assigned weapons call case. Upon review, on 11/6/2020, officers were dispatched to 516 4th Street in regards to multiple subjects who were on location, pointing guns at people on location. The suspects had left location prior to police arrival. Once on scene, officers spoke with Devin Montalvo DOB: ██████████, and ████████ DOB: ████████████. It was learned that ████████ was in a physical altercation with ████████████ DOB: ████████████ at school (Foster High School) on 11/5/2020. Cayden was said to have been on location at their residence when the multiple subjects arrived, but Cayden was not one of the subjects with a weapon.

(See initial report for full detail).

I contacted Devin and ████████████ mother, Alma Gonzales, via telephone and spoke with her in regards to this investigation. Alma stated..... (Call attached to case).

06/27/22

## Supplement

open records request

received from nathan poland 8/5/21....public portion only requested and released
8/5/21 tb

06/27/22

## Name Involvements:



**Victim :** C126664
    **Last:** GONZALEZ     **First:** ERICA     **Mid:** MARIE
    **DOB:** ███     **Dr Lic:** ███     **Address:** ███
    **Race:** H     **Sex:** F     **Phone:** ███     **City:**

**Victim :** C70448
    **Last:** GONZALES     **First:** ALMA     **Mid:** ELIZABETH
    **DOB:** ███     **Dr Lic:** ███     **Address:** ███
    **Race:** H     **Sex:** F     **Phone:** ███     **City:**

**Victim :** C100828
    **Last:** ███     **First:** ███     **Mid:**
    **DOB:** ███     **Dr Lic:** ███     **Address:** ███
    **Race:** H     **Sex:** M     **Phone:** ███     **City:**

**Suspect :** 50918
    **Last:** ███     **First:** ███     **Mid:**
    **DOB:** ███     **Dr Lic:** ███     **Address:** ███
    **Race:** H     **Sex:** M     **Phone:** ███     **City:**

**Victim :** 46874
    **Last:** MONTALVO     **First:** DEVIN     **Mid:** MALY
    **DOB:** ███     **Dr Lic:** ███     **Address:** ███
    **Race:** H     **Sex:** M     **Phone:** ███     **City:**

06/27/22



# ROSENBERG POLICE DEPARTMENT

Report for Incident 20-54240

---

**Nature:** TRAFFIC STOP        **Address:** LANE DR & MUSTANG AVE
**Location:** 3        ROSENBERG TX 77471

---

**UCR Codes:**
**Received By:** Salinas, C      **How Received:** S      **Agency:** RPD
**Responding Officers:** Vasquez,Adam, Delgado, John, Clausen, John
**Responsible Officer:** Vasquez,Adam      **Disposition:** ACT 11/06/20
**When Reported:** 18:00:32 11/06/20      **Occurred Between:** 18:00:22 11/06/20 and 18:00:22 11/06/20

---

**Assigned To:**      **Detail:**      **Date Assigned:** **/**/**
**Status:**      **Status Date:** **/**/**      **Due Date:** **/**/**

---

**Reported:**
**Last:**      **First:**      **Mid:**
**DOB:** **/**/**      **Dr Lic:**      **Address:**
**Race:**      **Sex:**      **Phone:**      **City:** ,

## UCR Codes
**Reported:**        **Observed:**

## Circumstances

**Responding Officers:**      **Unit :**
     Vasquez,Adam      224
     Delgado, John      220
     Clausen, John      223

**Responsible Officer:** Vasquez,Adam      **Agency:** RPD
**Received By:** Salinas, C      **Last Radio Log:** 18:14:36 11/06/20 C
**How Received:** S SELF INITIATED      **Clearance:** NR NO REPORT
**When Reported:** 18:00:32 11/06/20      **Disposition:** ACT **Date:** 11/06/20
**Judicial Status:**      **Occurred between:** 18:00:22 11/06/20
**Misc Entry:**      **and:** 18:00:22 11/06/20

**Modus Operandi:**      **Description :**      **Method :**

## Involvements

**Date**      **Type**      **Description**

08/16/22

11/06/20            Cad Call            18:00:32 11/06/20 TRAFFIC STOP            Initiating Call

08/16/22

**Narrative**

08/16/22

## Supplement

```
CAD Call info/comments
================================

18:00:49 11/06/2020 - Salinas, C - From: Vasquez,Adam
NB ON LANE DR TURNING INTO THE LCISD MMD0477
18:00:54 11/06/2020 - Salinas, C - From: Delgado, John
CALLING IT
18:01:17 11/06/2020 - Salinas, C
CHANNEL STILL HELD
18:02:03 11/06/2020 - Salinas, C - From: Delgado, John
HIGH RISK STOP
18:03:55 11/06/2020 - Salinas, C - From: Clausen, John
CHECKING CLEAR
18:07:09 11/06/2020 - Salinas, C - From: Delgado, John
CHECKING CLEAR
18:08:33 11/06/2020 - Salinas, C - From: Delgado, John
SCENE SECURE RELEASE CHANNEL 1100 LANE JUST NORTH OF MUSTANG
18:08:47 11/06/2020 - Salinas, C
CHANNEL RELEASED
18:14:20 11/06/2020 - Salinas, C - From: Vasquez,Adam
NOT GOING TO BE THE VEH CASE NUMBER PROVIDED
```

08/16/22

| | |
|---|---|
| **From:** | RPD Conduct |
| **To:** | catchall; phishalert@kb4.io |
| **Subject:** | [Phish Alert] FW: Demand for Preservation of Electronically Stored Information & Other Evidence |
| **Date:** | Monday, June 27, 2022 9:12:00 AM |
| **Attachments:** | RPD Demand for Preservation of Information and Evidence-LB edits.docx.pdf |
| | phish_alert_iocp_v1.3.98.eml |

**From:** PathLight Legal Corporation <pathlightlegalcorporation@gmail.com>
**Sent:** Thursday, June 23, 2022 4:52 PM
**To:** RPD Conduct <rpdconduct@rosenbergtx.gov>
**Subject:** Demand for Preservation of Electronically Stored Information & Other Evidence

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Please see the attached demand for preservation and notice of claim. Please use the contact information provided below to discuss this matter further.

Tiffany Sams

--

PathLight Legal Corporation
www.pathlightlegalcorporation.com
pathlightlegalcorporation@gmail.com
(P) 713-609-9622
(F) 713-589-4689

114 Heights Blvd Unit i
Houston, Texas 77007

This email is confidential and privileged, contains sensitive information, and is for viewing by an intended recipient.  If you have received this email in error please delete this message immediately.

Rosenberg 018

City of Rosenberg
Rosenberg Police Department
Chief Jonathan White
2120 4th St
Rosenberg, TX 77471
Sent Via Certified Mail:**70173380000020894804**
Copied To: **RPDconduct@rosenbergtx.gov**

June 23, 2022

<u>**DEMAND FOR PRESERVATION OF ELECTRONICALLY STORED INFORMATION AND OTHER EVIDENCE**</u>

Chief White:

This letter serves as our **Demand for Preservation of Electronically Stored Information and Other Evidence**.  We  write to advise you of a claim for damages, and other relief against you growing out of the following matter (hereinafter this "cause"):

> The November 6, 2020 stop of elderly Rosenberg residents Michael Lewis and Regina Armstead on Lane Drive and Mustang Drive. RPD officers **JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, RYAN CANTU, and JOHN CLAUSEN** conducted a violent detention and excessive search of Mr. Lewis and Ms. Armstead after they received a "weapons call" reporting that a group of Black teenagers had brandished guns at a group of kids at 3324 River Road SW Rosenberg, Texas.

We demand that you preserve evidence related to this cause. A more detailed explanation of your preservation obligations is attached to this letter as Exhibit A.

**<u>November 6<u>th</u> Incident</u>**

On November 6, 2020 while returning home from picking up takeout, and obeying all traffic laws, Ms. Armstead and Mr. Lewis were abruptly stopped by the Rosenberg Police Department (hereinafter "RPD").  After RPD stopped Mr. Lewis and Ms. Armstead, they were instructed on the vehicle intercom system to put their hands out the window and throw the keys on the ground. Mr. Lewis and Ms. Armstead immediately complied, fearful of what might happen. Five officers of RPD responded to this call, with assault weapons drawn on Mr. Lewis and Ms. Armstead during the stop.

*Ms. Armstead's Arrest*

Ms. Armstead was ordered to exit the vehicle first. She was required to walk backwards to the vehicle and get on the ground. Ms. Armstead kneeled with her hands up as the officers stood by their vehicle with their guns drawn. Ms. Armstead complied with the order, walking approximately 10 meters back to the police vehicle with her hands above her head. Once Ms. Armstead reached the vehicle, an officer grabbed her arms and handcuffed her while two other officers kept their guns trained on her. While Ms. Armstead  was being detained, Mr. Lewis remained in their vehicle. Ms. Armstead was placed in the back of the police vehicle where she remained handcuffed for some forty-five minutes while the officers arrested Mr. Lewis and searched the vehicle. During the vehicle search, RPD officers confiscated Ms. Armstead's phone and took it with them when they left the scene of the stop.

*Mr. Lewis's Arrest*

After placing Ms. Armstead in the back of a police vehicle, RPD approached Mr. Lewis with the same extreme, unjustified force. Mr. Lewis was ordered out of the vehicle by officers holding weapons, including an assault rifle. He was made to kneel to be handcuffed after repeatedly stating to the officers that he is a Dialysis patient with a fistula in his forearm. RPD showed no regard for Mr. Lewis's medical condition and demanded that he kneel and place his hands behind his back for handcuffing. The officers then placed Mr. Lewis in the back of a separate police vehicle.

*The Search*

While Mr. Lewis and Ms. Armsead were detained, the officers searched the interior of the vehicle and the trunk of the vehicle without either Mr. Lewis or Ms. Armstead's consent. During the search, an officer confiscated Ms. Armstead's phone. The search uncovered no contraband. Once the search was completed, Ms. Armstead and Mr. Lewis were taken out of the police vehicles, their handcuffs were removed, and they were permitted to leave. When Mr. Lewis inquired as to why they had been stopped, an officer revealed that they were searching for a group of teenage boys who had brandished guns across town. The incident the officers purportedly investigated was assigned Incident Report Number 20-54239. Mr. Lewis and Ms. Armstead, two people in their sixties, clearly bore no resemblance to the suspects described by the caller in Incident Report Number 20-54239.

*Aftermath of the Stop and Arrest*

Mr. Lewis and Ms. Armstead left the traffic stop without receiving their keys to the vehicle or Ms. Armstead's phone—as it had been confiscated by one of the officers. Ms. Armstead contacted the RPD switchboard to inquire about the seizure of her property. Ms. Armstead and Mr. Lewis returned to the scene of the stop to recover their belongings, where they were met by Officer Love. Officer Love was able to assist in locating what was left of the vehicle's key after it had been run over, and another unidentified officer returned to give Ms. Armstead her phone. Officer Love advised that, Mr. Lewis provide RPD a receipt to get reimbursed for the cost of repairing his broken key. RPD refused to pay.

Since the date of this incident Mr. Lewis has had multiple procedures to correct the damage to his fistula caused by the handcuffs. Ms. Armstead suffers from emotional distress from fear that any encounter with RPD could result in another violent encounter like the one on November 6, 2020.

Conclusion

At a minimum, the actions of RPD and their officers violated Mr. Lewis and Ms. Armstead's rights under the Fourth Amendment, the Americans with Disabilities Act, and state law protections against conversion. Please contact us at your earliest convenience if RPD wishes to resolve this matter.

Regards,

/s/ *Tiffany Bartley Sams*_____

**PathLight Legal Corporation**
**By: Tiffany Sams**
**114 Heights Blvd, Unit i**
**Houston, Texas 77007**
www.pathlightlegalcorporation.com
pathlightlegalcorporation@gmail.com
 (P) 713-609-9622
(F) 713-589-4689

**Allie Van Stean, Co-Counsel**
**Kizzia Johnson PLLC**
1910 Pacific Ave, Ste 13000
DALLAS, TEXAS 75201

**Lauren Bonds, Co-Counsel**
**National Police Accountability Project**

**Stephen Dockery, Pro Bono**
**Attorney at Law**

**EXHIBIT A–PRESERVATION OBLIGATIONS**

We demand that you preserve documents, tangible things, and electronically stored information potentially relevant to the issues and defenses in this cause. As used in this document, "you" and "your" refers to Rosenberg Police Department, and its predecessors, successors, parents, subsidiaries, divisions and affiliates, officers, directors, agents, attorneys, accountants, employees, partners, assigns and other persons occupying similar positions or performing similar functions.

You must anticipate that information responsive to discovery resides on your current and former computer systems, phones and tablets, in online repositories and on other storage media and sources (including voice- and video- recording systems, Cloud services and social networking accounts).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, optically, or otherwise stored as and on:

· Digital communications (e.g., e-mail, voice mail, text messaging, WhatsApp, SIM cards)
· E-Mail Servers (e.g., Microsoft 365, Gmail, and Microsoft Exchange databases)
· Word processed documents (e.g., Microsoft Word, Apple Pages or Google Docs files and drafts)
· Spreadsheets and tables (e.g., Microsoft Excel, Google Sheets, Apple Numbers)
· Presentations (e.g., Microsoft PowerPoint, Apple Keynote, Prezi)
· Social Networking Sites (e.g., Facebook, Twitter, Instagram, LinkedIn, Reddit, Slack, TikTok)
· Online ("Cloud") Repositories (e.g., Drive, OneDrive, Box, Dropbox, AWS, Azure)
· Databases (e.g., Access, Oracle, SQL Server data, SAP)
· Backup and Archival Files (e.g., Veritas, Zip, Acronis, Carbonite)
· Contact and Customer Relationship Management Data (e.g., Salesforce, Outlook, MS Dynamics)
· Online Banking, Credit Card, Retail and other Relevant Account Records
· Accounting Application Data (e.g., QuickBooks, NetSuite, Sage)

· Image and Facsimile Files (e.g., .PDF, .TIFF, .PNG, .JPG, .GIF., HEIC images)
· Sound Recordings (e.g., .WAV and .MP3 files)
· Video and Animation (e.g., body camera footage, dashcam footage, security camera footage, .AVI, .MOV, .MP4 files)
· Calendar, Journaling and Diary Application Data (e.g., Outlook PST, Google Calendar, blog posts)
· Project Management Application Data
· Internet of Things (IoT) Devices and Apps (e.g., Amazon Echo/Alexa, Google Home, Fitbit)
· Computer Aided Design/Drawing Files
· Online Access Data (e.g., Temporary Internet Files, Web cache, Google History, Cookies)
· Network Access and Server Activity Logs

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both sources of ESI, even if you do not anticipate producing such ESI or intend to claim it is confidential or privileged from disclosure.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to the rules of civil procedure, you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may order production of the ESI, even if it is not reasonably accessible. Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the court's authority.

You must act immediately to preserve potentially relevant ESI, including, without limitation, information with the earlier of a Created or Last Modified date on or after November 6, 2020 through the date of this demand and continuing thereafter, concerning:

1. The events and causes of action described above
2. ESI you may use to support claims or defenses in this case

Nothing in this demand for preservation of ESI should be read to limit or diminish your concurrent common law and statutory obligations to preserve documents, tangible things and other potentially relevant evidence. You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and

tangible things and to act diligently and in good faith to secure and audit compliance with such litigation hold.

You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations may include:

· Purging the contents of e-mail and messaging repositories by age, quota, or other criteria
· Using data or media wiping, disposal, erasure or encryption utilities or devices
· Overwriting, erasing, destroying, or discarding backup media
· Re-assigning, re-imaging or disposing of systems, servers, devices or media
· Running "cleaner" or other programs affecting wholesale metadata alteration
· Releasing or purging online storage repositories or non-renewal of online accounts
· Using metadata stripper utilities
· Disabling server, packet, or local instant messaging logging
· Executing drive or file defragmentation, encryption, or compression programs

You are directed to preserve complete backup media sets (including differentials and incremental backups) that may contain unique communications and ESI of the following custodians that exist as of the date of this incident on November 6, 2020 and which have been created following this November 6, 2020 date:

**JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, RYAN CANTU, JOHN CLAUSEN**

You should take affirmative steps to prevent anyone with access to your data, systems, accounts and archives from seeking to modify, destroy or hide potentially relevant ESI wherever it resides (such as by deleting or overwriting files, using data shredding and erasure applications, re-imaging, damaging or replacing media, encryption, compression, steganography or the like).

As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media, and devices housing potentially relevant ESI of the following persons:

**JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, RYAN CANTU, JOHN CLAUSEN**

A hard drive does not produce a forensically sound image because it captures only active data files and fails to preserve forensically significant data existing in, e.g., unallocated clusters and slack space.

With respect to the hard drive, thumb drives, phones, tablets and storage devices of each of the persons named below and of each person acting in the capacity or holding the job title named below, demand is made that you immediately obtain, authenticate and preserve forensically sound images of the storage media in any computer system used by the following persons during the period from November 6 2020 to date of this letter, as well as recording and preserving the system time and date of each such computer:

JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, RYAN CANTU, JOHN CLAUSEN

Once obtained, each such forensically sound image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration and authenticated by hash value.

You should anticipate that ESI, including but not limited to e-mail, documents, spreadsheets, presentations, and databases, will be sought in the form or forms in which it is ordinarily maintained (i.e., native form).

In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices of those named above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically significant areas of the media, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

"Forensically sound ESI preservation" means duplication of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. The products of forensically sound duplication are called, inter alia, "bitstream images" of the

evidence media. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including deleted evidence within "unallocated clusters" and "slack space."

You should preserve ESI in native forms and you should not employ methods to preserve ESI that remove or degrade the ability to search the ESI by electronic means or that make it difficult or burdensome to access or use the information.

You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

You should anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including deleted content, draft language, commentary, tracked changes, speaker notes, collaboration and distribution data and dates of creation and printing. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC header fields.Metadata may be overwritten or corrupted by careless handling or improper preservation, including by carelessly copying, forwarding, or opening files.

With respect to servers used to manage e-mail (e.g., Microsoft 365, Microsoft Exchange, Lotus Domino) and network storage (often called a "network share"), the complete contents of each relevant custodian's network share and e-mail account should be preserved. There are several cost-effective ways to preserve the contents of a server without disrupting operations. If you are uncertain whether the preservation method you plan to employ is one that we will deem sufficient, please contact us.

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems or devices may contain potentially relevant data. To the extent that you have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from external storage drives, thumb drives, CD-

R/DVD-R disks and the user's phone, tablet, voice mailbox or other forms of ESI storage.). Similarly, if you used online or browser-based e-mail and messaging accounts or services (e.g., Gmail, Yahoo Mail, Microsoft 365, Apple Messaging, WhatsApp) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes and messages should be preserved.

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including manuals, schema, logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters and the like.

You must preserve passwords, keys and other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.

If needed to access or interpret media on which ESI is stored, you must also preserve cabling, drivers, and hardware. This includes tape drives, readers, DBMS, and other legacy or proprietary devices and mechanisms.

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others who are subject to your direction or control. Accordingly, you must notify any current or former officer, agent, attorney, employee, custodian and contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

We hope to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved. Alternatively, if you promptly disclose the preservation protocol you intend to employ, we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer

forensics so that our experts may work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the court.

We are available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted because of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss, or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

**Confirmation of Compliance**
Please confirm by June 20, 2022 that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.  Please notify your management liability insurance carrier of this claim to preserve all coverage limits.

4.    Audio of 911 call made by neighbor

5.    Audio of radio traffic

6.   Rosenberg Police Department dash cam video taken by
      Officer Vasquez named 549@20201106175643

7.    Rosenberg Police Department body cam video taken by
       Officer Vasquez named 549@202011061759250

8.     Rosenberg Police Department body cam video taken by Officer
Clausen named 572@20201106175831

9.   Rosenberg Police Department body cam video taken by Officer
Clausen named 572@202011061800150

10.   Rosenberg Police Department body cam video taken by
      Officer Cantu named 2063@20201106175517

11. Rosenberg Police Department body cam video taken by Officer
Cantu named 2063@202011061756000

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL LEWIS and REGINA ARMSTEAD** | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO.** |
| | § | **4:22-cv-02593** |
| | § | |
| **ROSENBERG POLICE DEPARTMENT, CITY** | § | |
| **OF ROSENBERG, JOHN DELGADO, ADAM** | § | |
| **VASQUEZ, ARTHUR LOVE, JOHN CLAUSEN,** | § | |
| **and RYAN CANTU** | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF**
**DOCUMENTS DIRECTED TO DEFENDANTS CITY OF ROSENBERG AND**
**ROSENBERG POLICE DEPARTMENT**

---

Plaintiffs, by and through undersigned counsel, pursuant to Rules 26 and 34 of the Federal

Rules of Civil Procedure, hereby request that Defendants City of Rosenberg ("City" or

"Rosenberg") and Rosenberg Police Department ("RPD") (collectively, "Municipal Defendants")

produce the following documents for inspection and copying no later than thirty (30) days after

the Court's Order on Defendants' Motion to Dismiss, Dkt. #18, to Plaintiffs' attorney Tiffany

Bartley Sams at PathLight Legal Corporation, located at 114 Heights Blvd, Houston, TX 77007,

or in an electronic format in accordance with the definitions and instructions below.

## <u>DEFINITIONS</u>

For the purpose of these requests, the following terms are used as defined below:

1.      "Defendants," "Municipal Defendants," "you," "your," and "yourself" refer to the City of Rosenberg and the Rosenberg Police Department and every legal representative, agent, employee, attorney, accountant, advisor, expert, investigator, affiliate, contractor, vendor, or other person working for the City or RPD, or otherwise acting or purporting to act on behalf of the City, RPD, or under their control to the extent that any of those persons have knowledge of or participated in any of the matters related to the allegations in the Complaint or to any of your defenses.

2.      "City of Rosenberg," "City," and "Rosenberg," refer to the entity and political subdivision located in Fort Bend County in the State of Texas and includes all municipal government agencies ("City agencies") and every legal representative, agent, employee, attorney, accountant, advisor, expert, investigator, affiliate, contractor, vendor, or other person working for the City, or otherwise acting or purporting to act on behalf of the City or under its control to the extent that any of those persons have knowledge of or participated in any of the matters related to the allegations in the Complaint or to any of your defenses.

3.      "Rosenberg Police Department" and "RPD" refer to the police department that serves the City of Rosenberg and includes every legal representative, agent, employee, attorney, accountant, advisor, expert, investigator, affiliate, contractor, vendor, or other person working for the police department, or otherwise acting or purporting to act on behalf of the police department or under its control to the extent that any of those persons have knowledge of or participated in any of the matters related to the allegations in the Complaint or to any of your defenses.

4.      "Plaintiffs" refers to Michael Lewis and/or Regina Armstead.

5.      "Person," "persons," "people," and "individual" mean any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures,

organizations, groups of natural persons or other associations or entities separately identifiable, whether or not such associations or entities have a separate legal existence in their own right.

6.      "Document" and "documents" mean all written, recorded, and graphic materials and all electronic data of every kind including electronically stored information ("ESI") in the possession, custody, or control of Municipal Defendants, within the full scope of Federal Rule of Procedure 34.   The term "document" includes electronic correspondence, drafts of documents, metadata, embedded, hidden and other bibliographic or historical data describing or relating to documents created, revised, or distributed on computer systems, and all duplicates of documents (whether or not identical) in the files of or in the files maintained on behalf of all directors, officers, managers, or other supervisory employees, duplicates of documents in all other files that are not identical duplicates of the originals, and duplicates of documents the originals of which are not in the possession, custody, or control of the Municipal Defendants.   The term "document" includes spreadsheets as well as underlying cell formulae and other codes.   The term "document" also includes electronic mail messages, audio and video recordings, and other documents and data stored in, or accessible through, computer or other information retrieval systems, such as personal computers, portable computers, workstations, minicomputers, personal data assistants, archival voice storage systems, group and collaborative tools, electronic messaging devices, portable or removable storage media, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of online or offline storage, whether on or off employer premises.

7.      "All documents" means every document (as defined above) known to Municipal Defendants and every such document that can be located or discovered by reasonably diligent efforts.

8.      "Communication" means, without limitation, any oral, written, or electronic transmission of information, including but not limited to:  (1) any written letter, memorandum, handbill, leaflet, brochure, note, e-mail, telegram, telecopy, facsimile, text message, social media direct message, or other document, including in electronic form; (2) any telephone call by or with you, or between you and two or more persons, or between you and any other person, whether or not such call was by chance or prearranged, formal or informal; and (3) any meeting by or with you, or between you and two or more persons, or between you and any other person, whether or not such contact was by chance or prearranged, formal or informal.

9.      "Employed" and "employment" mean any work or services provided or performed in connection with any direct employment, indirect employment, contract employment, independent contractor relationship, outsourcing employment, temporary employment and/or staffing services employment.  It also means any volunteer work.

10.      "Meeting" and "meetings" mean, unless otherwise specified, any coincidence of presence of two or more persons whether or not such coincidence of presence was by chance or prearranged, formal or informal.

11.      "Any," "all," "any and all," "each" and "every" should be understood in either their most or least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of their scope.

12.      "Or" shall be understood to include "and" and "and" shall be understood to include "or."

13.      "And" and "or" have both conjunctive and disjunctive meanings.

14.      "Relating to," "in relation to," "concerning," and "in regards to" mean in whole or in part constituting, containing, discussing, describing, analyzing, identifying, or stating.

15.     Terms in the singular shall be deemed to include the plural and terms in the plural shall be deemed to include the singular.

16.     "Relevant time period" refers to January 1, 2020 to present day.

## **INSTRUCTIONS**

A.     *Produce hard copy paper documents electronically*. Documents that do not exist in a native electronic format are hereby requested to be produced in color, 300 dpi, searchable .PDF format with logical unitization preserved. Logical unitization entails that the document breaks and groupings found in the original document format (e.g., hard copy documents) will be mirrored in the .PDF production. For example, if the original documents consist of a stack of paper with various multipage documents stapled or paper-clipped together, then each stapled or paper-clipped document shall be produced as a separate .PDF file. Special attention should be paid to ensure that electronically produced copies reflect attachment relationships between documents and information about the file folders within which the document is found. In addition, logical unitization means multi-page documents must be produced as a single document, and not as several single-page documents. Documents should not be shuffled or otherwise rearranged prior to being scanned.

B.     *Produce ESI in native format*. Any documents that exist in electronic form are specifically requested to be produced in native or near-native formats and should not be converted to an imaged format, e.g., .TIFF or .PDF unless the document does not exist within your care, custody, or control in a native electronic format. Native format requires production in the same format in which the information was customarily created, used, and stored by you. The following is a list of native or near-native forms in which specific types of ESI should be produced:

1.      Microsoft Word documents: .DOC, .DOCX

2.      Microsoft Excel spreadsheets: .XLS, .XLSX

3.      Microsoft Powerpoint presentations: .PPT, .PPTX

4.      Microsoft Access Databases: .MDB

5.      Wordperfect documents: .WPD

6.      Adobe Acrobat documents: .PDF

7.      Photographs: .JPG

8.      Email messages: Messages should be produced so as to preserve and supply the source RFC 2822 content of the communication and attachments in a fielded, electronically-searchable format. For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished if source foldering data is preserved and produced. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced.

9.      Databases (excluding e-mail systems): Unless the entire contents of a database are responsive, extract responsive content to a fielded and electronically-searchable format preserving metadata values, keys, and field relationships. If doing so is infeasible, please identify the database and supply information concerning the schemae and query language of the database, along with a detailed description of its export capabilities to facilitate Plaintiffs crafting a query to extract and export responsive data.

10.    Electronic files that reside in file formats other than those specified in sub-paragraphs 1 through 9 above are to be rendered into readable Adobe Acrobat (\*.pdf) format and produced in such format.

11.    Recorded voicemails, phone calls, and audio recordings are to be produced in native or near-native formats.

12.    Videos are to be produced in native or near-native formats.

C.    *Produce two copies of documents that reside both in electronic form and on paper.* Where Municipal Defendants discover documents that are kept in electronic form but where a paper version has been signed or otherwise annotated by hand, Municipal Defendants should produce the electronically-stored copy and also each separately signed or hand annotated version should be produced in .PDF format.

D.    *Answer each request for production separately.* List the documents produced in response to each request. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number. These discovery requests are not intended to be duplicative. All requests should be responded to fully and to the extent not covered by other requests. If there are documents that are responsive to more than one request, please note and produce each such document first in response to the request that is more specifically directed to the subject matter of the particular document.

E.    *Produce a privilege log.* For each document or other requested information that Municipal Defendants assert is privileged or not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other ground for exclusion. Municipal Defendants shall produce a privilege log which identifies as to each privileged communication or document: its date; its author(s); the title or position of

its author(s); its recipient(s); the title or position of its recipient(s); its number of pages; its stated subject matter; the legal basis upon which the privilege claim is being made; and the specific portion of the document to which the communication or document is responsive.

F.   *Support any claim of documents not being discoverable*. For each document that Municipal Defendants claim is not discoverable, state (1) the information required by the definition of "document" above; (2) the author's job title and address; (3) the recipient's job title and address; (4) the name and job title of all persons to whom it was circulated or who saw it; (5) the name, job title, and address of the person now in possession of the document; and (6) the document's present location. For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or when it could no longer be located, and state the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

G.   *Bates-stamp all documents in the production.* Bates numbering should use a consistent format across the entire production. In general, Bates numbers should contain hyphens and no more than three segments: for example, a company identifier, a middle segment (e.g., custodian identifier), and a sequence number of 6-8 digits (the number of digits should be consistent across the entire production). Bates numbers should not contain embedded spaces (" "), slashes ("/"), backslashes ("\"), or underscores ("_"). Native format files should also be assigned a Bates number and documented in the load file. A slipsheet should be produced along with the native format file that includes the native format file's Bates number.

H.  *Consult with Plaintiffs' counsel regarding any technology-assisted review.* Before Municipal Defendants or their agent uses software or technology to identify or eliminate potentially responsive documents and information produced in response to these requests, including but not limited to, search terms, predictive coding or similar technology, near-deduplication, deduplication, and email threading, Municipal Defendants must provide a detailed description of the method(s) used to conduct all or any part of the search. If search terms will be used, in whole or in part, to identify documents and information that are responsive to these requests, provide the following: (1) a list of the proposed search terms; (2) a word dictionary or tally list of all the terms that appear in the collection and the frequency with which the terms appear in the collection (both the total number of appearances and the number of documents in which each word appears); (3) a glossary of industry and company terminology; (4) a description of the search methodology (including the planned use of stem searches and combination (or Boolean) searches); and (5) a description of the applications that will be used to execute the search.

I.  *Use a secure and verifiable method of producing native files.* Plaintiffs request that Municipal Defendants use the following process for producing native files: (1) Hash the files using the MD5 algorithm, (2) rename files with a unique document ID (e.g. ABC000001.doc), (3) verify hash value, (4) set files to Read Only, and (5) deliver a XML load file that includes fielded data with each volume containing the following information for each file:

    i.  Document ID
    ii.  Original File Name and path
    iii.  Modified filename and path
    iv.  MD5 hash value

J.   *Document all efforts to deduplicate vertically and horizontally.* Deduplication should occur both vertically within each custodian and horizontally across custodians. Vertical deduplication is crucial with the production of electronic documents from back-up tapes. Horizontal deduplication must be done in a manner to preserve and produce information on blind copy ("bcc") recipients of e-mails and other custodians who have the duplicates that will be eliminated from the production. Provide Plaintiffs with a written description of the method used to deduplicate (including what information is compared and what hash codes are used) and what is considered a duplicate. There can be no deduplication of "loose" electronic documents (e.g., presentation slides located on the custodian's C: drive) against e-mail attachment versions of those same documents; the integrity of any produced e-mail must be maintained except as limited by any claim of privilege. Plaintiffs do not agree to any deduplication of hard-copy documents.

K.   *Preserve metadata.* Electronic files are to be produced in a manner so as to preserve all meta-data associated with such files. Notice is hereby given that any attempt to alter or modify such files in connection with production thereof through the use of meta-data scrubber software or similar means will be considered intentional spoliation of evidence. Where practical, metadata should be extracted and fielded in a production load file.

L.   *Deliver production using portable media depending upon production size.* Unless otherwise agreed by counsel before the date of response called for herein, productions smaller than 10 gigabytes (GB) should be made using DVD-recordable optical media. Productions larger than 10 GB but smaller than 128 GB should be made using a flash/thumb drive or portable external hard drive. Productions larger than 128 GB should

be made using a portable external hard drive. If these storage media are not available to Municipal Defendants, Plaintiffs will provide same to Municipal Defendants upon request.

M.    *Translate all documents into English.* Those documents written in a language other than English must be translated into English; submit the foreign language document, with the English translation attached thereto.

N.    *These requests are continuing.* Every Request for Production herein shall be deemed a continuing Request for Production, and Municipal Defendants are to supplement their answers promptly if and when Municipal Defendants obtain responsive documents, which add to or are in any way inconsistent with Municipal Defendants' initial production.

## **DOCUMENT REQUESTS**

1.   All documents related to RPD's stop, detention, search, and release of Plaintiffs on November 6, 2020.

2.   All video footage, audio recordings, and photographs taken of Plaintiffs by RPD on November 6, 2020, including but not limited to, body worn camera and dashboard camera footage.

3.   All documents related to incident # 20-54240.

4.   All documents related to incident #20-54239.

5.   All grievances, complaints, or communications submitted to RPD by Plaintiffs or their representatives during the relevant time period.

6.   All memos, emails, bulletins, official or unofficial meeting minutes, meeting notes, or communications between and amongst any individual associated with or employed by the City or RPD relating to Plaintiffs during the relevant time period.

7. Index of all manuals, employee handbooks, guides, and any other instructional materials in use at RPD as of the relevant time period.

8. Index of all policies, procedures, regulations, protocols, manuals, or guidelines in use at RPD as of the relevant time period.

9. Every policy, procedure, and practice in use at RPD as of January 1, 2020, and, if different, at present, related to:

    a.  responding to Computer Aided Dispatch ("CAD") calls;

    b.  conducting traffic stops;

    c.  detaining suspects;

    d.  searching vehicles;

    e.  securing a scene during high-risk stop;

    f.  establishing and documenting probable cause;

    g.  applying handcuffs and other restraints;

    h.  brandishing department-issued weapons;

    i.  accommodations for individuals with disabilities; and

    j.  use of force.

10. Personnel records for Defendants John Delgado, Adam Vasquez, Arthur Love, John Clausen, and Ryan Cantu, spanning the length of their employment with RPD, that includes, but is not limited to, complaints and grievances filed against the officer, disciplinary action taken against the officer, documentation of trainings and certifications, and information regarding salaries, bonuses, overtime, and promotions.

11. All documentation of investigations by RPD into the following civilian complaints, including, but not limited to, corrective action forms, investigation summaries and reports, video footage, audio recordings, and photographs:

    a.  S. Saenz (August 7, 2014)

    b.  R. Martinez (March 5, 2016)

    c.  M. Perez (March 21, 2016)

    d.  P. Liedy (June 4, 2016)

    e.  G. Velez (May 29, 2017)

    f.  T. Acorn (June 5, 2017)

    g.  D. Seura (June 11, 2018)

    h.  D. Watkins (June 27, 2018)

    i.  T. Roe (July 17, 2019)

    j.  R. Hawkins (August 29, 2019)

    k.  A. Gonzalez (October 21, 2019)

    l.  A. Ross (September 9, 2020)

    m. M. Ellison (October 4, 2020)

    n.  C. Bockholt (August 25, 2021)

    o.  R. Dawes (January 7, 2022)

    p.  P. Parker (February 10, 2022)

    q.  M. Scroggins (March 30, 2022)

12. All reviews, audits, annual reports, technical assistance reports, evaluations, assessments, and grand jury reports relating to RPD during the relevant period.

13. All grievances or complaints related to the failure to accommodate or take into account an individual's medical condition against RPD, its officers, or its employees filed with a city agency by individuals from January 1, 2016 to present.

14. All records of disciplinary action taken against RPD, its officers, or its employees by RPD or another city agency due to the failure to accommodate or take into account an individual's medical condition from January 1, 2016 to present.

15. All communications related to grievances, complaints, or disciplinary action taken against RPD, its officers, or its employees from a city agency related to the failure to accommodate or take into account an individual's medical condition from January 1, 2016 to present.

16. All records related to screening, hiring, evaluating, promoting, demoting, disciplining, or terminating RPD officers or employees from a city agency.

17. All settlements between the City of Rosenberg and plaintiffs in lawsuits alleging that RPD employees failed to accommodate or take into account an individual's medical condition January 1, 2016 to present.

Respectfully submitted, this 31st day of May, 2023.

**NATIONAL POLICE
ACCOUNTABILITY PROJECT**

/s/ Lauren Bonds
Lauren Bonds*
1403 Southwest Boulevard
Kansas City, Kansas 66103
(620) 664-8584
legal.npap@nlg.org

Keisha James*
PO Box 56386
Washington, DC 20040
(202) 557-9791

keisha.npap@nlg.org

Eliana Machefsky*
2111 San Pablo Avenue
PO Box 2938
Berkeley, CA 94702
(314) 440-3505
fellow.npap@nlg.org

**KIZZIA JOHNSON PLLC**

*Allie Van Stean*
State Bar No. 24104711
Kizzia Johnson PLLC
1910 Pacific Avenue Suite 13000
Dallas, Texas 75201
Tel: (214) 451-0164
Fax: (214) 451-0165
allie@kjpllc.com

**PATHLIGHT LEGAL CORPORATION**

Tiffany Bartley Sams,* Esquire
PathLight Legal Corporation
SBOT 24053091
www.pathlightlegalcorporation.com
Tiffanysams@pathlightlegalcorporation.com
(P) 713-609-9622
(F) 713-589-4689

Stephen D. Dockery
Texas Bar No. 24120265
4416 Bell Street
Houston, Texas 77023
stephendd@gmail.com
202-817-6351 Telephone
Pro Bono Attorney

*admitted *pro hac vice*

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2023,  a true and correct copy of *Plaintiffs' First Set of Requests for Production of Documents Directed to Defendants City of Rosenberg and Rosenberg Police Department* has been sent via electronic mail to counsel of record.


/s/ Laruen Bonds
Lauren Bonds

# Exhibit F

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    HOUSTON DIVISION

 3   MICHAEL LEWIS and REGINA       )
     ARMSTEAD,                      )
 4                                  )
                      Plaintiffs,   )
 5                                  )
     VS.                            ) CIVIL ACTION
 6                                  )
     ROSENBERG POLICE               ) NO. 4:22-cv-02593
 7   DEPARTMENT, CITY OF            )
     ROSENBERG, JOHN DELGADO,       )
 8   ADAM VASQUEZ, ARTHUR LOVE,     )
     JOHN CLAUSEN, and RYAN         )
 9   CANTU,                         )
                                    )
10                    Defendants.   )

11      ------------------------------------

12                ORAL DEPOSITION OF

13              CHIEF JONATHAN WHITE

14                 October 23, 2023

15                    VOLUME 1

16      ------------------------------------

17        ORAL DEPOSITION OF CHIEF JONATHAN WHITE, produced

18   as a witness at the instance of the Plaintiffs, and duly

19   sworn, was taken in the above-styled and numbered cause

20   on October 23, 2023, from 9:07 a.m. to 11:50 a.m.,

21   before Elizabeth Goodenough, CSR in and for the State of

22   Texas, reported by machine shorthand, at Lewis Brisbois

23   Bisgaard & Smith, LLP, 24 Greenway Plaza, Suite 1400,

24   Houston, Texas, pursuant to the Federal Rules of Civil

25   Procedure.
```

**ORIGINAL**

1                    A P P E A R A N C E S

2     FOR THE PLAINTIFFS:

3          LAUREN BONDS
           National Police Accountability
4          Project
           1403 Southwest Boulevard
5          Kansas City, Kansas 66103
           Phone: (620) 664-8584
6          E-mail: Legal.npap@nlg.org

7          ELIANA MACHEFSKY
           National Police Accountability
8          Project
           2111 San Pablo Avenue
9          PO Box 2938
           Berkeley, California 94702
10         Phone: (314) 440-3505
           E-mail: Fellow.npap@nlg.org

11

12         KEISHA JAMES
           National Police Accountability
           Project
13         PO Box 56386
           Washington, DC 20040
14         Phone: (202) 557-9791
           E-mail: Keisha.npap@nlg.org

15

16         TIFFANY BARTLEY SAMS
           PathLight Legal Corporation
           114 Heights Boulevard
17         Unit 1
           Houston, Texas 77007
18         Phone: (713) 609-9622
           E-mail: Tiffanysams@pathlightlegalcorporation.com

19

20    FOR THE DEFENDANTS:

21         NORMAN RAY GILES
           Lewis Brisbois Bisgaard & Smith,
           LLP
22         24 Greenway Plaza
           Suite 1400
23         Houston, Texas 77046
           Phone:(832) 460-4637
24         E-mail:
           Norman.Giles@lewisbrisbois.com

25

1
                              INDEX
2
                                                        PAGE
3
    Appearances........................................ 2
4
    CHIEF JONATHAN WHITE
5
          Examination by Ms. Bonds...................... 4
6
    Reporter's Certificate............................. 76
7

8                             EXHIBITS

9   NO.  DESCRIPTION                                    PAGE

10  1    Notice of Deposition 30(b)(6)                   5
    2    RPD Prisoner Restraint                         12
11  3    Patrol Operations Guidelines                   27
    4    Officer Vasquez Body Cam                       38
12  5    E-mails regarding Lewis complaint              51
    6    Report for Incident 20-54239                   60
13  7    Body Worn Cameras General Order                63
    8    Report for Incident 20-54240                   74
14

15              REQUESTED DOCUMENTS/INFORMATION
16                         (NONE)
17

18                   CERTIFIED QUESTIONS
19                         (NONE)
20

21

22

23

24

25

1          MS. BONDS:  Elizabeth, we'll be back in

2     about 10 minutes.

3               (Recess from 10:06 to 10:19.)

4          MS. BONDS:  Back on the record.

10:19AM   5     Q.   (BY MS. BONDS)  All right, Chief White, we're

6     back on the record.

7               I want to ask you about the stop that gave

8     rise to this case on November 6, 2020.  I know that you

9     refer to it by incident numbers.  But if I call it the

10:20AM  10    Lewis stop, will you know what I'm talking about?

11         A.   Yes.

12         Q.   Can you tell me what officers were present at

13    the Lewis stop?

14         A.   Yes.  Sergeant John Delgado, Officer Adam

10:20AM  15    Vasquez, may have been Officer John Clausen at the time.

16    He is a sergeant now.  Officer Arthur Love.  I believe

17    that's it.

18         Q.   Was there a Detective Newport present?

19         A.   He -- officer -- he was officer at the time,

10:21AM  20    Newport, yes.  At some point he's a detective, but he's

21    no longer with our department.

22         Q.   And just to confirm, to your knowledge, he was

23    present at the stop?

24         A.   He is -- he was there, yes.

10:21AM  25         Q.   And to your knowledge, he was an officer at the

1    several times.

2        Q.   So you watched it after a reporter reached out

3    to you?

4        A.   Uh-huh.

11:40AM  5        Q.   Did you watch it at any point after that point

6    and before preparing for your deposition?

7        A.   I mean, I've watched it several times.  So in

8    between that, you know, in between that day and then,

9    I've watched it several times.  But I didn't watch it,

11:40AM 10    you know, to prepare for the deposition.

11             MS. BONDS:  All right.  Can we take one

12    more short break?  I think we are done, but let me make

13    sure so I don't have to bother you in the future.

14             (Recess from 11:41 to 11:46.)

11:46AM 15             MS. BONDS:  We are back on the record.

16        Q.   (BY MS. BONDS)  Chief White, I have a

17    smattering of random follow-up questions.

18             So can you refer back to Exhibit 6 again?

19    And there should be some space on there about including

11:46AM 20    all the responding officers, right, or all the officers

21    on the scene on the first page?  My apologies.

22        A.   Okay.

23        Q.   Do you see the list?

24        A.   Yes.

11:47AM 25        Q.   Is Officer Newport on that list?

1      A.   Delgado, Cantu, Vasquez, Love, Clausen is what

2 I see here.  Delgado, Cantu, Vasquez, Love, Clausen.

3      Q.   Do you know why he wasn't on that list of

4 officers?

11:47AM  5      A.   I -- so from my experience, with our database,

6 this 54239 case number was for the weapons call at 516

7 4th Street.  That would tell me that he didn't go to

8 that call.

9      Q.   Okay.  Here, I'll give you what we're going to

11:48AM 10 mark as Exhibit 8.

11           MS. BONDS:  And, Elizabeth, I'll supplement

12 our exhibits.

13      Q.   (BY MS. BONDS)   I believe that is for the

14 traffic stop.

11:48AM 15      A.   Okay.

16      Q.   Can you take a look there at the officers

17 listed?

18      A.   Okay.

19      Q.   Do you see any indication that Officer Newport

11:48AM 20 was involved in this stop?

21      A.   I do not.

22      Q.   Okay.  When did Officer Newport leave RPD?

23      A.   I can't give you a specific date right now.  I

24 definitely could with records.  I would say it has been

11:48AM 25 2023 at some time.

1      Q.   Do you recall why he left?

2      A.   From my understanding, he got out of law

3 enforcement and was doing something in the private

4 sector.

11:49AM  5      Q.   Did he resign?

6      A.   Yes.

7      Q.   Okay.  Do you know any reason why -- referring

8 back to Exhibit 8, why Officer Newport wouldn't appear

9 on that list?

11:49AM 10      A.   The way it could happen is you weren't assigned

11 the call from dispatch or you never let dispatch know

12 you were there.  Now, could one of those two things

13 happen and it not get put on here, yes.  But just

14 speaking from a generally, it could have been just

11:50AM 15 stopped by and was not assigned or talking on the radio.

16      Q.   Understood.

17           MS. BONDS:  That was the last question for

18 you.  I have no further questions for you.  Thank you,

19 Chief White.

11:50AM 20           MR. GILES:  I'll reserve my questions for

21 the time of trial.

22           (Signature waived.)

23           (Deposition concluded at 11:50 a.m.)

24

25

1  STATE OF TEXAS        X

2  COUNTY OF TARRANT     X

3          I, Elizabeth Goodenough, a Certified Shorthand

4  Reporter in and for the State of Texas, hereby certify

5  to the following:

6          That the witness, CHIEF JONATHAN WHITE, was

7  duly sworn by the officer and that the transcript of the

8  oral deposition is a true record of the testimony given

9  by the witness;

10         I further certify that pursuant to FRCP Rule

11  30(f)(1) that the signature of the deponent:

12         ___ was requested by the deponent or a party

13  before the completion of the deposition and is to be

14  returned within 30 days from the date of receipt of the

15  transcript.  If returned, the attached Errata contain

16  any changes and the reasons therefor;

17         X was not requested by the deponent or a party

18  before the completion of the deposition.

19         I further certify that I am neither counsel

20  for, related to, nor employed by any of the parties or

21  attorneys in the action in which this proceeding was

22  taken, and further that I am not financially or

23  otherwise interested in the outcome of the action;

24

25

1          IN WITNESS WHEREOF, I have hereunto set my

2   hand and affixed my notarial seal this the 6th day of

3   November, 2023.

4

5

6

8   _____

9   ELIZABETH GOODENOUGH, CSR 3055
    Goodenough & Associates
10  Firm Registration No. 400
    2012 Franklin Drive
11  Arlington, Texas  76011

12

13  My commission expires: 10-31-24

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit G

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    HOUSTON DIVISION

 3   MICHAEL LEWIS and REGINA     )
     ARMSTEAD,                    )
 4                               )
                  Plaintiffs,    )
 5                               )
     VS.                         )  CIVIL ACTION
 6                               )
     ROSENBERG POLICE            )  NO. 4:22-cv-02593
 7   DEPARTMENT, CITY OF         )
     ROSENBERG, JOHN DELGADO,    )
 8   ADAM VASQUEZ, ARTHUR LOVE,  )
     JOHN CLAUSEN, and RYAN      )
 9   CANTU,                      )
                  Defendants.    )
10
11          ------------------------------------

12                  ORAL DEPOSITION OF

13               SERGEANT JOHN DELGADO

14                  October 23, 2023

15                      VOLUME 1

16          ------------------------------------

17        ORAL DEPOSITION OF SERGEANT JOHN DELGADO, produced

18   as a witness at the instance of the Plaintiffs, and duly

19   sworn, was taken in the above-styled and numbered cause

20   on October 23, 2023, from 2:03 p.m. to 4:07 p.m., before

21   Elizabeth Goodenough, CSR in and for the State of Texas,

22   reported by machine shorthand, at Lewis Brisbois

23   Bisgaard & Smith, LLP, 24 Greenway Plaza, Suite 1400,

24   Houston, Texas, pursuant to the Federal Rules of Civil

25   Procedure.
```

**ORIGINAL**

```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFFS:

 3         LAUREN BONDS
           National Police Accountability
 4         Project
           1403 Southwest Boulevard
 5         Kansas City, Kansas 66103
           Phone: (620) 664-8584
 6         E-mail: Legal.npap@nlg.org

 7         ELIANA MACHEFSKY
           National Police Accountability
 8         Project
           2111 San Pablo Avenue
 9         PO Box 2938
           Berkeley, California 94702
10         Phone: (314) 440-3505
           E-mail: Fellow.npap@nlg.org
11
           KEISHA JAMES
12         National Police Accountability
           Project
13         PO Box 56386
           Washington, DC 20040
14         Phone: (202) 557-9791
           E-mail: Keisha.npap@nlg.org
15
           TIFFANY BARTLEY SAMS
16         PathLight Legal Corporation
           114 Heights Boulevard
17         Unit 1
           Houston, Texas 77007
18         Phone: (713) 609-9622
           E-mail: Tiffanysams@pathlightlegalcorporation.com
19
      FOR THE DEFENDANTS:
20
           NORMAN RAY GILES
21         Lewis Brisbois Bisgaard & Smith,
           LLP
22         24 Greenway Plaza
           Suite 1400
23         Houston, Texas 77046
           Phone:(832) 460-4637
24         E-mail:
           Norman.Giles@lewisbrisbois.com
25
```

1                              INDEX

2                                                         PAGE

3    Appearances......................................... 2

4    SERGEANT JOHN DELGADO

5         Examination by Ms. Machefsky...................  4

6    Reporter's Certificate............................. 66

7
                               EXHIBITS
8
     NO.  DESCRIPTION                                     PAGE
9
     4    Officer Vasquez Body Cam                         63
10   6    Report for Incident 20-54239                     41
     9    Officer Clausen's Patrol Unit Cam                48
11   10   Officer Clausen's Body Cam                       50

12
                    REQUESTED DOCUMENTS/INFORMATION
13
                             (NONE)
14
                        CERTIFIED QUESTIONS
15
                             (NONE)
16

17

18

19

20

21

22

23

24

25

1   to have actual physical control of Ms. Armstead

2   handcuffs her.

3       Q.   Do you remember being the person who covered

4   Ms. Armstead?

03:37PM    5       A.   No -- no, I specifically don't.  But it sounds

6   like that's what's happening on the video.

7                (Video playing.)

8       Q.   Did you see yourself in this video?

9       A.   Yes.

03:37PM   10       Q.   And which person?  This one?

11       A.   That's me.

12       Q.   The second person to enter the screen is you.

13   Okay.  So what are you doing here?

14       A.   So, essentially, I'm providing cover for -- to

03:38PM   15   assist whoever that is with Ms. Armstead, as well as

16   provide that officer cover for the vehicle for the

17   potential threats that are inside the vehicle.

18                So that way I can either provide cover --

19   not so much cover fire -- but I can provide return fire

03:38PM   20   for that vehicle and then step in front of whoever that

21   officer is and provide him my body armor as he's

22   exposed.  He doesn't have any weapons on him to defend

23   himself.  So in that case where a deadly threat would

24   emerge, I would step in front of him.

03:38PM   25                (Video playing.)

1    Q.   Do you recognize this officer?  Does that help

2    you at all to understand who handcuffed her?

3    A.   Maybe -- I would have to look at who was

4    working that day, but I don't -- I don't remember who

03:39PM  5    that is.  Is there a better perspective?

6    Q.   I don't think so, but we can't -- I can direct

7    you to the first page of that exhibit, Exhibit 6.  Was

8    it potentially someone named Officer Newport?

9    A.   Yeah.

03:39PM  10    Q.   Okay.  Okay.  Great.

11    A.   Yeah, that's him.  That's Newport.

12              (Video playing.)

13    Q.   And what is happening now?  It looks like

14    Officer Newport took Ms. Armstead off screen?

03:39PM  15    A.   Yes, she would have -- obviously, I think

16    whenever he was getting her up, he already started

17    patting her down, making sure she didn't have anything

18    in her pockets.  But she was secured in a vehicle.

19    Q.   And what are you doing now?

03:40PM  20    A.   Now I'm going back to covering the vehicle.

21    I've brought my attention back to the vehicle.  And now

22    we're going to try and get the rest of the occupants

23    out.

24    Q.   And just for the record, this is at two minutes

03:40PM  25    and 39 seconds into Exhibit 10.

1  STATE OF TEXAS         X

2  COUNTY OF TARRANT      X

3            I, Elizabeth Goodenough, a Certified Shorthand

4  Reporter in and for the State of Texas, hereby certify

5  to the following:

6            That the witness, SERGEANT JOHN DELGADO, was

7  duly sworn by the officer and that the transcript of the

8  oral deposition is a true record of the testimony given

9  by the witness;

10            I further certify that pursuant to FRCP Rule

11 30(f)(1) that the signature of the deponent:

12            ___ was requested by the deponent or a party

13 before the completion of the deposition and is to be

14 returned within 30 days from the date of receipt of the

15 transcript.  If returned, the attached Errata contain

16 any changes and the reasons therefor;

17            **X** was not requested by the deponent or a party

18 before the completion of the deposition.

19            I further certify that I am neither counsel

20 for, related to, nor employed by any of the parties or

21 attorneys in the action in which this proceeding was

22 taken, and further that I am not financially or

23 otherwise interested in the outcome of the action;

24

25

1          IN WITNESS WHEREOF, I have hereunto set my

2   hand and affixed my notarial seal this the 6th day of

3   November, 2023.

4

5

6

8          _____

9          ELIZABETH GOODENOUGH, CSR 3055
           Goodenough & Associates
10         Firm Registration No. 400
           2012 Franklin Drive
11         Arlington, Texas  76011

12

13   My commission expires: 10-31-24

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit H

1            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
2                 HOUSTON DIVISION

3 MICHAEL LEWIS and REGINA     )
   ARMSTEAD,                   )
4                             )
              Plaintiffs,    )
5                             )
   VS.                      ) CIVIL ACTION
6                             )
   ROSENBERG POLICE        ) NO. 4:22-cv-02593
7 DEPARTMENT, CITY OF      )
   ROSENBERG, JOHN DELGADO,   )
8 ADAM VASQUEZ, ARTHUR LOVE,  )
   JOHN CLAUSEN, and RYAN    )
9 CANTU,                     )
              Defendants.    )

10

11       -----------------------------------

12              ORAL DEPOSITION OF

13           SERGEANT JOHN CLAUSEN

14            October 24, 2023

15               VOLUME 1

16       -----------------------------------

17      ORAL DEPOSITION OF SERGEANT JOHN CLAUSEN, produced

18 as a witness at the instance of the Plaintiffs, and duly

19 sworn, was taken in the above-styled and numbered cause

20 on October 24, 2023, from 9:58 a.m. to 11:36 a.m.,

21 before Elizabeth Goodenough, CSR in and for the State of

22 Texas, reported by machine shorthand, at Lewis Brisbois

23 Bisgaard & Smith, LLP, 24 Greenway Plaza, Suite 1400,

24 Houston, Texas, pursuant to the Federal Rules of Civil

25 Procedure. **ORIGINAL**

SERGEANT JOHN CLAUSEN    10/24/2023            2

```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFFS:

 3        LAUREN BONDS
          National Police Accountability
 4        Project
          1403 Southwest Boulevard
 5        Kansas City, Kansas 66103
          Phone: (620) 664-8584
 6        E-mail: Legal.npap@nlg.org

 7        ELIANA MACHEFSKY
          National Police Accountability
 8        Project
          2111 San Pablo Avenue
 9        PO Box 2938
          Berkeley, California 94702
10        Phone: (314) 440-3505
          E-mail: Fellow.npap@nlg.org
11
          KEISHA JAMES
12        National Police Accountability
          Project
13        PO Box 56386
          Washington, DC 20040
14        Phone: (202) 557-9791
          E-mail: Keisha.npap@nlg.org
15
          TIFFANY BARTLEY SAMS
16        PathLight Legal Corporation
          114 Heights Boulevard
17        Unit 1
          Houston, Texas 77007
18        Phone: (713) 609-9622
          E-mail: Tiffanysams@pathlightlegalcorporation.com
19
     FOR THE DEFENDANTS:
20
          NORMAN RAY GILES
21        Lewis Brisbois Bisgaard & Smith,
          LLP
22        24 Greenway Plaza
          Suite 1400
23        Houston, Texas 77046
          Phone:(832) 460-4637
24        E-mail:
          Norman.Giles@lewisbrisbois.com
25
```

```
 1

 2                          INDEX

 3                                                    PAGE

 4   Appearances.......................................... 2

 5   SERGEANT JOHN CLAUSEN

 6        Examination by Ms. Bonds....................  4
          Examination by Mr. Giles.................... 48
 7
     Reporter's Certificate.............................. 49
 8

 9                         EXHIBITS

10   NO.  DESCRIPTION                                  PAGE

11   2    RPD Prisoner Restraint                        15
     6    Report for Incident 20-54239                  27
12   10   Officer Clausen's Body Cam                    19
     11   J. Clausen Complaint 02-10-2022               45
13

14             REQUESTED DOCUMENTS/INFORMATION

15                        (NONE)

16                  CERTIFIED QUESTIONS

17                        (NONE)

18

19

20

21

22

23

24

25
```

SERGEANT JOHN CLAUSEN    10/24/2023                    18

1      Q.   Okay.  And even if you personally haven't used

2  any alternative method, can you think of any alternative

3  method to restrain an elderly individual other than

4  handcuffing them?

10:19AM   5      A.   No.

6      Q.   Same question for somebody with a disability,

7  other than handcuffing them, can you think of an

8  alternative to restrain a person with a disability?

9      A.   Huh-uh.

10:19AM  10      Q.   So I want to discuss the stop of Mr. Lewis and

11  Ms. Armstead, the November 6th, 2020 stop.  Can I call

12  that the Lewis stop for shorthand?

13      A.   Sure.

14      Q.   Do you remember who was on the scene with you?

10:20AM  15      A.   I remember I believe Officer Vasquez stopped

16  the vehicle.  Sergeant Delgado was out there with us and

17  Officer Love was out there on the stop.

18      Q.   Do you remember an Officer Newport being

19  present?

10:20AM  20      A.   Can't picture him there.

21      Q.   But you know who that is?

22      A.   I do know who that is, yes.

23      Q.   Do you remember who was the highest-ranking

24  officer on the scene that evening?

10:20AM  25      A.   Sergeant Delgado.

1  STATE OF TEXAS        X

2  COUNTY OF TARRANT     X

3          I, Elizabeth Goodenough, a Certified Shorthand

4  Reporter in and for the State of Texas, hereby certify

5  to the following:

6          That the witness, SERGEANT JOHN CLAUSEN, was

7  duly sworn by the officer and that the transcript of the

8  oral deposition is a true record of the testimony given

9  by the witness;

10          I further certify that pursuant to FRCP Rule

11  30(f)(1) that the signature of the deponent:

12          ___ was requested by the deponent or a party

13  before the completion of the deposition and is to be

14  returned within 30 days from the date of receipt of the

15  transcript.  If returned, the attached Errata contain

16  any changes and the reasons therefor;

17          **X** was not requested by the deponent or a party

18  before the completion of the deposition.

19          I further certify that I am neither counsel

20  for, related to, nor employed by any of the parties or

21  attorneys in the action in which this proceeding was

22  taken, and further that I am not financially or

23  otherwise interested in the outcome of the action;

24

25

1          IN WITNESS WHEREOF, I have hereunto set my

2    hand and affixed my notarial seal this the 6th day of

3    November, 2023.

4

5

6

8    _____

9    ELIZABETH GOODENOUGH, CSR 3055
     Goodenough & Associates
10   Firm Registration No. 400
     2012 Franklin Drive
11   Arlington, Texas  76011

12

13   My commission expires: 10-31-24

14

15

16

17

18

19

20

21

22

23

24

25