IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHEAL LEWIS and REGINA ARMSTEAD, <br><br> *Plaintiffs*, <br><br> v. <br><br> ROSENBERG POLICE DEPARTMENT, CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, JOHN CLAUSEN, and MATTHEW NEWPORT <br><br> *Defendants*. | CIVIL ACTION NO. 4:22-cv-02593 |

**PLAINTIFFS' STATEMENT OF DISPUTED FACTS**

| No. | Disputed Material Fact | Plaintiffs' Supporting Evidence | Defendants' Position |
|---|---|---|---|
| 1 | RPD Dispatchers Simon Cuellar and Christina Salinas were provided with a description of the suspects as a group of Black and Hispanic teenagers who knew the 911 caller's son. | Ex. C ("rp adv that subjs were mixed blk or hms;" "rp adv that some kids walked towards ave e;" "appx 10x subjects were outside;" "BTWN BOTH VEHS 8 SUBJS;" "RP ADV HER SON KNOWS THE SUBJ") <br><br> Ex. S (Maria Gonzales Salinas at 1:38 – 2:54: "They look like mix, they were different, I say maybe a couple of them were kinda either Black or Hispanic, in that mix, you know, there were like 10 people;" "And some of | Defendants' Motion for Final Summary Judgment ("Defs' SJ Mtn."), ¶ 8 ("The caller did not provide any description of the suspects.") <br><br> Defs' SJ Mtn. Ex. 13 at ¶ 6 ("Alma Gonzlez [sic] did not provide me with any identifying information regarding the armed suspects who fled in the white Dodge Charge [sic] from Alma Gonzales.") |

| | | those kids walked off…;" "Some of the crowd of kids walking…one of them has the gun…;" "These are all teenaged, like teenagers…"); (Alma Gonzales at 4:04 – 4:45: "Two boys pulled out a gun;" "It was like 8 biracial, one was Black…"); (Dispatcher Salinas at 8:04 – 8:30: "[T]he reportee is advising her son knows the subjects…"))<br><br>Ex. R at 30:16-23; 33:07-17 (testifying that he received a description of the subjects as "a mix between Black and Hispanic males")<br><br>Ex. U (Salinas Deposition Transcript) at 33:12-34:01 (testifying that the information Cuellar entered into the call slip indicating that "the subjects" were "Black or Hispanic males" referred to the suspects)<br><br>Ex. N at 62:02-07) (testifying that the dispatchers had a description of the identities of the suspects) | |
|---|---|---|---|
| 2 | Defendants Vasquez, Delgado, Clausen, Love, and Newport were provided with a description of the suspects. | Ex. C<br><br>Ex. Q (Dispatcher Salinas at 03:12: "Out of the 8 subjects, about four of them had guns;" at 04:13: "The reporter is advising | Ex. N at 62:08-22 (testifying that he does not see that the description of the suspects in the call notes were relayed over the radio) |

| | | her son knows the subjects and she does have video;" Defendant Clausen (Badge #23) at 5:54: "Was one of the victims able to advise a name if they know the subjects?")<br><br>Ex. R at 36:12-15 (testifying that the officers had access to his description of the suspects as "a mix between Black and Hispanic males" via their mobile data terminals ("MDTs"))<br><br>Ex. U at 30:05-13 (testifying that whatever information was in the call slip about the suspects was relayed to the officers); 33:20-34:01; 35:14-20; 36:05-16; 37:02-12 (testifying that the call slip identifies "Mixed black or Hispanic males" as the suspects) | Ex. V (Lopez Report) at 18 (Defendants "did not have more specific information about who was driving the suspect vehicle.")<br><br>Defs' SJ Mtn., Ex. 11 at ¶ 17 ("Prior to securing the scene of the Dodge Charger stop, I had no identifying information regarding the armed individuals.")<br><br>Defs' SJ Mtn., Ex. 9 at ¶ 8 ("Prior to securing the scene of the Dodge Charger stop, I had no identifying information regarding the armed individuals.")<br><br>Defs' SJ Mtn., Ex. 10 at ¶ 6 ("Prior to securing the scene of the Dodge Charger stop, I had no identifying information regarding the armed individuals.")<br><br>Defs' SJ Mtn., Ex. 12 at ¶ 8 ("Prior to securing the scene of the Dodge Charger stop, I had no identifying information regarding the armed individuals.")<br><br>Defs' SJ Mtn., Ex. 14 at ¶ 6 ("Prior to securing the scene of the Dodge Charger stop, I had no identifying information regarding the armed individuals.") |

| 3 | Defendants Vasquez, Delgado, Clausen, Love, and Newport had access to the information identifying the suspects as a group of 8 Black and Hispanic teenagers through both Salinas's radio transmissions and Cuellar's transmissions to Defendants' mobile data terminals ("MDTs"). | Ex. C (Cuellar transmitted the following suspect descriptions into the call slip: "rp adv that subjs were mixed blk or hms;" "rp adv that some kids walked towards ave e;" "appx 10x subjects were outside").<br><br>Ex. H at 32:17-33:06 (testifying that call notes are visible on the screen of their computers in their patrol vehicles)<br><br>Ex. R at 36:12-15 (testifying that the information he imputed into the call slip describing the suspects as "a mix between Black and Hispanic males" was immediately transmitted to the officers via their MDTs); 18:15-19:18 (testifying that it is normal for RPD officers to check their MDTs if they have not yet activated their emergency lights and sirens)<br><br>Ex. G at 34:16-22 (RPD officers are trained to consult their MDTs if they can safely do so)<br><br>Ex. Q (Dispatcher Salinas at 03:12; 04:13)<br><br>Ex. U at 30:13 (testifying that whatever information was in the call slip about the suspects was relayed to the officers); 33:20- | Ex. N at 62:08-22<br><br>Ex. V at 18<br><br>Defs' SJ Mtn., Ex. 11 at ¶ 17<br><br>Defs' SJ Mtn., Ex. 9 at ¶ 8<br><br>Defs' SJ Mtn., Ex. 10 at ¶ 6<br><br>Defs' SJ Mtn., Ex. 12 at ¶ 8<br><br>Defs' SJ Mtn., Ex. 14 at ¶ 6 |

| | | | |
|---|---|---|---|
| | | 34:01; 35:14-20; 36:05-16; 37:02-12 (testifying that the call slip identifies "Mixed black or Hispanic males" as the suspects)<br><br>Ex. N at 58:12-18 (testifying that officers "have the capability to see [information that is put in the call slip] on their computer" and rely on both the computer and verbal radio traffic)<br><br>Ex. E at 15 ("The CAD notes had considerably more information from the callers than what was relayed by dispatch radio transmission….These notes were readily available to the officers through their in-squad computers.") | |
| 4 | Defendants Vasquez, Delgado, Clausen, Love, and Newport were told the suspects' vehicle was *either* a white Dodge Charger *or* a white Dodge Challenger. | Ex. Q (Dispatcher Salinas at 00:41: "It's gonna be a white Charger or a Challenger with black rims;" Officer Cantu (Badge #21) at 02:07: "Can they advise if it was a newer model, uh Charger or Challenger?;" Dispatcher Salinas at 04:43: "It's gonna be a white Charger or a Challenger") | Defs' SJ Mtn., ¶ 8 ("the Dispatcher relayed to officers through the police radio [that] . . . the suspects were driving a white Dodge Charger").<br><br>Ex. V at 9 ("Dispatch informed responding officers, with preliminary call information, that unidentified suspects pointed guns at children and left the location in a white Dodge Charger with black wheels.") |
| 5 | Defendant Vasquez's initial alerts did not clearly indicate to Ms. Armstead that her vehicle was the one Defendant Vasquez intended to stop, so | Ex. K at 13:11-15 (testifying that she thought the police were trying to drive around her); 15:09-24 (testifying | Defs' SJ Mtn., ¶ 9 ("Although Officer Vasquez indicated to Plaintiffs to pullover [sic], Plaintiffs continued to |

|   |   |   |   |
|---|---|---|---|
|   | Ms. Armstead carefully switched lanes to allow Defendant Vasquez to pass. | that she did not know why she was being pulled over and Mr. Lewis said at the time she was going the speed limit)<br><br>Ex. B at 00:15-01:17 (depicting Ms. Armstead's driving after Defendant Vasquez began following her but before he turned on any emergency lights or sirens); at 01:18 (depicting Defendant Vasquez turning on his emergency lights and sounding two short sirens, and Ms. Armstead looking for a way to allow him to pass because there was no shoulder to the right of her and a pickup truck directly to her left); 01:28 (depicting Ms. Armstead pulling over to the left lane in front of the pickup truck); 01:32 (depicting Ms. Armstead reaching a stop sign and coming to a full stop after switching lanes) | drive instead of pulling over.")<br><br>Defs' SJ Mtn., Ex. 3 at 36:16-20 ("I believe they continued to drive for a little bit.")<br><br>Defs' SJ Mtn., Ex. 9 at ¶ 5 ("When I pulled behind the Dodge Charger with my emergency lights on, the Dodge Charger initially continued to drive instead of pulling over.")<br><br>Ex. V at 15 ("Officers present noted that the vehicle did not immediately pull over. Instead, the driver, Mrs. Armstead, chose to activate the left turn signal indicating the vehicle was going to turn left on Mustang Ave.") |
| 6 | Ms. Armstead only realized that she was the driver Defendant Vasquez intended to stop after he sounded his full siren, at which point she pulled over within 9 seconds. | Ex. K at 13:11-15; 15:09-24<br><br>Ex. B at 01:35 (depicting Ms. Armstead driving forward from the stop sign and Defendant Vasquez immediately turning on his full sirens); 01:44 (depicting Ms. Armstead pulling over)<br><br>Ex. E at 17 (Ms. Armstead's driving was not "out of the ordinary") | Defs' SJ Mtn., ¶ 9<br><br>Defs' SJ Mtn., Ex. 3 at 36:16-20<br><br>Defs' SJ Mtn., Ex. 9 at ¶ 5<br><br>Ex. N at 41:12-42:07 (testifying that "the amount of time it took [Ms. Armstead] to stop and pull over with the lights and the siren chirp" and "the vehicle moving from one lane to the next |

| | | | |
|---|---|---|---|
| | | Ex. H at 37:11-21 (testifying that it is possible a driver may change lanes to let the police car go around them)<br><br>Ex. T at 39:08-11 (testifying that it is possible a driver does not understand they are being pulled over)<br><br>Ex. M at 34:20-35:18 (testifying he had previously de-escalated a high-risk stop after a driver who failed to pull over for about a mile despite sirens and lights told him she did not stop earlier because she was scared and there was not really a place for her to pull over) | before actually coming to a rest on the other side of the stop sign" were behaviors indicative of flight)<br><br>Ex. V at 15 ("The vehicle stopped at the stop sign at Mustang Dr. and instead of turning left as the driver indicated by activating their left turn signal, continued north on Lane Dr. The vehicle finally came to a stop in the 1100 block of Lane Dr.")<br><br>Ex. W (Lopez Supplemental Report) at 2 ("The driver's behavior provided indicators and also raised significant concerns by activating the left turn signal but instead choosing to continue northbound.") |
| 7 | Mr. Lewis struggled to get out of the car, kneel down on the ground, and stand back up. | Ex. A at 4:26 (depicting Mr. Lewis holding onto the car door for support as he steps out of the car); at 5:23 – 5:32 (depicting Mr. Lewis slowly lowering himself to the ground); at 6:01 – 6:08 (depicting Defendant Love assisting Mr. Lewis in standing up)<br><br>Ex. I at 18:01-5; 19:15-20:03 (testifying that he told the officer it was hard to get down on his knees because of his age); 22:04-20 (testifying that the officer helped him stand up) | Defs' SJ Mtn., ¶ 12 ("Lewis…demonstrated no apparent difficulty complying with police directions.")<br><br>Defs' SJ Mtn., Ex. 1 at 5:23<br><br>Defs' SJ Mtn., Ex. 5, 41: 3-8 (testifying that he did not notice any of the physical commands being difficult for Mr. Lewis to follow)<br><br>Defs' SJ Mtn., Ex. 3, 46: 4-9 (testifying that he did not recall Mr. Lewis |

| | | | |
|---|---|---|---|
| | | Ex. H at 64:03-20 (testifying Mr. Lewis slowly kneeled down and needed assistance to stand up)<br><br>Ex. M at 41:2-6 (testifying that Mr. Lewis was slow to get down on the ground) | having difficulty following commands or difficulty kneeling)<br><br>Defs' SJ Mtn., Ex. 11 at ¶ 7 ("I observed no sign that Plaintiff Lewis had any difficulty understanding or complying with Officer Vasquez's directions.")<br><br>Ex. V at 17 ("Mr. Lewis was physically capable of complying with instructions that required motor control. He did not seem to have difficulty performing the required movements to exit the vehicle, turning around, walking backward, or kneeling.")<br><br>Ex. W at 4 ("Mr. Lewis did not demonstrate a lack of mobility, an inability to perform physical actions ordered by officers, or any real visible sign of disability.") |
| 8 | Mr. Lewis informed Defendant Love of his disability before and after he was placed in handcuffs. | Ex. I at 40:18-41:04; 41:17-42:05; 42:15-19; 46:15-22; 49:03-06; 49:18-50:01; 53:13-23 (testifying that he told the officer he could not have anything placed on his left arm before and after he was handcuffed; testifying that he told the officer that the handcuffs were too tight)<br><br>Ex. A at 6:33 – 7:05 (depicting the time between Mr. Lewis being | Defs' SJ Mtn., ¶ 13 ("Officer Love testified that Lewis never claimed to suffer from any disability and never informed Officer Love that placing handcuffs on Lewis' wrists may harm him.")<br><br>Defs' SJ Mtn., Ex. 11 at ¶ 9 ("Plaintiff Lewis never told me he had any medical condition or injury that prevented him from being handcuffed.") |

| | | | |
|---|---|---|---|
| | | handcuffed and being placed in the patrol vehicle where his conversation with Defendant Love is not captured by Defendant Vasquez's body camera) | Defs' SJ Mtn., Ex. 5, 42-43:13-1 (testifying that Mr. Lewis did not complain to him) <br><br> Defs' SJ Mtn., ¶ 26 ("Had Lewis complained about handcuffs being too tight, which he did not…") <br><br> Ex. V at 17 ("Mr. Lewis could not be heard on recordings protesting movements or stating he had medical issues."); at 19 (Mr. Lewis "did not mention anything about being disabled.") |
| 9 | Mr. Lewis informed Defendant Love that he could not be placed in handcuffs before and after he was placed in handcuffs. | Ex. I at 40:18-41:04 (testifying that he told Defendant Love he could not have anything placed on his left arm after he was handcuffed); 41:17-42:05 (testifying he told Defendant Love he could not have handcuffs on his arm before the handcuffs were applied); 42:15-19 (testifying he told Defendant Love he could not be placed in handcuffs as soon as he got out of the car); 46:15-22 (testifying he told Defendant Love that he could not have handcuffs placed on him before he kneeled on the ground); 49:03-06 (testifying that he told Defendant Love that he could not have handcuffs as he was placing his hands behind his back) | Defs' SJ Mtn., ¶ 13 <br><br> Defs' SJ Mtn., Ex. 11 at ¶ 9 <br><br> Defs' SJ Mtn., Ex. 5, 42-43:13-1 <br><br> Defs' SJ Mtn., ¶ 26 |

| 10 | Mr. Lewis spoke to Defendants Vasquez and Love while he was still seated in the vehicle. | Ex. A at 4:14 (depicting Mr. Lewis speaking as he steps out of the vehicle) | Defs' SJ Mtn., ¶ 28 ("[T]he video is clear that Lewis never told any officer he could not have anything on his wrist before he was handcuffed.")  Defs' SJ Mtn., Ex. 11 at ¶ 14 ("I had no conversation with Plaintiff Lewis while he was seated inside the Dodge Charger.") |
|---|---|---|---|
| 11 | Mr. Lewis spoke to Defendant Love before, during, and after his handcuffing. | Ex. A at 5:32 – 6:32 (depicting Mr. Lewis and Defendant Love speaking to each other before, during, and after his handcuffing)  Ex. H at 64:25-65:03 (testifying he could hear Defendant Love and Mr. Lewis's voices) | Defs' SJ Mtn., ¶ 28  Defs' SJ Mtn., ¶ 27 ("Lewis did not say anything else to the officer before being handcuffed,…, and even after Lewis had been handcuffed, Lewis did not claim to say anything to the officer while he was being placed in a patrol vehicle….") |
| 12 | Ms. Armstead informed Defendants Newport, Delgado, and Clausen of Mr. Lewis's disability before he was handcuffed. | Ex. D at 2:31-2:35 (depicting Ms. Armstead informing Defendants Newport and Delgado about Mr. Lewis's medical condition); 5:05-5:14 (depicting Ms. Armstead informing Defendant Clausen that she has been telling them throughout the whole stop that Mr. Lewis is a dialysis patient)  Ex. K at 24:05-16 (testifying that she told the officer that Mr. Lewis could not be handcuffed because he is a dialysis patient); 25:06-12 | Defs' SJ Mtn., ¶ 13 ("There is no testimony from any officer that he was aware of information that Lewis suffered a medical disability that required any accommodation or that placing handcuffs on Lewis; wrists [sic] may harm him.")  Defs' SJ Mtn., Ex. 10 at ¶ 5 ("I did not hear any information from anyone indicating Plaintiff Lewis may be harmed by having handcuffs applied to his wrists.") |

| | | | |
|---|---|---|---|
| | | (testifying that she told the officer that Mr. Lewis could not have handcuffs put on him)<br><br>Ex. I at 41:01-04 (testifying that Ms. Armstead informed officers that he was a dialysis patient and could not have anything tight, including handcuffs, on his left arm)<br><br>Ex. G at 24:1-3 (testifying that Ms. Armstead told him Mr. Lewis was a dialysis patient)<br><br>Ex. L at 30:24-31:02 (testifying that Ms. Armstead told him Mr. Lewis was on dialysis); 38:20-24 (testifying that Mr. Lewis being on dialysis was something to consider when handcuffing)<br><br>Ex. B at 3:26 - 4:17 (Ms. Armstead can be heard speaking to the officers during her handcuffing and before she is placed in the back of the patrol car)<br><br>Ex. A at 2:53 - 3:44 (Ms. Armstead can be heard speaking to the officers during her handcuffing and before she is placed in the back of the patrol car) | Ex. V at 19 ("Ms. Armstead can be heard saying that Mr. Lewis was a dialysis patient after they were released from handcuffs.")<br><br>Ex. W at 4 ("No audio or video supports her claim that she told officers on the scene, during the handcuffing procedure, that Mr. Lewis could not have handcuffs placed on his arm due to a medical condition.") |
| 13 | Defendants Vasquez, Delgado, Clausen, Love, and | Ex. K at 24:05-16; 25:06-12; 26:01-10 | Defs' SJ Mtn., ¶ 36 ("[T]here is no evidence showing the…officers had |

| | | | |
|---|---|---|---|
| | Newport knew about Mr. Lewis's medical condition. | Ex. D at 2:27-2:39; 5:06-5:10; 2:15-2:40 (showing Defendant Delgado standing in close proximity to Defendant Newport as Ms. Lewis speaks to him)<br><br>Ex. L at 30:24-31:02<br><br>Ex. G at 24:1-3<br><br>Ex. A at 4:09-5:37 (showing Defendant Vasquez in close proximity to Defendant Love at various points when Mr. Lewis spoke to him) | knowledge of both the resulting limitation and the necessary accommodation.") |
| 14 | Defendants Vasquez, Delgado, Clausen, Love, and Newport knew that Mr. Lewis's medical condition prevented handcuffing. | Ex. K at 24:05-16; 25:06-12<br><br>Ex. I at 41:01-04 (testifying that Ms. Armstead informed officers that he was a dialysis patient and could not have anything tight, including handcuffs, on his left arm) | Defs' SJ Mtn., ¶ 36 ("[T]here is no evidence showing the…officers had knowledge of both the resulting limitation and the necessary accommodation.") |
| 15 | Defendants saw the bandage on Mr. Lewis' arm before he was handcuffed. | Ex. A at 5:06 (depicting a large white bandage on Mr. Lewis's left arm, directly above his wrist); at 5:29 (Defendant Love places Mr. Lewis in handcuffs)<br><br>Ex. V at 19 ("A white bandage could be seen on Mr. Lewis' right arm just below the elbow joint when Mr. Lewis exited the vehicle.") | Defs' SJ Mtn., ¶ 38 ("At the time Officer Love placed handcuffs on Lewis, Officer Love had no indication that was visibly apparent on Lewis' wrist that indicated to Officer Love that Plaintiff was a person with a disability, or that Lewis could not have anything on his wrist.")<br><br>Defs' SJ Mtn., Ex. 11 at ¶ 10 ("I did not observe anything about the areas |

| | | | |
|---|---|---|---|
| | | Ex. B at 4:44 (a large bandage is clearly visible on Mr. Lewis's left arm as he exits the car) | of Plaintiff Lewis' arms in the proximity of his wrists that indicated to me he may be harmed by my simply placing handcuffs on his wrists.") <br><br> Defs' SJ Mtn., Ex. 9 at ¶ 7 ("I observed nothing that indicated to me that Plaintiff Lewis may be harmed by having handcuffs applied to his wrists.") |
| 16 | The scene was secure after Plaintiffs exited the vehicle. | Ex. M at 41:06-14 (testifying that Mr. Lewis was "very nice and orderly," he could not have "ask[ed] for a better suspect or subject," and Mr. Lewis did not try to flee or fight") <br><br> Ex. H at 46:10-11 (testifying that Mr. Lewis did not try to resist) <br><br> Ex. G at 29:03-30:01 (testifying that Ms. Armstead and Mr. Lewis did not engage in any behavior that raised safety concerns or indicated they would flee, and that they were compliant with commands) <br><br> Ex. T at 53:22-54:08 (testifying that Ms. Armstead was compliant, did not indicate she was going to flee or run, and was unarmed); 57:19-24 (testifying that Mr. Lewis seemed compliant and did | Defs' SJ Mtn., ¶ 29 ("[T]he scene was not yet secure when Officer love placed the handcuffs on Lewis' wrists.") <br><br> Defs' SJ Mtn., ¶ 35 ("The overwhelming evidence shows that the scene was not secured until after the Plaintiffs had been handcuffed and secured in a patrol vehicle, and the officers completed their protective sweep of Armstead's vehicle.") <br><br> Defs' SJ Mtn., Ex. 1 at 8:40 <br><br> Defs' SJ Mtn., Ex. 2 at 7:52 <br><br> Defs' SJ Mtn., Ex. 11 at ¶ 12 <br><br> Defs' SJ Mtn., Ex. 15, 59:21-24 |

| | | | |
|---|---|---|---|
| | | not indicate he was going to flee) | |
| 17 | Plaintiffs' handcuffs were not "promptly" removed. | Ex. A at Rosenberg 00032 at 8:42 – 12:23 (indicating the time between when the officers declared the scene secure and when Ms. Armstead's handcuffs were removed and Mr. Lewis appears in the frame without handcuffs)<br><br>Ex. H at 66:01-13 (testifying that after the search, Ms. Armstead and Mr. Lewis could not be released until after the officers spoke to Officer Cantu) | Defs' SJ Mtn., ¶ 29 ("After the scene was secured, the handcuffs were promptly removed from Lewis' wrists.")<br><br>Ex. V at 19 (Defendants "immediately upon receiving accurate suspect information released Ms. Armstead and Mr. Lewis.") |
| 18 | Defendant Newport was aware he could be named in Plaintiffs' suit shortly after it was filed. | Ex. L (Newport Deposition Transcript) 35:06-19; 39:14-40:03 (testifying that he learned about the lawsuit months after the stop and was not surprised to be included in the lawsuit) | Defs' SJ Mtn., ¶ 20 ("Officer Newport assumed he would not be sued.") |