United States District Court
Southern District of Texas
**ENTERED**
August 08, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL LEWIS and REGINA ARMSTEAD, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:22-cv-2593 |
| ROSENBERG POLICE DEPARTMENT, CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, JOHN CLAUSEN, and MATTHEW NEWPORT, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] are Defendants City of Rosenberg (the "City") and Officers Adam Vasquez ("Vasquez"), John Delgado ("Delgado"), Arthur Love ("Love"), John Clausen ("Clausen"), and Matthew Newport's ("Newport") (collectively, "Defendants") Motion for Final Summary Judgment (ECF No. 61), Defendants' Opposed Objections and Motion to Exclude, or Alternatively Limit, Testimony of Brian L. Landers (ECF No. 74), and Defendants' Opposed Motion to Exclude, or Alternatively Limit, Testimony of Alexandria Doyle

---

[1] On May 15, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 89).

(ECF No. 84).[2]  Based on a review of the motions and relevant law, the Court **RECOMMENDS** Defendants' Motion for Final Summary Judgment (ECF No. 61) be **GRANTED IN PART** and **DENIED IN PART**.  Further, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Opposed Objections and Motion to Exclude, or Alternatively Limit, Testimony of Brian L. Landers (ECF No. 74), and Defendants' Opposed Motion to Exclude, or Alternatively Limit, Testimony of Alexandria Doyle (ECF No. 84).

## I.   Background

Per the First Amended Complaint, this is a civil rights action brought under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (the "ADA") arising out of a traffic stop.  (ECF No. 57 at ¶¶ 2, 14).

### a.   Factual Background[3]

On November 6, 2020, an individual called 911 and reported that someone "pulled a gun out on some young kids."  (ECF No. 68-20[4] at 00:11-00:20, 00:36-00:41).  At first, the caller was unable to describe the person who had the gun but later described the person as a man, possibly "a mix of Black

---

[2] Also pending before the Court is Newport's Opposed Motion to Dismiss (ECF No. 59). The Court addresses the motion in a separately filed Memorandum and Recommendation. (ECF No. 93).

[3] "In evaluating a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party." *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (internal quotations omitted).

[4] ECF No. 68-20 refers to Audio recording: 911 Audio (on file with Plaintiffs).

and Hispanic." (*Id.* at 00:36-00:41, 01:20-02:45). Another caller reported that "kids" pulled guns on her and her family. (*Id.* at 03:30-03:42). As a result, a police dispatcher reported a weapons call, stating "someone has a gun pointed at kids," described the suspect's vehicle as a white charger with black rims and tinted windows, and noted that another vehicle may have been following the first vehicle. (ECF No. 68-20 at 04:16-04:58, 08:45-09:05; *see also* ECF No. 68-18[5]). The police dispatcher reported the last direction the car was seen traveling and stated there were about eight people total, four of which had guns. (ECF No. 68-20 at 5:50-5:55, 7:12-7:35; *see also* ECF No. 68-18). The police dispatcher did not provide a physical description of the suspects before the Officers conducted the traffic stop on Armstead's vehicle. (*See* ECF No. 68-18). Many of the Officers also testified that they did not know the suspects' physical description. (ECF No. 61-3 at 28:22-24; ECF No. 61-4 at 25:21-23; ECF No. 61-5 at 37:16-19).

An officer with the Rosenberg Police Department ("RPD") reported he spotted a white charger with black rims while driving in the area. (ECF No. 68-18 at 06:15-07:05). An officer also noted this would be a high-risk stop. (*Id.* at 07:25-07:30, 08:35-08:40).

---

[5] ECF No. 68-18 refers to Audio recording: Audio of Radio Traffic (on file with Plaintiffs).

Body camera footage shows police pull over[6] a vehicle that was ultimately driven by Plaintiff Regina Armstead ("Armstead"), a fifty-seven-year-old African American woman, with Plaintiff Michael Lewis ("Lewis"), a sixty-seven-year-old African American man, in the passenger seat. (ECF No. 61-1[7]).

Vasquez and other officers ordered Plaintiffs to turn off the vehicle, throw the keys out the window, and place their hands outside the vehicle. *Id.* Vasquez then directed Armstead to step out of the vehicle and step backwards towards the officers. (*Id.*). Armstead was also ordered to lift the back of her shirt, turn in a circle, and then walk backwards again. (*Id.*). Armstead complied with the Officers' orders. (*Id.*). Armstead was then handcuffed and placed in the back of a police vehicle. (*Id.*). While in the back of the police car, Armstead testified she told an officer that Lewis could not have handcuffs on due to him being a dialysis patient. (ECF No. 68-12 at 24:6-12). Clausen and Newport both testified that Armstead said Lewis was a dialysis patient. (ECF No. 68-8 at 24:1-3; ECF No. 68-13 at 30:24-25, 31:1-2).

---

[6] Vasquez testified Armstead seemed hesitant to stop her vehicle at first. (ECF No. 61-3 at 37:4-10).  Armstead alleges she initially tried to let police pass her because she assumed that RPD officers were pursuing another driver. (ECF No. 57 at ¶ 17).

[7] ECF No. 61-1 refers to Videotape: Vasquez Body Cam (on file with Defendants).

4

Vasquez then ordered Lewis to step out of the vehicle.  Like Armstead, Vasquez ordered Lewis to lift the back of his shirt and turn in a circle before being told to walk backwards again.  (ECF No. 61-1).  Lewis complied with the Officers' orders.  Lewis was then told to get on his knees.  (*Id.*).  Lewis appears to struggle to kneel, but eventually does so.  (*Id.*).  Another officer approached Lewis and handcuffed him.  (*Id.*).  It appears that the handcuffing officer and Lewis spoke to each other, but the body cam does not pick up the audio to know what was said.  (*Id.*).  Lewis offers conflicting testimony on whether he informed the Officers he could not have handcuffs on his left wrist because he had a fistula[8] in his left arm.  (ECF No. 61-7 at 21:6-12, 23:8-17, 40:18-25, 41:17-20, 49:18-25, 50:1-3; ECF No. 68-10 at 53:13-23).  During his deposition, Lewis first stated he did not say anything to the officer handcuffing him (ECF No. 61-7 at 21:6-12, 23:8-10) but then stated he mentioned "the Cowboys" to an officer (*id.* at 23:13-17).  Later in the same deposition, Lewis stated he told an officer "I cannot have anything on my left arm at all" immediately after he was handcuffed.  (*Id.* at 40:18-25, 41:1, 17-20).  Then, in the same deposition, Lewis stated he told an officer that came up to the vehicle, before Armstead or Lewis exited the vehicle, that he could not have handcuffs on.  (*Id.* at 49:18-25, 50:1-

---

[8] The term "fistula" can also be used to describe a surgically made passageway, and the Court assumes that is how it is being used here.

3).  Video footage from the incident does not show an officer who approached the vehicle before Armstead or Lewis exited the vehicle.  (*See* ECF No. 68-3[9]).  Ultimately, Lewis was handcuffed and placed in the back of a police vehicle.  (*Id.*).

While Plaintiffs were in the back of the police vehicles, the Officers approached Armstead's vehicle.  (*Id.*).  The Officers viewed the inside of the vehicle, including the vehicle's trunk.  (*Id.*).  The Officers ultimately found no weapons, contraband, or other evidence of illegal activity.  (*Id.*).  Officers then let Lewis and Armstead out of the police vehicles, removed their handcuffs, and permitted them to leave the scene.  The entire encounter between RPD and Plaintiffs lasted approximately twelve minutes.  (*See* ECF No. 61-1).

Lewis alleges that his medical device in his wrist malfunctioned because of the handcuffing, which led to Lewis having to undergo three separate medical procedures to replace the fistula.  (ECF No. 57 at ¶ 37; *see* ECF No. 68-10 at 62:2-19, 64:15-17).

b.  Procedural History

On August 4, 2022, Plaintiffs brought a civil rights action under 42 U.S.C. § 1983, Title II of the ADA, and Texas state law concerning the alleged

---

[9] ECF No. 68-3 refers to Videotape: Vasquez Patrol Unit Cam (on file with Plaintiffs).

illegal and violent detention, search, arrest, and seizure against the RPD, the City, Delgado, Ryan Cantu,[10] Vasquez, Love, and Clausen (the "Original Defendants"). (ECF No. 1). On September 12, 2022, the Original Defendants filed a Motion to Dismiss. (ECF No. 18).

On May 25, 2023, District Court Judge Andrew Hanen granted in part and denied in part the Original Defendants' Motion to Dismiss. (ECF No. 39). Judge Hanen granted the Original Defendants' Motion to Dismiss on the following causes of action: unlawful detention, illegal seizure, civil theft/conversion against the City and RPD, Armstead's excessive force claim, Lewis' claim for unlawful search and unlawful seizure, and all municipal liability claims against the City and RPD. (*Id.* at 40–41). Judge Hanen denied the Original Defendants' Motion to Dismiss as it related to Plaintiffs' claims for unlawful arrest, Armstead's claim for unlawful search, and Lewis' ADA and excessive force claims. (*Id.* at 41).

On November 14, 2023, Plaintiffs filed an "Opposed Motion For Leave Of Court To File First Amended Complaint Adding New Related Party Matthew Newport, In His Individual Capacity, As A Defendant." (ECF No. 49). On December 20, 2023, Judge Hanen granted Plaintiffs' motion. (ECF No. 56).

---

[10] Ryan Cantu was dismissed from this case with prejudice on January 19, 2024. (ECF No. 64).

Accordingly, on the same day, Plaintiffs filed their First Amended Complaint, asserting  claims for unlawful arrest, Armstead's claim for unlawful search, and Lewis' ADA and excessive force claims.  (*See* ECF No. 57).

On January 11, 2024, Defendants filed the instant Motion for Summary Judgment.  (ECF No. 61).  Plaintiffs have filed their response in opposition. (ECF No. 68).

## II.   Legal Standard

### a.   Summary Judgment Standard

Federal Rule of Civil Procedure ("Rule") 56(a) instructs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Bazan ex rel. v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis omitted); *see Aguirre v. City of San Antonio*, 995

8

F.3d 395, 406 (5th Cir. 2021).  "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."  *Bazan*, 246 F.3d at 489 (emphasis omitted).  The Court must view the evidence in a light most favorable to the nonmovant.  *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact.  *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323).  The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof.  *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).  If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading.  *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden.  *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th

9

Cir. 2003).  However, where there is evidence of a genuine factual dispute, such disputes are resolved in favor of the nonmoving party "when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).  Further, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023), *as revised* (May 19, 2023).

"A qualified immunity defense alters the usual summary judgment burden of proof.  Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."  *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

b. <u>Section 1983</u>

Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights.  42 U.S.C. § 1983.  Importantly, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights

10

elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979).  To prevail upon a Section 1983 claim, a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

## III.   Discussion

Pending before the Court are Defendants' Motion for Summary Judgment (ECF No. 61), Defendants' Objections and Motion to Exclude, or Alternatively Limit, Testimony of Brian L. Landers (ECF No. 74), and Defendants' Opposed Motion to Exclude, or Alternatively Limit, Testimony of Alexandria Doyle (ECF No. 84).  The Court will address each motion in turn.

### a.   Defendants' Objections and Motion to Exclude, or Alternatively Limit, Testimony of Brian L. Landers (ECF No. 74)

Defendants object to the admission of testimony from Brian L. Landers ("Landers") and move the Court to exclude, or alternatively limit, Landers' testimony.  (ECF No. 74).

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  *See Simpson v. James*, 903 F.2d 372, 378 n.20 (5th Cir. 1990). Federal Rule of Evidence Rule 702 states:

11

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"Under [Federal] Rule [of Evidence] 702, the court must determine whether the proposed expert witness has training or experience, and will offer opinions, sufficiently related to the issues and evidence before the court for the expert's testimony to assist the trier of fact." *Flores v. Harris*, No. 4:17-cv-3817, 2019 WL 1426313, at *11 (S.D. Tex. Mar. 29, 2019).  The court must also make a "preliminary assessment of whether that reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology can be applied to the facts at issue." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993)).

Landers, who Plaintiffs are proffering as a law enforcement expert, states that in preparing his report, he reviewed the depositions of Ryan Cantu, Chief Jonathan White, Clausen, Delgado, and Vasquez; Defense Responses to Interrogatories; the relevant 911 audio and radio audio; model policies from the International Association of Chiefs of Police; a book titled "Planning for

12

Effective Law Enforcement;" materials from the Legal and Liability Risk Management Institute; the docket for the instant case; Rosenberg Police Communications CAD Notes; Rosenberg Police Department Policies on use of force and handcuffing and prisoner restraints; the relevant incident report; an article from Police Magazine; three courses from the Texas Commission on Law Enforcement; a training document from the Texas Police Chiefs Association; articles from the U.S. Department of Justice's webpage; and Vasquez's body camera footage. (ECF No. 68-6 at 30).

Based on his review of these documents and his experience, Landers offers three conclusions. Landers opines "the initial decision and continued tactic of using a high-risk traffic stop on the vehicle driven by Regina Armstead [was not] compliant with training and guidance offered by the State of Texas and nationally-accepted procedures in the profession of law enforcement." (*Id.* at 14). Landers also concludes "the detention and handcuffing of Armstead and Lewis [was not] in compliance with training, policy, and nationally-recognized police practices." (*Id.* at 19). Finally, Landers opines "Rosenberg Police Department [did not] provide adequate training, resources and supervision to ensure compliance with their policy on the proper use of, or alternative methods to, restraints on a person with a disability." (*Id.* at 24).

13

Although expert testimony is not objectionable simply "because it embraces an ultimate issue," an expert's opinion on ultimate issues can be excluded if it is otherwise inadmissible under the Federal Rules of Evidence. FED. R. EVID. 704. "When opinion testimony combines law and fact, the question is whether the opinion will help the trier of fact to understand the evidence or to determine a fact in issue." *Flores*, 2019 WL 1426313, at \*12 (internal quotations omitted). Expert opinions as to whether a defendant violated the law are inadmissible. FED. R. EVID. 702; *see Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009). Whether an individual officer violated the Fourth Amendment, whether a clearly established law was violated, and whether the City violated the ADA are all legal questions that are not proper subject matter for expert testimony. *See Flores*, 2019 WL 1426313, at \*12. Thus, to the extent Landers offers legal conclusions, Defendants' objection is sustained, and the Court does not consider such testimony.

When a *Daubert* challenge is made to the testimony of a proposed expert, "a district court must create a record of its *Daubert* inquiry and articulate its basis for admitting expert testimony." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016) (internal quotations omitted). The court's gatekeeping role, ensuring that testimony is relevant and reliable, extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd.*

14

*v. Carmichael*, 526 U.S. 137, 147 (1999).  Under Federal Rule of Evidence 702, the Court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.  An expert may not present opinion testimony that goes beyond the scope and extent of his expertise.  *See Goodman*, 571 F.3d at 399.

While Defendants do not appear to challenge Landers' qualifications, the Court notes, as does Plaintiffs, that Landers' opinions are based on his background, education, training, experience, and work in the field as a law enforcement officer, trainer, instructor, and professor.  (ECF No. 77 at 9).  Further, to the extent they do not provide legal conclusions, Landers' opinions are relevant to Plaintiffs' case.  Lastly, Landers explained in detail his methodology in forming his opinions.  (ECF No. 68-6 at 13–14).  Thus, the Court finds Landers' expert testimony admissible where Landers does not offer legal conclusions.

> b. Defendants' Objections to Plaintiffs' Summary Judgment Exhibits (ECF No. 75)

Defendants' lodge five objections to Plaintiffs' Summary Judgment exhibits.  First, Defendants object to the admission of Plaintiffs' Exhibit 6

because the "testimony from Brian L. Landers is inadmissible for the reasons discussed fully in" Defendants' Objections and Motion to Exclude, or Alternatively Limit, Testimony of Brian L. Landers (ECF No. 74).  (ECF No. 75 at 1).  As discussed above, to the extent Landers offers legal conclusions, Defendants' objection is sustained, and the Court does not consider such testimony.

Second, Defendants' object to Plaintiffs' Exhibit 10, Lewis' Deposition Transcript, at 41:1-4 because Lewis' testimony contains inadmissible hearsay. (ECF No. 75 at 2).  Plaintiffs do not oppose Defendants' objection to ECF No. 68-10 at 41:1-4.  (ECF No. 78 at 1 n.1).  Accordingly, Defendants' objection to Plaintiffs' Exhibit 10, Lewis' Deposition Transcript, at 41:1-4 is sustained.

Defendants' remaining objections all argue, under the rule of optional completeness, that additional testimony is required to provide relevant context for Plaintiffs' argument regarding testimony in (1) Plaintiffs' Exhibit 13, Newport's Deposition Transcript; (2) Plaintiffs' Exhibit 19, Police Dispatcher Simon Cuellar's Deposition Transcript; and (3) Plaintiffs' Exhibit 22, Police Dispatcher Christina Salinas' Deposition Transcript.  (ECF No. 75 at 2–3).

"Federal Rule of Evidence 106, which 'partially codifies' the common law rule of completeness, 'guards against admission into evidence of truncated statements likely to present an out-of-context picture to the jury.'"  *United*

16

*States v. Herman*, 997 F.3d 251, 263 (5th Cir. 2021) (quoting *United States v. Jones*, 663 F.2d 567, 571 (5th Cir. 1981)).   Federal Rule of Evidence 106 provides, "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time."[11] "[Federal] Rule [of Evidence] 106 [also] requires the introduction of a writing or recorded statement only when the omitted portion is necessary to qualify, explain, or place into context the portion already introduced." *Herman*, 997 F.3d at 264 (internal quotations omitted).   While this rule encourages completeness, the "portion sought to be admitted must be relevant to the issue" and "only the parts which qualify or explain the subject matter of the portion offered by the opponent need be admitted." *Id.* (internal quotations omitted). Further, while this rule allows a party to correct an incomplete and misleading impression created by the introduction of part of a writing, it does not allow a party to introduce writings that affirmatively advance their own theory of the case. *Id.*

---

[11] Similarly, Rule 32(a)(6) provides, "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts."

As to Plaintiffs' Exhibit 13, Newport's Deposition Transcript, at 30:24-25 and 31:1-2, Defendants argue this portion of Newport's testimony appears to support Plaintiffs' argument that Armstead informed Newport that Lewis was a person with a disability and could not be handcuffed by the wrist.  (ECF No. 79 at 11).  Defendants offer Exhibit 20 (ECF No. 75-4) to supplement Newport's testimony with "necessary context."  (ECF No. 79 at 11).  In the supplemental exhibit, Newport testified he did not recall Armstead warning him that Lewis could not be handcuffed, and Newport did not state he believed Lewis was disabled.  (ECF No. 75-4 at 31:3-5).  Due to the relevancy of these statements, Defendants' objection is sustained, and the Court will consider Defendants' supplemental Exhibit 20.

As to portions of Plaintiffs' Exhibit 19, Police Dispatcher Simon Cuellar's ("Cuellar") Deposition Transcript, Defendants argue the crux of Plaintiffs' argument is that the Officers received a physical description of "mixed-race teenage suspects" who pointed weapons at children.  (ECF No. 79 at 2). Defendants offer Exhibit 19 (ECF No. 75-3) to supplement Cuellar's testimony with "necessary information."  (ECF No. 79 at 3).  In the supplemental exhibit, Cuellar testified regarding the description of the suspects she received from the 911 call.  (*See* ECF No. 75-3; ECF No. 79 at 3-5).  Due to the relevancy of

these statements, Defendants' objection is sustained, and the Court will consider Defendants' supplemental Exhibit 19.

Finally, as to portions of Plaintiffs' Exhibit 22, Police Dispatcher Christina Salinas' Deposition Transcript, Defendants argue Plaintiffs cite their portion of the exhibit as support for their argument that Salinas provided a physical description of the people who pointed weapons at children to the Officers before the Officers pulled Armstead's vehicle over.  (ECF No. 79 at 6). Defendants offer Exhibit 18 (ECF No. 75-2) to supplement Salinas' testimony with the "appropriate context."  (ECF No. 79 at 7).  In the supplemental exhibit, Salinas testified that the identities of the suspects were unclear.  (*See id.* at 8). Due to the relevancy of these statements, Defendants' objection is sustained, and the Court will consider Defendants' supplemental Exhibit 18.

    c.  <u>Defendants' Motion to Exclude, or Alternatively Limit, Testimony of Alexandria Doyle (ECF No. 84)</u>

Defendants object to the admission of testimony from Alexandria Doyle ("Doyle") and move the Court to exclude, or alternatively limit, Doyle's testimony.  (ECF No. 84).

As previously discussed, an expert may present opinion testimony with respect to "scientific, technical, or other specialized knowledge" if said testimony is relevant, reliable, and "will assist the trier of fact to understand

the evidence or to determine a fact in issue." FED. R. EVID. 702; *see Daubert*, 509 U.S. at 589.

In preparing her report, Doyle stated she conducted interviews with Lewis and Armstead using the Administration of the Minnesota Multiphasic Personality Inventory 2-Revised (the "MMPI") and reviewed Lewis' medical records, Plaintiffs' Original Complaint, and video of Lewis and Armstead's traffic stop. (ECF No. 85 at 1). Based on her review of these documents and her experience, Doyle concludes Lewis and Armstead "struggle with the psychological effects of being subjected to an unreasonable search and seizure in a police high-risk stop." (*Id.* at 6).

As with Landers' testimony, whether an individual officer violated the Fourth Amendment, whether a clearly established law was violated, and whether the City violated the ADA are all legal questions that are not proper subject matter for expert testimony. *See Flores*, 2019 WL 1426313, at *12. To the extent Doyle offers legal conclusions, Defendants' objection is sustained, and the Court does not consider such testimony.

Defendants argue Doyle is not qualified to opine regarding the propriety of police action or to render medical opinions regarding "the cause of maintenance or repair of dialysis hardware," and the Court agrees. (ECF No. 84 at 9). Doyle states she has been a licensed clinical and forensic psychologist

20

for thirty-seven years.  (ECF No. 85 at 1).  While Doyle may offer an opinion on Plaintiffs' mental health, "[a]n expert may not present opinion testimony that goes beyond the scope and extent of [her] expertise." *Windham v. Harris Cnty. Tex.*, No. 4:13-cv-1576, 2016 WL 10932920, at *1 (S.D. Tex. Mar. 21, 2016).  Further, while Defendants challenge Doyle's administration of the MMPI, courts have recognized the MMPI is a method that has been tested and reviewed in the field of psychology.  *See Ferguson v. Lenoir*, No. 17-cv-1570, 2021 WL 7907338, at *2 (W.D. La. June 25, 2021).  Lastly, Doyle's testimony is relevant to Lewis' alleged injuries.  Accordingly, the Court strikes any and all of Doyle's opinions that go beyond her conclusions on Plaintiffs' mental health.

### d.  Defendants' Motion for Summary Judgment (ECF No. 61)

Defendants move for summary judgment, arguing (1) the claims against Newport are barred by limitations; (2) the Officers did not violate the Fourth Amendment; (3) the City was not required to accommodate Lewis' alleged disability; and (4) Plaintiffs fail to refute any Officer's qualified immunity assertion.  (ECF No. 61 at 12–23).

#### i.  Newport

Defendants first argue that the claims against Newport are barred by limitations.  (*Id.* at 12–13).  Specifically, Newport argues Plaintiffs' First

21

Amended Complaint was not filed until December 20, 2023, which is more than one year after the limitations period governing Plaintiffs' claims under § 1983 expired.  (*Id.*).  Plaintiffs contend[12] their claims are not barred because their First Amended Complaint relates back to their timely-filed original complaint.[13]  (ECF No. 66 at 12).

"[U]nder the doctrine of relation-back, a plaintiff may amend his complaint 'to add a new party, claim or defense that arises out of the conduct, occurrence or transaction alleged in [the] original pleading and that would otherwise be time-barred.'"  *Salazar v. Texas*, No. 5:16-cv-292, 2020 WL 13609390, at *6 (S.D. Tex. Apr. 23, 2020) (quoting *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 945–46 (S.D. Tex. 2013)).  If an amended pleading relates back, it is "treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint."  *Ultraflo Corp.*, 926 F. Supp. 2d at 946; *see Jacobsen v. Osborne*, 133 F.3d 315, 318–19 (5th Cir. 1998).  The federal relation-back doctrine is governed by Rule 15, which provides, in relevant part:

---

[12] Plaintiffs note in their Response to Defendants' Motion for Summary Judgment that their response to Newport's statute of limitations argument is "briefed in greater detail in their Response in Opposition to Defendant Newport's Motion to Dismiss."  (ECF No. 68 at 39).  Thus, the Court's citations regarding Plaintiffs' argument will refer to their Response in Opposition to Defendant Newport's Motion to Dismiss.

[13] Plaintiffs alternatively argue equitable tolling applies.  (ECF No. 66 at 12). However, the Court need not reach this argument.

22

(c) Relation Back of Amendments.

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c). "Rule 15 is biased toward resolution of disputes on their merits because 'repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.'" *Wilson v. City of Mission, Tex.*, No. 7:18-cv-00399, 2020 WL 2079359, at *6 (S.D. Tex. Apr. 29, 2020) (quoting *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010)).

"The Fifth Circuit has already held in the context of a 42 U.S.C. § 1983 action that Rule 15(c)(1)(A) is inapplicable." *Id.* at *3 (citing *Balle v. Nueces*

*Cty.*, 952 F.3d 552, 557 (5th Cir. 2017)).  Therefore, "the addition of a new defendant does not relate back to the original complaint unless what is now Rule 15(c)(1)(C) applies." *Ultraflo Corp.*, 926 F. Supp. 2d at 946.  Under that subsection, a plaintiff has the burden to satisfy "the three elements of the rule: (1) same transaction, (2) notice, and (3) mistake." *Wilson*, 2020 WL 2079359, at *3.

Newport does not appear to dispute that (1) Plaintiffs' claims against him arise out of the same conduct in Plaintiffs' Original Complaint, (2) he had timely notice of Plaintiffs' suit, and (3) he knew or should have known the action would have been brought against him but for a mistake concerning his identity.  Instead, Newport simply argues "Plaintiffs knew or had sufficient knowledge to know Plaintiffs had been injured as a result of Plaintiffs' interactions with the officers" and were, thus, required to file suit within two years of the incident at issue.  (ECF No. 61 at 12).

Plaintiffs assert "they did not know of Newport's identity or involvement until after the statute of limitations passed, despite their diligent prosecution of their case, because Defendants' own records concealed, and their disclosures obfuscated, [] Newport's involvement." (ECF No. 66 at 13).  Plaintiffs also note Judge Hanen granted Plaintiffs' "Opposed Motion For Leave Of Court To File First Amended Complaint Adding New Related Party Matthew Newport, In

24

His Individual Capacity, As A Defendant," insinuating that Judge Hanen already considered the matter and agreed that Plaintiffs could add Newport in their First Amended Complaint. (*See* ECF No. 56; ECF No. 66 at 12).

Given Rule 15's bias to resolving issues on the merits and Plaintiffs' argument that they satisfy the three elements of Rule 15, the Court recommends a finding that Plaintiffs' claims against Newport relate back to the date of the original pleading under Rule 15(c) and, thus, are not barred by the statute of limitations. *See Wilson*, 2020 WL 2079359, at *6.

### *ii. Qualified Immunity of the Officers*

While the Officers first argue Plaintiffs fail to allege a Fourth Amendment violation, they also argue Plaintiffs' claims are insufficient to overcome the Officers' qualified immunity defense. (ECF No. 61 at 8, 24).

"At summary judgment, a qualified-immunity analysis requires evaluating: (1) whether a reasonable jury could find that an official violated a statutory or constitutional right, and (2) whether the right at issue was 'clearly established' so that, at the time, a 'reasonable person would have known' they were violating that right." *Zinter v. Salvaggio*, 610 F. Supp. 3d 919, 934 (W.D. Tex. 2022), *appeal dismissed*, No. 22-50700, 2022 WL 18587913 (5th Cir. Nov. 17, 2022) (citing *Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021)). A court may decide these two elements in any order. *Pearson v. Callahan*, 555

U.S. 223, 236 (2009). "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (internal quotations omitted).

### 1. False Arrest

Defendants first challenge Plaintiffs' false arrest claims, arguing there is no evidence either Plaintiff was arrested. (ECF No. 61 at 13). Conversely, Plaintiffs argue the Officers' unreasonable conduct escalated Plaintiffs' traffic stop into *de facto* arrests. (ECF No. 68 at 8).

A "[d]*e facto* arrest requires restraint 'of the degree which the law associates with formal arrest.'" *Smith v. Heap*, 31 F.4th 905, 911 (5th Cir. 2022) (quoting *Windham*, 875 F.3d at 240). Typically, "[a]n arrest occurs when, in view of the all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Lincoln v. Turner*, 874 F.3d 833, 841 (5th Cir. 2017) (internal quotations omitted). "For example, [the Fifth Circuit] held that a defendant endured a *de facto* arrest when, after a search of his car turned up nothing, police handcuffed him, stuffed him into a police vehicle, and 'transported [him] to different locations' for more than ninety minutes." *Heap*, 31 F.4th at 911 (quoting *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008)). While "there is no constitutional stopwatch on

26

traffic stops[,] . . . [t]he key requirement is that the stop last no longer than is necessary to effectuate its purpose." *Windham*, 875 F.3d at 241 (internal quotations and alterations omitted).

Here, Plaintiffs argue the "traffic stop escalated into a *de facto* arrest as soon as Defendants, outnumbering [P]laintiffs five to two, stopped Plaintiffs at gunpoint and Defendant Vasquez instructed [] Armstead to throw the keys out of the vehicle's window." (ECF No. 68 at 11–12). Plaintiffs also argue "Defendants' additional actions—ordering each Plaintiff out of the car at gunpoint, forcing them to kneel on the ground, handcuffing each of them, and locking them in separate patrol vehicles—would certainly lead a reasonable person to believe their freedom was restricted to the point of arrest." (*Id.* at 12).

Despite viewing the summary judgment evidence in the light most favorable to Plaintiffs, the Court finds the Officers' actions reasonable under the circumstances and the stop was not converted into a *de facto* arrest. The Fifth Circuit has found it is "reasonable to detain a suspect at gunpoint, handcuff [him], and place [him] in a police car" during an investigatory stop. *United States v. Thomas*, 997 F.3d 603, 615 (5th Cir. 2021). Case law also illustrates this type of detention is common when police officers are investigating crimes involving weapons, similar to the investigation here. *See*

27

*id.* (detaining suspects by ordering them to the ground and handcuffing them while investigating an aggravated robbery involving a weapon); *United States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013) (handcuffing and placing a suspect in the back of a police car when officers knew the suspect had purchased multiple guns and, thus, believed he was armed and dangerous); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968) (holding that if police have reasonable grounds to believe a suspect is "armed and dangerous," they may take "swift measures to discover the true facts and neutralize the threat of harm"); *United States v. Hensley*, 469 U.S. 221, 235 (1985) (holding officers were "authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop").

Further, the interactions between the Officers and Plaintiffs lasted approximately twelve minutes from start to finish, with Plaintiffs handcuffed and sitting in the back of a police vehicle for an even shorter amount of time. (*See* ECF Nos. 61-1, 61-2[14]).  While the Court agrees with Plaintiffs that there is no minimum durational requirement for a *de facto* arrest, these facts do not suggest a *Terry* stop that was "unjustifiably prolonged."  *Heap*, 31 F.4th at 911; *see Windham*, 875 F.3d at 241 (finding a ninety-minute traffic stop that ended

---

[14] ECF No. 61-2 refers to Videotape: Clausen Body Cam (on file with Defendants).

in release was not a *de facto* arrest); *Thomas*, 997 F.3d at 615 (finding the detention of a man, who was handcuffed on the ground for ten minutes, was permissible under *Terry*); *United States v. Campbell*, 178 F.3d 345, 350 (5th Cir. 1999) ("The entire detention took between 10 and 25 minutes—not an unreasonable amount of time under the circumstances."); *cf. Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007). (holding that an arrest occurred where police handcuffed a woman's hands behind her back and placed her in a police car for thirty to forty-five minutes after an officer previously threatened to arrest her).

Thus, the Court finds Defendants are entitled to judgment as a matter of law on Plaintiffs' false arrest claim.[15]   The Court recommends Defendants' Motion for Summary Judgment be granted as to Plaintiffs' false arrest claim.

## 2. Illegal Search

Defendants also challenge Armstead's illegal search claim, arguing it was not unreasonable for officers to perform a protective sweep of the Charger. (ECF No. 61 at 17).   Conversely, Armstead contends it was unreasonable to search her vehicle because the search took place after any reasonable need for a search had passed.  (ECF No. 68 at 13–14).

As the Fifth Circuit has explained:

---

[15] Because the Court does not find a Fourth Amendment violation as to Plaintiffs' false arrest claims, the Court need not reach the second prong of the Officers' qualified immunity defense.

> Under *Long*, [the Fifth Circuit] has found protective searches of
> automobiles valid under the Fourth Amendment where the police
> officer had an objective reason to fear for his safety or the safety of
> others.  Where [the Fifth Circuit has] rejected a protective search,
> the officers had almost nothing on which to base a concern for
> safety; the police did not observe unusual weapons, nor did the
> individuals act in a particularly suspicious manner.

*United States v. Wallen*, 388 F.3d 161, 165 (5th Cir. 2004).  The Fifth Circuit

has also made clear "a protective sweep for weapons during a traffic stop is

justified where the officers reasonably believe that someone within police

custody might gain access to weapons, either during the traffic stop or once

they are returned to their vehicles." *Davila v. United States*, 713 F.3d 248, 259

(5th Cir. 2013).

"'[T]he investigative methods employed [during a traffic stop] should be

the least intrusive means reasonably available to verify or dispel the officer's

suspicion in a short period of time.'" *United States v. Valadez*, 267 F.3d 395,

398 (5th Cir. 2001) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

"However, once an officer's suspicions have been verified or dispelled, the

detention must end unless there is additional articulable, reasonable

suspicion." *Id.*

Here, Defendants argue that:

[g]iven the officers were conducting a felony traffic stop in response
to a potential weapons call, the purpose of the protective sweep
was to eliminate the possibility of any potential hiding suspects or

30

potential weapons that may have been inside, or that Plaintiffs may have gained access to upon being allowed to return to the vehicle.

(ECF No. 61 at 19.)  In response, Plaintiffs argue "there was no threat posed by Ms. Armstead and Mr. Lewis to justify an additional Fourth Amendment invasion" after:

> (1) Mr. Lewis and Ms. Armstead had complied with the officer's instructions on how to exit the car and submit to an arrest; (2) Ms. Armstead had asked in genuine confusion why Defendants were ordering her to her knees at gunpoint; (3) Defendants observed that neither Ms. Armstead nor Mr. Lewis had any weapons on their person; (4) Defendants observed the age of both Plaintiffs; (5) Defendants observed the limited mobility of Mr. Lewis; and (6) both Plaintiffs credibly affirmed that there was nobody else in the vehicle.

(ECF No. 68 at 14).  Stated another way, Plaintiffs argue "[t]here was no threat which required a search through the cabin of the car" or "required officers to pop the trunk of the vehicle."[16]  (*Id.* at 15).

Here, police dispatchers received two weapons calls stemming from the same incident.  (*See* ECF No. 68-20).  Based on the information provided, one

---

[16] Plaintiffs also argue the Officers "did not search in locations in the vehicle where guns could have been stashed by either Plaintiff." (*Id.* at 16).  Plaintiffs cite to two officer deposition transcripts; however, the Court was unable to find the corresponding statements that support Plaintiffs' contentions.  Plaintiffs also cite to *Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir. 1993) for the purpose that the Fifth Circuit noted officers "did not thoroughly search" a car for weapons, which Plaintiffs assert suggests the officers needlessly conducted the search.  (ECF No. 68 at 16).  Having reviewed *Lampkin*, this Court does not find that the case stands for the proposition that weapons could not be stored in a vehicle's trunk.

of the police dispatchers reported via police radio that (1) a suspect pointed a gun at children; (2) dispatch received multiple calls regarding the incident; (3) a description of the make, model, and characteristics of a vehicle; and (4) the direction the vehicle was traveling in. (*See* ECF No. 68-18). Police dispatchers did not provide information regarding the suspects' physical descriptions. (*See id.*; ECF No. 61-3 at 28:22-24; ECF No. 61-4 at 25:21-23; ECF No. 61-5 at 37:16-19).

Vasquez, having heard the report over the radio, ultimately conducted a "high-risk stop" of Armstead's vehicle. (ECF No. 68-18 at 08:35-08:40). Officer Vasquez considered the stop "high-risk" because (1) it was a weapons call; (2) the vehicle was traveling from the area where the incident occurred; (3) the vehicle matched the description provided over the radio; and (4) the driver of the vehicle was "being hesitant to stop." (ECF No. 61-3 at 37:1-10). Based on the protocol for a high-risk stop, the Officers did not consider the scene secure until they were able to look inside the car and trunk. (ECF No. 61-3 at 48:2-8, 50:14-17; ECF No. 61-4 at 35:17-25; ECF No. 61-15 at 59:21-24). Once the Officers opened the trunk to verify no one was inside and that it was free of weapons, Armstead and Lewis were released from the back of the police cars and their handcuffs. (*See* ECF No. 61-1).

As an initial matter, because Vasquez did not participate in the sweep of Armstead's vehicle, the Court recommends summary judgment be granted as to Vasquez on Armstead's illegal search claim. Additionally, as previously discussed, "a protective sweep for weapons during a traffic stop is justified where the officers reasonably believe that someone within police custody might gain access to weapons . . . once they are returned to their vehicles." *Davila*, 713 F.3d at 259. Because the Officers were responding to a weapons call and it was possible that weapons could have been located inside the trunk of Armstead's vehicle, the Court finds that the Officers used "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Valadez*, 267 F.3d at 398 (internal quotations omitted); *see Michigan v. Long*, 463 U.S. 1032, 1048 (1983) ([W]e have also expressly recognized that suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed."). The Officers' sweep "was restricted to those areas . . . that could contain a weapon." *Long*, 463 U.S. at 1048. Further, once the Officers' suspicions were "dispelled," Armstead and Lewis were immediately released. *Valadez*, 267 F.3d at 398.

"The Supreme Court has long held that the 'touchstone of Fourth Amendment analysis is reasonableness.'" *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). In

this case, the Court finds there is no genuine issue of material fact that "the officers did not act unreasonably in taking preventive measures to ensure that there were" no weapons within immediate view of Armstead's vehicle and that "the balancing required by *Terry* clearly weighs in favor of allowing the police" to view the trunk of Armstead's vehicle before releasing Armstead and Lewis back to the vehicle. *Long*, 463 U.S. at 1051. Accordingly, the Court recommends the Officers' Motion for Summary Judgment be granted as to Armstead's illegal search claim.[17]

### 3. Excessive Force

Lastly, the Officers challenge Lewis' excessive force claim, arguing summary judgment is proper because there is no evidence any officer used excessive force against Lewis. (ECF No. 61 at 15). Conversely, Lewis contends (1) handcuffing is sufficient to state an excessive force claim where the plaintiff sustains non-de minimis injuries; (2) whether and when Lewis notified the Officers about his medically vulnerable wrist is disputed; (3) it was unreasonable to handcuff Lewis and keep him in handcuffs when he was fully compliant and there was no active threat; and (4) every officer on the scene

---

[17] Because the Court does not find a Fourth Amendment violation as to Armstead's illegal search claim, the Court need not reach the second prong of the Officers' qualified immunity defense.

34

was aware of the need for a handcuffing alternative for Lewis.  (ECF No. 68 at 16–24).

"To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *See Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (internal quotations omitted).  "Because reasonableness is the ultimate touchstone of the Fourth Amendment, excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer. *Terrell v. Richardson*, 695 F. Supp. 3d 777, 797 (W.D. La. 2023) (internal quotations and citations omitted).  Relevant factors—known as the *Graham* factors—include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

When deciding whether to use force, officers must determine "not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167 (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).  The reasonableness of the officer's conduct cannot be judged with the benefit of 20/20 hindsight, but rather must be assessed from

the viewpoint of a reasonable officer on the scene at that very moment.  *See Graham*, 490 U.S. at 396.

While the Fifth Circuit has held that *de minimis* injuries occurring in connection with the use of handcuffs do not give rise to an excessive force claim, evidence of more severe injuries may be sufficient.  *Deville*, 567 F.3d at 168; *see Freeman*, 483 F.3d at 417 ("[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force.").  Here, Lewis has produced evidence that the application of handcuffs to his wrists caused him to have to undergo a painful surgery.  (ECF No. 68-10 at 61:23-25, 62:1-19, 64:15-17).  Thus, the analysis turns on whether the force was excessive and unreasonable.

The first *Graham* factor (the severity of the crime) weighs in favor of Defendants.  Here, the Officers were responding to a weapon call with reportedly fleeing suspects in a vehicle close to the description of Armstead's vehicle.  Police dispatchers did not provide the Officers with information regarding the suspects' physical descriptions.  (ECF No. 68-18; ECF No. 61-3 at 28:22-24; ECF No. 61-4 at 25:21-23; ECF No. 61-5 at 37:16-19).  Given the severity of the crime and the possibility that guns could have been present inside Armstead's vehicle, the Court finds the first *Graham* factor favors Defendants.  The second *Graham* factor (whether Lewis posed an immediate

safety threat) weighs in favor of Lewis.  Lewis complied with the Officers'
orders—remaining in Armstead's vehicle while she exited, keeping his hands
outside the vehicle, exiting when told to do so, walking backwards towards
officers, lifting his shirt to reveal his waistband, turning in a circle, kneeling
when instructed—and was unarmed.  In short, Defendants failed to present
any evidence indicating Lewis was dangerous and posed an immediate threat.
Similarly, the third *Graham* factor (whether Lewis tried to resist arrest or flee)
also favors Lewis because there is no evidence Lewis tried to resist arrest or
flee.

Lewis also testified he told the Officers that he could not wear
handcuffs.[18]  (ECF No. 61-7 at 49:18-25, 50:1-18).  Armstead likewise testified
she alerted the Officers that Lewis was a dialysis patient.  (ECF No. 68-12 at
24:5-16, 25:6-12).  Newport and Clausen both confirmed Armstead told them
Lewis was a dialysis patient.[19]  (ECF No. 68-8 at 24:1-3; ECF No. 68-13 at
30:25-24).  When considering the injuries Lewis sustained, Armstead's
testimony that she alerted officers to Lewis' health issues, and Lewis'
testimony that he alerted the Officers he could not have handcuffs on his wrists

---

[18] The Court notes Lewis offers conflicting testimony on if he communicated to the
Officers that he could not wear handcuffs.  (*Cf.* ECF No. 61-7 at 21:6-14, 23:8-10, 13-17).

[19] However, Newport testified he interpreted the statement as one informing the
officers that Lewis was on dialysis, as opposed to interpreting the statement to mean Lewis
could not be handcuffed.  (ECF No. 75-4 at 38:9-19).

combined with the fact that, at the time Lewis was handcuffed, Armstead was secured in the back of a police vehicle, the vehicle's keys were outside the vehicle, and Lewis complied with all of the Officers' orders, the Court cannot conclude the Officers' use of force was objectively reasonable. *See Deville*, 567 F.3d at 169; *Gorsky v. Guajardo*, No. 20-cv-20084, 2023 WL 3690429, at *7 (5th Cir. May 26, 2023) ("Moreover, assuming all facts in the light most favorable to [Plaintiff], we cannot conclude that the officers' use of force was objectively reasonable given the minimal severity of the underlying crime, the lack of threat [Plaintiff] posed to the officers, and his absence of resistance to them.").

Defendants also argue Lewis' testimony is directly contradicted by Vasquez's body worn camera footage. (ECF No. 61 at 17). In response, Plaintiffs contend the video does not contradict Lewis' version of the facts because the video shows instances where Lewis is either speaking or appearing to speak but the video does not pick up the sound to verify what is being said. (ECF No. 68 at 18–19). In *Scott v. Harris*, the Supreme Court held "the normal rules of summary judgment do not apply when undisputedly accurate video evidence blatantly contradicts a non-movant's version of events so thoroughly that it could not reasonably be believed." *Aguirre*, 995 F.3d at 409 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, *Scott* "was an exceptional case with an extremely limited holding" and "[w]hen video evidence is ambiguous

or in fact supports a nonmovant's version of events, . . . the modified rule from *Scott* has no application. *Id.* at 410. Thus, viewing the evidence in a light most favorable to Plaintiffs, the Court agrees with Plaintiffs that Vasquez's body worn camera footage does not "blatantly contradict[] [Lewis'] version of events so thoroughly that it could not reasonably be believed." *Id.* at 409.

Finally, Defendants argue "[b]ecause only Officer Love handcuffed Lewis, and Lewis only claims to have told the lone officer who handcuffed him about his delicate arm, . . . there is no evidence that any other officer used unreasonable force." (ECF No. 61 at 17). Conversely, Lewis contends every officer on scene was aware of the need for a handcuff alternative because Clausen and Newport conceded that Armstead warned them that Lewis was a dialysis patient and video footage shows Delgado and Vasquez close enough to Plaintiffs to overhear their warnings. (ECF No. 68 at 23; *see* ECF Nos. 68-1, 61-2).

There is a question of material fact as to whether Lewis informed officers that he could not have anything on his left arm and which officers, if any, knew that Lewis could not have anything on his left arm. Therefore, based on a totality of the circumstances, the Court cannot conclude that the officers' use of force was objectively reasonable. Given this question of fact, the Court

39

recommends that Defendants' Motion for Summary Judgment be denied as to Lewis' excessive force claim.

The Court also finds that, at this stage of the proceedings, the Officers are not entitled to qualified immunity with respect to Lewis' excessive force claims. "[T]he Fifth Circuit has made it clear that it is unreasonable to use force against an individual who is not actively resisting arrest, who is not fleeing or attempting to flee, and who does not pose an immediate safety threat against himself, the officer, or others." *Terrell*, 695 F. Supp. 3d at 800 (collecting cases). As discussed, there is no evidence that Lewis actively resisted arrest, fled or attempt to flee, or posed an immediate safety threat against himself, the officers, or others. Thus, the Court finds that the Officers are not entitled to qualified immunity at this stage of the proceedings.

### iii. The City

Defendants also argue the City[20] was not required to accommodate Lewis' alleged disability. (ECF No. 61 at 19). Specifically, Defendants argue (1) the scene was not secure until after Lewis was handcuffed and secured in a patrol car and, thus, the ADA did not apply; (2) even if Lewis could produce

---

[20] "[T]he ADA imposes *respondeat superior* liability[,] so employers are vicariously liable for the discriminatory acts of their employees." *Albright v. Sheriffs Dep't Rapides Par.*, No. 12-cv-2117, 2014 WL 4702579, at *4 (W.D. La. Sept. 22, 2014) (citing *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574–75 (5th Cir. 2002)).

evidence that the scene was secure before Lewis was injured, there is no evidence showing the Officers were aware Lewis suffered from a disability protected by the ADA; and (3) even if Lewis' kidney disease qualifies as a disability, there is no evidence showing the disability and its limitations were known by the City and the Officers.  (ECF No. 61 at 19–20).  Conversely, Plaintiffs argue the City failed to accommodate Lewis' alleged disability by placing him in handcuffs and contend that Defendants' arguments all depend on a series of disputed facts: (1) when the scene was secure; (2) whether the Officers responsible for handcuffing Lewis lacked notice of his disability; and (3) whether the Officers knew Lewis' disability required accommodation.  (ECF No. 68 at 24).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "Public entities" are defined to include local governments.  42 U.S.C. § 12131(1)(A).  Title II, however, "does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents . . . prior to the officer's securing the scene and ensuring that there is no threat to human life." *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000).  Thus, as a threshold matter,

the Court must determine whether Defendants handcuffed Lewis, the alleged ADA violation, after the scene was already secure.

At the time of the alleged ADA violation, Armstead was handcuffed and secured in the back of a police vehicle. (*See* ECF No. 61-1). While Officers had not yet placed Lewis in the back of a police vehicle, there is no evidence that Lewis was armed or uncooperative. However, police dispatchers did not provide the Officers with information regarding the suspects' physical descriptions. (ECF No. 68-18; ECF No. 61-3 at 28:22-24; ECF No. 61-4 at 25:21-23; ECF No. 61-5 at 37:16-19). As previously discussed, Vasquez considered the stop "high-risk" because (1) it was a weapons call; (2) the vehicle was traveling from the area where the incident occurred; (3) the vehicle matched the description provided over the radio; and (4) the driver of the vehicle was "being hesitant to stop." (ECF No. 61-3 at 37:1-10). Given the severity of the crime and the possibility that guns could have been present inside Armstead's vehicle, the Officers handcuffed Lewis and placed him in the back of a police car. (ECF No. 61-3 at 48:2-8, 50:14-17; ECF No. 61-4 at 35:17-25; ECF No. 61-15 at 59:21-24); *see Davila*, 713 F.3d at 259; *Long*, 463 U.S. at 1048 ([W]e have also expressly recognized that suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed."). Thus, at the time Officers handcuffed Lewis, the

42

Court agrees with Defendants that "the [O]fficers weren't foreclosed of their duty to protect themselves and other[s]." *Sligh v. City of Conroe*, 619 F. Supp. 3d 735, 744 (S.D. Tex. 2022), *aff'd sub nom. Sligh v. City of Conroe, Texas*, 87 F.4th 290 (5th Cir. 2023).

Accordingly, the Court finds no genuine issue of material fact that the scene was not secure at the time Officers handcuffed Lewis. Thus, the Court recommends Defendants' Motion for Summary Judgment be granted as to Lewis' ADA claim.

## IV.   Conclusion

Based on the foregoing, the Court **RECOMMENDS** Defendants' Motion for Final Summary Judgment (ECF No. 61) be **GRANTED** as to Plaintiffs' false arrest and illegal search claims. The Court **FURTHER RECOMMENDS** Defendants' Motion for Final Summary Judgment (*id.*) be **DENIED** as to Newport's statute of limitations argument and Plaintiffs' excessive force claim. Finally, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Opposed Objections and Motion to Exclude, or Alternatively Limit, Testimony of Brian L. Landers (ECF No. 74), and Defendants' Opposed Motion to Exclude, or Alternatively Limit, Testimony of Alexandria Doyle (ECF No. 84).

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on August 8, 2024.

Richard W. Bennett
United States Magistrate Judge

44