United States District Court
Southern District of Texas
**ENTERED**
August 08, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL LEWIS and REGINA ARMSTEAD, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:22-cv-2593 |
| ROSENBERG POLICE DEPARTMENT, CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, JOHN CLAUSEN, and MATTHEW NEWPORT, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Defendant Officer Matthew Newport's ("Newport") Opposed Motion to Dismiss (ECF No. 59).[2] Based on a review of the motions and relevant law, the Court **RECOMMENDS** Newport's Motion to Dismiss (*id.*) be **DENIED** as to Lewis' excessive force claim and **DENIED**

---

[1] On May 15, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 89).

[2] Also pending before the Court are Defendants City of Rosenberg ("City") and Officers Adam Vasquez ("Vasquez"), John Delgado ("Delgado"), Arthur Love ("Love"), John Clausen ("Clausen"), and Newport's (collectively, "Defendants") Motion for Final Summary Judgment (ECF No. 61), Defendants' Opposed Objections and Motion to Exclude, or Alternatively Limit, Testimony of Brian L. Landers (ECF No. 74), and Defendants' Opposed Motion to Exclude, or Alternatively Limit, Testimony of Alexandria Doyle (ECF No. 84). The Court addresses those motion in a separately filed Memorandum and Recommendation. (ECF No. 92).

**AS MOOT** as to Newport's statute of limitations argument, Plaintiffs' unlawful arrest claims, and Armstead's unlawful search claim.

## I. Background

Per the First Amended Complaint, this is a civil rights action brought under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (the "ADA") arising out of a traffic stop that dissolved into an illegal detention and unlawful vehicle search. (ECF No. 57 at ¶¶ 2, 14).

### a. Factual Background[3]

On the evening of November 6, 2020, the Rosenberg Police Department ("RPD") allegedly received a call from the Computer Aided Dispatch ("CAD") that a group of Black and Hispanic teenagers brandished guns to a group of children. (*Id.* at ¶ 15). CAD reported that the teenagers fled in a white vehicle with tinted windows and black rims. (*Id.*). As a result, RPD dispatched officers Delgado, Ryan Cantu, Vasquez, Love, Clausen, and Newport (collectively, "the Officers") to apprehend the teenagers. (*Id.* at ¶ 16).

On the same evening, Plaintiff Regina Armstead ("Armstead"), a fifty-seven-year-old African American woman, was driving in her vehicle with Plaintiff Michael Lewis ("Lewis"), a sixty-seven-year-old African American

---

[3] "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

man, in the same area in which the Officers were told to search. (*Id.* at ¶ 17). Armstead drove a white Dodge Charger with silver hubcaps. (*Id.* at ¶ 16).

Within approximately ten minutes of receiving the CAD call, the Officers pulled Armstead over. (*Id.* at ¶¶ 16–17). When the Officers first turned on their lights and sirens, Armstead assumed the Officers were pursuing another vehicle, so she slowed down to let them pass. (*Id.* at ¶ 17). When the Officers instructed Armstead to pull over via the intercom system, she immediately complied with the instructions. (*Id.*). The Officers then used their intercom system to direct Armstead to throw her keys out the window, which she did. (*Id.* at ¶ 18). Next, the Officers demanded Armstead exit the vehicle and get on her knees. (*Id.*). Armstead complied, kneeling with her hands up as the Officers stood by their vehicle with their guns drawn. (*Id.*). Once on the ground, the Officers ordered Armstead to stand up and walk backwards towards the police vehicle. (*Id.*). Armstead complied. (*Id.*). Once Armstead reached the vehicle, Newport handcuffed Armstead while two other officers pointed guns at her. (*Id.* at ¶ 19). While being handcuffed, Armstead claims she informed the Officers that Lewis, the passenger in her car, was a dialysis patient and his medical condition was managed through the use of an AV

3

Fistula[4] in his left forearm. (*Id.* at ¶ 20). Armstead also alleges she informed the Officers that Lewis could not have tight items, such as handcuffs, around his left arm or wrist due to his medical condition. (*Id.*). Armstead was then placed in the back of a police vehicle and remained handcuffed in the vehicle for the duration of the investigation. (*Id.* at ¶ 21).

While the Officers searched and handcuffed Armstead, Lewis remained in the vehicle under the detention of RPD. (*Id.* at ¶ 19). The Officers ultimately ordered Lewis to stick his hands outside the vehicle's windows. (*Id.* at ¶ 22). Four armed officers—including one holding an assault rifle—then ordered Lewis to exit the vehicle and lower onto the ground. (*Id.*). Lewis claims he told officers his age prevented him from kneeling, but Lewis still lowered himself to his knees. (*Id.*). Once Lewis was on his knees, Officer Love began to handcuff Lewis. (*Id.* at ¶ 23). Lewis alleges he informed the Officers "that he had a stint in his hand and his doctor had instructed him to not put anything on his hands or wrists." (*Id.*). Despite this, the Officers handcuffed Lewis, pulled him to his feet, and placed him in the back of a separate police vehicle where he remained for the duration of the investigation. (*Id.*) While waiting

---

[4] The term "fistula" can also be used to describe a surgically made passageway, and the Court assumes that is how it is being used here.

in the back of the police vehicle, Lewis noticed that the area around his forearm and wrist hurt and felt tight. (*Id.* at ¶ 25).

While Plaintiffs were in the back of the police vehicles, the Officers conducted a search of Armstead's vehicle. (*Id.* at ¶ 24). The Officers ultimately found no weapons, contraband, or other evidence of illegal activity. (*Id.* at ¶ 27). Following the search, the Officers let Lewis and Armstead out of the police vehicles, removed their handcuffs, and permitted them to leave the scene. (*Id.* at ¶¶ 28–30). As a result of the handcuffing, Lewis' medical device in his wrist malfunctioned, resulting in Lewis having to undergo three separate medical procedures to replace the fistula. (*Id.* at ¶ 37).

b. Procedural History

On August 4, 2022, Plaintiffs brought a civil rights action under 42 U.S.C. § 1983, Title II of the ADA, and Texas state law concerning the alleged illegal and violent detention, search, arrest, and seizure against the RPD, the City, Delgado, Ryan Cantu,[5] Vasquez, Love, and Clausen (the "Original Defendants"). (ECF No. 1). On September 12, 2022, the Original Defendants filed a Motion to Dismiss. (ECF No. 18).

---

[5] Cantu was dismissed from this case with prejudice on January 19, 2024. (ECF No. 64).

On May 25, 2023, District Court Judge Andrew Hanen granted in part and denied in part the Original Defendants' Motion to Dismiss. (ECF No. 39). Judge Hanen granted the Original Defendants' Motion to Dismiss on the following causes of action: unlawful detention, illegal seizure, civil theft/conversion against the City and RPD, Armstead's excessive force claim, Lewis' claim for unlawful search and unlawful seizure, and all municipal liability claims against the City and RPD. (*Id.* at 40–41). Judge Hanen denied the Original Defendants' Motion to Dismiss as it related to Plaintiffs' claims for unlawful arrest, Armstead's claim for unlawful search, and Lewis' ADA and excessive force claims. (*Id.* at 41).

On November 14, 2023, Plaintiffs filed an "Opposed Motion For Leave Of Court To File First Amended Complaint Adding New Related Party Matthew Newport, In His Individual Capacity, As A Defendant." (ECF No. 49). On December 20, 2023, Judge Hanen granted Plaintiffs' motion. (ECF No. 56). Accordingly, on the same day, Plaintiffs filed their First Amended Complaint, asserting their claims for unlawful arrest, Armstead's claim for unlawful search, and Lewis' ADA and excessive force claims. (*See* ECF No. 57).

On January 10, 2024, Newport filed the instant Motion to Dismiss. (ECF No. 59). Plaintiffs filed their response in opposition. (ECF No. 66).

## II. Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss, a court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of a plaintiff, a plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *see also Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) ("Although a

complaint does not need detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level . . . .") (internal quotations omitted)). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Firefighters' Ret. Sys.*, 894 F.3d at 669 (quoting *Iqbal*, 556 U.S. at 678). "The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." *Santerre v. Agip Petroleum Co., Inc.*, 45 F. Supp. 2d 558, 568 (S.D. Tex. 1999) (internal quotations omitted).

To determine whether to grant a Rule 12(b)(6) motion, a court may only look to allegations in a complaint to determine their sufficiency. *Id.*; *Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *1 (E.D. Tex. Mar. 18, 2011). "A court may, however, also consider matters outside the four corners of a complaint if they are incorporated by reference, items subject to judicial notice, matters of public record, orders, items appearing in the record of a case, and exhibits attached to a complaint whose authenticity is unquestioned." *Joubert on Behalf of Joubert v. City of Houston*, No. 4:22-cv-3750, 2024 WL 1560015, at *2 (S.D. Tex. Apr. 10, 2024).

8

## III. Discussion[6]

Newport first argues Plaintiffs' claims are barred by the statute of limitations. (ECF No. 59 at 11). Newport then argues Plaintiffs fail to allege a Fourth Amendment claim. (*Id.* at 12). Finally, Newport contends Plaintiffs fail to allege facts to overcome Newport's qualified immunity. (*Id.* at 19).

### a. Statute of Limitations

Newport argues Plaintiffs' claims are barred by the statute of limitations because Plaintiffs' First Amended Complaint was not filed until December 20, 2023, which is more than one year after the limitations period governing Plaintiffs' claims under § 1983 expired. (*Id.* at 12). In a previous Memorandum and Recommendation on Defendants' Motion for Summary Judgment, this Court recommended a finding that Plaintiffs' claims against Newport relate back to the date of the original pleading under Rule 15(c) and, thus, are not barred by the statute of limitations. (ECF No. 92). Accordingly, this Court recommends Newport's Motion to Dismiss be denied as moot regarding his statute of limitations argument. *See Aubone v. H-E-B, LP*, No. 5:20-cv-1472, 2021 WL 5968416, at *2 (W.D. Tex. Dec. 16, 2021) ("In general, when a party

---

[6] Because Newport largely advances the same arguments his fellow officers made in their previous motion to dismiss (ECF No. 18), the Court's analysis here follows the reasoning found in Judge Hanen's Order granting in part and denying in part Newport's co-defendants' Motion to Dismiss. (ECF No. 39).

has filed both a motion to dismiss and a motion for summary judgment, granting summary judgment will moot the motion to dismiss to the extent they overlap."); *Williamson v. Wells Fargo Bank, N.A.*, No. 4:17-cv-217, 2017 WL 4573694, at *1 (E.D. Tex. Sept. 26, 2017), *report and recommendation adopted*, No. 4:17-cv-217, 2017 WL 4552555 (E.D. Tex. Oct. 12, 2017) (collecting cases).

### b. Qualified Immunity

While Newport first argues Plaintiffs fail to allege a constitutional violation, he alternatively argues Plaintiffs' claims are insufficient to overcome Newport's qualified immunity defense. (ECF No. 59 at 19).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (internal quotations omitted). The purpose of qualified immunity is not only to protect officials from harassment, distraction, and liability when they perform their duties reasonably, but also to hold public officials accountable when they exercise their powers irresponsibly. *Id.* An official is not entitled to qualified immunity when they should have known their conduct would violate the plaintiff's constitutional rights. *White v. Pauly,* 580 U.S. 73, 79–80 (2017).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Modica v. Taylor,* 465 F.3d 174, 179 (5th Cir. 2006) (internal quotations omitted). Determining whether qualified immunity applies is a two-step process. *Id.* First, the court considers whether the facts the plaintiff alleges make out a violation of a constitutional right. *Id.* If the plaintiff satisfies the first step, the court must ask whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* "To answer that question in the affirmative, [the Court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson,* 659 F.3d 359, 371–72 (5th Cir. 2011) (internal quotation omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna,* 577 U.S. 7, 11 (2015) (internal quotation omitted). The Court will analyze the two-step process for each alleged cause of action.[7]

---

[7] Newport argues that Plaintiffs failed to state a Fourth Amendment claim and that Plaintiffs fail to allege facts to overcome Newport's qualified immunity defense. (ECF No. 59 at 12–21). Because the first step of the qualified immunity analysis is whether the facts the plaintiff alleges make out a violation of a constitutional right, the Court will consider Newport's 12(b)(6) arguments simultaneously with his qualified immunity contentions.

11

### 1. *False Arrest*

Newport challenges Plaintiffs' false arrest claims. (ECF No. 59 at 17). In a previous Memorandum and Recommendation on Defendants' Motion for Summary Judgment, this Court recommended Plaintiffs' false arrest claims be dismissed. (ECF No. 92). Thus, this Court recommends Newport's Motion to Dismiss be denied as moot regarding Plaintiffs' false arrest claims. *See Aubone*, 2021 WL 5968416, at *2; *Williamson*, 2017 WL 4573694, at *1.

### 2. *Unlawful Search*

Armstead[8] also brings an unlawful search claim, challenging the lawfulness of the Defendants' search of her vehicle. (ECF No. 57 at ¶¶ 52–56). Newport contests Armstead's allegation, contending Plaintiffs fail to plead facts to show Newport could not have conducted a protective sweep of Plaintiff's vehicle for weapons during the officers' response to a weapon call with reported fleeing suspects in a vehicle matching the description. (ECF No. 59 at 18).

---

[8] Plaintiffs' First Amended Complaint states the illegal search claim is a claim of both Plaintiffs. (ECF No. 57 at 52–56). However, Judge Hanen previously dismissed Lewis' illegal search claim. (*See* ECF No. 39 at 18 n.7 ("To the extent the Complaint can be read as to the effect that Lewis is making this illegal search claim, the Defendant's Motion is granted. Lewis did not have a possessory interest in the car and no grounds for protecting a search of Armstead's car."). Thus, this Court will only consider the illegal search claim as to Armstead.

12

As explained above, in a previous Memorandum and Recommendation on Defendants' Motion for Summary Judgment, this Court recommended Armstead's unlawful search claim be dismissed. (ECF No. 92). Thus, this Court recommends Newport's Motion to Dismiss be denied as moot regarding Armstead's unlawful search claim. *See Aubone*, 2021 WL 5968416, at *2; *Williamson*, 2017 WL 4573694, at *1.

### 3. Excessive Force

Lewis also makes a claim for the unlawful use of excessive force. (ECF No. 57 at ¶¶ 57–63). Lewis claims Defendants "violated [his] Fourth Amendment right to be free from excessive force when they held him at gunpoint after they discovered Plaintiffs were not armed teenagers and did not pose any threat of harm or flight" (*id.* at ¶ 60) and "locked Mr. Lewis's handcuffs so tightly that it caused a long-lasting injury on his wrist that required multiple medical procedures and damaged his medical device" (*id.* at ¶ 62). Newport argues Lewis fails to plead any specific facts that Newport was involved with or used any use of force towards Lewis. (ECF No. 59 at 18).

To succeed in proving an excessive force claim, Lewis must "establish (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020) (internal quotations

13

omitted). The Court will analyze whether Lewis asserted sufficient allegations in the First Amended Complaint to satisfy each element.

### a. Injury

A plaintiff must show he or she was injured to succeed on an excessive force claim. *See Petta v. Rivera*, 143 F.3d 895, 903 (5th Cir. 1998). Physical injuries are not necessarily required. *Id.* Rather, psychological pain, injuries, and disabilities as the result of the use of excessive force will suffice for the injury element. *Id.*

In the First Amended Complaint, Lewis enumerates many injuries. Lewis specifically states, "[a]s a result of the handcuffing during his arrest, Mr. Lewis's medical device in his wrist malfunctioned," which "resulted in three separate medical procedures to replace his fistula." (ECF No. 57 at ¶ 37). Lewis alleges these procedures caused him prolonged pain and suffering. (*Id.*).

"[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). That said, when the action results in severe damage, tight handcuffing can constitute excessive force. *See Deville v. Marcantel*, 567 F.3d 156, 168–69 (5th Cir. 2009) (holding that applying handcuffs too tightly constituted excessive

force where there was evidence that it caused long-term nerve damage that was severe enough to require four surgeries).

While not a physical injury, the First Amended Complaint further alleges that Lewis has "experienced considerable emotional distress as a result of the stop" and "has had trouble with anxiety and restlessness since the incident with RPD." (ECF No. 57 at ¶ 40).

Psychological injuries may sustain a Fourth Amendment excessive force claim. *See Flores v. City of Palacios*, 381 F.3d 391, 397–98 (5th Cir. 2004) ("While certain injuries are so slight that they will never satisfy the injury element, . . . psychological injuries may sustain a Fourth Amendment claim [for excessive force.]"). Thus, the Court finds Lewis' allegations satisfy the injury requirement.

b. Causation

The second element of an excessive force claim requires a plaintiff to show his or her injuries were "directly and only" a result of the excessive force. *See Ratliff*, 948 F.3d at 287. Newport argues Lewis only alleges Love handcuffed Lewis, not Newport. (ECF No. 59 at 18). Thus, Newport argues Lewis fails to plead any specific facts that Newport was involved with or used any use of force towards Lewis. (*Id.*). Plaintiffs contend Newport used objectively unreasonable force against Lewis by detaining him at gunpoint and

15

refusing to remove his handcuffs after he was aware they could injure him. (ECF No. 66 at 26–27).

Under Fifth Circuit precedent, the exacerbation of a pre-existing condition or injury can satisfy the second prong's causation requirement. *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 242 (5th Cir. 2017). The case law is clear that the causation prong does not "preclude[] recovery for aggravation of preexisting injury caused by the use of excessive force." *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996).[9]

As alleged in Plaintiffs' First Amended Complaint, "[a]s a result of the handcuffing during his arrest, Mr. Lewis's medical device in his wrist malfunctioned," which "resulted in three separate medical procedures to replace his fistula." (ECF No. 57 at ¶ 37). Further, Lewis alleges he informed the Officers "that he had a stint in his hand and his doctor had instructed him to not put anything on his hands or wrists." (*Id.* at ¶ 23). From these allegations, which the Court must accept as true at this stage, the Officers, including Newport, were aware of Lewis' condition. Further, the tight handcuffing was the direct and only cause of Lewis' additional procedures.

---

[9] A trier of fact can only compensate for injuries caused by excessive force; "[t]here can be no award for injury caused by reasonable force." *Dunn*, 79 F.3d at 403.

16

Finally, the pointing of the guns led to additional psychological injuries. Thus, the Court finds Lewis has satisfied the second element.

### c. Reasonableness

The third prong considers whether the force used was clearly unreasonable. *See Ratliff*, 948 F.3d at 287. Whether force is reasonable is "judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers," violates the Fourth Amendment. *Id.* Courts assess "reasonableness" using an objective standard and must account for the fact that police are "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

When looking at the entirety of the circumstances, the Court finds that Plaintiffs pleaded sufficient factual allegations to support Lewis' excessive force claim. As Plaintiffs claim, the Officers kept their guns pointed at Lewis throughout the stop. (ECF No. 57 at ¶ 22). Plaintiffs also state they both informed the Officers of Lewis' condition and fistula in his left wrist multiple times prior to the handcuffing. (*Id.* at ¶¶ 20, 23). Proceeding to put handcuffs

on the operated wrist of an elderly, disabled man who did not match the description of the missing suspects was not reasonable.

Continuing to the second prong of qualified immunity, the Court considers whether the law in this area is clearly established. Lewis' right to be free from such force was clearly established at the time of the Officers' alleged misconduct. The law is clear that the degree of force an officer can reasonably employ is reduced when the individual is not combative or actively resisting. *See Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 733 (5th Cir. 2018). Here, Plaintiffs' claim that at the time of the misconduct, Officers were pointing guns and tightly applying handcuffs to an allegedly disabled man. When the arrests occurred, Plaintiffs "had a clearly established right to be free from excessive force," *Tarver v. City of Edna*, 410 F.3d 745, 753–54 (5th Cir. 2005), and it was clearly established that the amount of force the Officers could use "depend[ed] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). Accepting Plaintiffs' version of the events, as the Court must, this case involved a traffic stop in which Lewis' age did not match the suspects and in which Armstead's car did not entirely match the description of the getaway vehicle. The vehicle was stopped, the keys were not in the vehicle, the driver removed,

and Lewis was in the passenger seat, so the vehicle was not going anywhere. Nonetheless, the Officers kept their guns pointed at Lewis, ordered him to get on the ground, roughly handcuffed him despite knowledge that his wrist was compromised, and placed him in the backseat of a police car. Thus, the Court finds these facts are sufficient to warrant a denial of qualified immunity because a reasonable officer would have known that the degree of force was unconstitutionally excessive under the circumstances. *See Deville*, 567 F.3d 156 (holding an officer was not entitled to qualified immunity on an excessive force claim, where he broke the driver's window with a flashlight, roughly extracted the driver from the vehicle, and applied handcuffs so tightly that they caused severe nerve damage).

When considering a Rule 12(b)(6) Motion to Dismiss, the Court must presume the allegations within a plaintiff's complaint are true. *See Taylor*, 296 F.3d at 378. Taken as true, the Court finds Plaintiffs sufficiently pleaded that the Officers violated a constitutional right as to Lewis, and this right was clearly established at the time of the challenged conduct. Thus, the Court recommends Newport's Motion to Dismiss be denied as to Lewis' excessive force claim.

19

## IV. Conclusion

Based on the foregoing, the Court **RECOMMENDS** Newport's Motion to Dismiss (ECF No. 59) be **DENIED** as to Lewis' excessive force claim and **DENIED AS MOOT** as to Newport's statute of limitations argument, Plaintiffs' unlawful arrest claims, and Armstead's unlawful search claim.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on August 8, 2024.

Richard W. Bennett
United States Magistrate Judge