IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL LEWIS and REGINA ARMSTEAD, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:22-cv-2593 |
| ROSENBERG POLICE DEPARTMNET, CITY OF ROSENBERG, JOHN DELGADO, ADAM VASQUEZ, ARTHUR LOVE, JOHN CLAUSEN, and MATTHEW NEWPORT, | § § § § § | |
| *Defendants*. | | |

## ORDER

Pending before the Court in the above referenced proceeding is Defendants' Motion for Final Summary Judgment (Doc. No. 61); Defendants' Opposed Objections and Motion to Exclude, or Alternatively Limit, Testimony of Brian L. Landers (Doc. No. 74); and Defendants' Opposed Motion to Exclude, or Alternatively Limit, Testimony of Alexandria Doyle (Doc. No. 84). These Motions are considered jointly with response and reply (Doc. Nos. 68 and 76). Magistrate Judge Bennett's Memorandum and Recommendation (Doc. No. 92) has resolved these motions, but Plaintiffs and Defendants have filed objections to the Memorandum and Recommendation. (Doc. Nos. 94 and 95).

After a *de novo* review of the filings, the applicable law, the Magistrate Judge's Memorandum and Recommendation, and the objections thereto, the Court adopts with the Magistrate Judge's conclusions, with the clarifications laid out below.

1

I. **False Arrest**

The Court agrees with the conclusion that Defendants' Motion for Summary Judgment be granted as to Plaintiffs' false arrest claims. Nevertheless, the Court finds it prudent to add to the analysis already given. Plaintiffs contend that the "traffic stop escalated into a *de facto* arrest as soon as Defendants, outnumbering [P]laintiffs five to two, stopped Plaintiffs at gunpoint and Defendant Vasquez instructed [Armstead] to throw the keys out of the vehicle's window." (Doc. No. 68 at 11–12). Despite this contention, the Court finds the Fifth Circuit's decision in *Smith v. Heap* instructive, if not dispositive, of the Plaintiffs' false arrest claims. *Smith v. Heap*, 31 F.4th 905 (5th Cir. 2022).

In *Smith*, the Fifth Circuit held that no *de facto* arrest occurred even though the deputies, "activated the sirens and flashers on their vehicles, commanded [the driver] to exit his vehicle, handcuffed [him], and tried to place [him] into the back of a squad car." *Id.* at 911. A strikingly similar sequence of events occurred to the case at bar. Here, deputies activated the sirens and flashers on their vehicles, commanded Plaintiffs to exit the vehicle, handcuffed them, and placed them in the back of a squad car. Although in *Smith* the plaintiff refused the deputy's instruction to get in the back of the squad car, the Court, given the Fifth Circuit precedent, does not believe that Plaintiffs' compliance with Defendants' instruction converts their detention to an arrest. In fact, the Circuit reasoned that handcuffing and placing the individual into the back of a police car "typify [the Circuit's] cases dismissing claims of *de facto* arrest." *See id.*

Additionally, the Magistrate Judge quoted *Lincoln v. Turner*, which stated "[a]n arrest occurs when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Doc. No. 92 at 26, quoting *Lincoln v. Turner*, 874 F.3d 833, 841 (5th Cir. 2017)). The Magistrate Judge then found that the Defendant officer's

2

"actions were reasonable under the circumstances and the stop was not converted into a *de facto* arrest." (Doc. No. 92 at 27). The Court writes, in part, to ensure the two statements are not conflated.

The Fifth Circuit has found it is "reasonable to detain a suspect at gunpoint, handcuff [him], and place [him] in a police car" during an investigatory stop. *United States v. Thomas*, 997 F.3d 603, 615 (5th Cir. 2021) (citing *United States v. Abdo*, 733 F.3d 562, 565–66 (5th Cir. 2013). While the Court does not disagree that those actions may be reasonable during an investigatory stop, the *Thomas* standard raises a distinct inquiry from whether a reasonable person would believe they are free to leave under *Lincoln*. Still, the Fifth Circuit has seemingly overlaid a totality of the circumstances review that includes, in addition to an analysis of whether the reasonable person would believe that he was not free to leave, consideration of the amount of time and the reason for the stop. *See, e.g., Smith*, 31 F.4th at 911 (finding no *de facto* arrest when the individual was detained for "mere minutes"); *see also Lincoln*, 874 F.3d at 841 (finding the detention may rise to the level of a *de facto* arrest when the restraint on the plaintiff's freedom lasted approximately two hours). Thus, because the detention at bar only lasted "mere minutes" while the officers made sure the scene was safe, the Court finds that the detention did not rise to the level of a *de facto* arrest.

Furthermore, the parties dispute whether the police had information regarding the suspects' physical description. Nonetheless, the Court finds that, ultimately, the resolution of this question is immaterial. Plaintiffs' contend that the officers had the suspect's description from the weapons call and therefore, "[a]s soon as Ms. Armstead exited the vehicle, it should have been obvious to Defendants that she did not match the description of the Black and Hispanic teenagers suspected of brandishing guns at a highschooler ... At this point, any reasonable officer would have ended the stop, or, at the very least, asked dispatch for further information on the suspects." (Doc. No.

3

68 at 33–34). Thus, Plaintiffs argue, their detention was converted to a *de facto* arrest without probable cause, violating their constitutional right to be free of unreasonable seizure. (Doc. No. 68 at 34–35).

Yet, Plaintiffs were immediately released upon the police confirming that there was no one remaining in the car. (Doc. No. 68, Ex. A at 08:48-09:20). The Court notes that the video establishes the scene was dark and, especially given the tint of the windows, the officers could not see inside the vehicle. Therefore, even if the officers did have the suspect's description, it was not unreasonable to secure the scene. While Plaintiffs may or may not have matched the descriptions passed along to the police, if any, the fact that the officers took precautions to ensure that a suspect was not hiding in the backseat or trunk of the vehicle was certainly not unreasonable. Indeed, there could have been a suspect who had either hidden in Plaintiffs' vehicle or who had actually taken them hostage. The car in question not only matched the description of the vehicle from the weapons call, but it was heading from the direction where the reported incident took place. Thus, there is no genuine issue of material fact. Consequently, based upon Fifth Circuit precedent, there was no actionable false arrest.

## II.   Illegal Search

The Court also agrees with the Magistrate's conclusion that Defendants' Motion for Summary Judgment be granted as to Plaintiff Armstead's illegal search claim. Plaintiff Armstead contends that it was unreasonable to search her vehicle because the search took place after any reasonable need for a search had passed. (Doc. No. 68 at 13–14). Plaintiff's argument is based in part on the deposition of Defendant Clausen where he testified that the locations he would expect weapons to be hidden were not checked during the search of the vehicle. (Doc. No. 94, Ex. 1). Yet, Defendants' contend that the officers searched the passenger compartment and trunk for weapons

and *additional occupants*. (Doc. No. 61 at 12). The body camera footage from Officers Vasquez and Clausen clearly supports this.

The video evidence shows that once Plaintiffs were out of the car, the officers, using the car's PA system, repeatedly commanded any individuals remaining in the car to get out. (Doc. No. 68, Ex. A at 07:12-07:49). When no one emerged from the vehicle, the officers carefully approached the vehicle, opened the back doors to the vehicle and, finding no one, announced "clear." (Doc. No. 68, Ex. A at 07:17). The officers did not continue to search the passenger compartment of the car after determining there was no additional passengers. *See* (Doc. No. 68, Ex. A). After "clearing" the passenger compartment of the vehicle, the officers opened the trunk. (Doc. No. 68, Ex. A at 07:17). The officers looked inside the trunk and immediately ascertained no one was hiding there. *See* (Doc. No. 68, Ex. A). Once that sweep was finished, an officer proclaims, "guess it's not them," which prompts other officers to let Plaintiffs out from the back of the respective police cars and return to their own vehicle. (Doc. No. 68, Ex. A at 08:48-09:20).

The record clearly shows the officers are looking for persons as well as weapons. While the Magistrate Judge relies on precedent regarding access to weapons, the Court finds it just as clear that the search was justified because the Officers used "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time" regarding potential additional occupants. *See* (Doc. No. 92 at 33). As noted before, it is undisputed that the officers pulled over Plaintiffs' vehicle because it matched the vehicle described in the weapons call. Moreover, the video evidence shows that the stop happened after sunset and Plaintiff's vehicle had dark window tint. The combination of the two made it difficult, if not impossible, to see inside the car. *See* (Doc. No. 68, Ex. A). Moreover, according to controlling precedent, it was reasonable for the officers to open the trunk of Plaintiff's vehicle. Based on the nature of the call the officers were

5

responding to, it was possible an individual was hiding in the trunk. As soon as the officers opened the trunk and determined no one was inside, they moved away from the vehicle without further search. (Doc. No. 68, Ex. A at 07:49). Thus, the Court is certain that the Officers used "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time," while maintaining officer safety.

Consequently, there was no violation of their 4th Amendment rights and therefore no need to continue the qualified immunity analysis to determine if the right violated is "clearly established."

### III. Conclusion

While the Court understands why Plaintiffs are upset after being stopped when they had not done anything other than drive the same type of vehicle described by dispatch, the evidence provided to the Court clarifies that there is no genuine issue of material fact as to whether their 4th Amendment rights against unreasonable search and seizure were violated regarding the false arrest and illegal search claims. It is therefore

**ORDERED** that Plaintiffs' Objections (Doc. No. 94) and Defendants' Objections (Doc. No. 95) are **OVERRULED**. The Memorandum and Recommendation (Doc. No. 92) is **ADOPTED**, subject to the clarification and comments set out above. It is further

**ORDERED** that Defendants' Motion for Final Summary Judgment (Doc. No. 61) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. **Granted** as to Plaintiffs' false arrest and illegal search claims;
2. **Denied** as to Defendant Newport's statute of limitations argument and Lewis's excessive force claims. It is further

**ORDERED** that Defendants' Opposed Objections and Motion to Exclude, or Alternatively Limit, Testimony of Brian L. Landers (Doc. No. 74) and Defendants' Opposed Motion to Exclude, or Alternatively Limit, Testimony of Alexandria Doyle (Doc. No. 84) are **GRANTED IN PART** and **DENIED IN PART**.

SIGNED this 30th day of September, 2024.

Andrew S. Hanen
United States District Judge